# UNITED STATES DISTRICT COURT
### Northern District of Indiana
### South Bend Division

| | | |
|---|---|---|
| HEARTLAND RECREATIONAL | ) | |
| VEHICLES, LLC, | ) | |
|         Plaintiff, | ) | |
| | ) | CASE NO.:<u>3:08-cv-490 RLM CAN</u> |
|    v. | ) | |
| | ) | |
| FOREST RIVER, INC., | ) | JURY DEMAND |
|         Defendant. | | |

### FOREST RIVER'S MEMORANDUM IN OPPOSITION TO HEARTLAND RECREATIONAL VEHICLES, LLC'S  MOTION TO DISMISS FOREST RIVER, INC.'S LANHAM ACT COUNTERCLAIM

<u>Summary of the Opposition:</u>

Heartland confuses prior case law relating to "false advertising" violations with a "passing off" violation of 15 U.S.C. 1125.  The counterclaim is not asserting a false advertising claim against Heartland.  Instead, the counterclaim sets forth that Heartland made "false or misleading descriptions of fact" (i.e., that its employees were "from Forest River" and that the envelopes were "needed for a Forest River dealer meeting")  in "connection with goods" (be it RVs, the envelopes or the RVs advertised within the envelopes) which were "likely to cause confusion . . or to deceive as to the affiliation, connection, or association" of the envelopes and/or Heartland's employees with Forest River.  Forest River was damaged by that conduct in connection with the sale of Forest River's RVs.  This is an assertion of a passing off violation of the statute.  As such, the counterclaim does state a claim for which relief can be granted under that statute.

1

Dockets.Justia.com

<u>Detailed Analysis of Heartland's Motion:</u>

<u>The Legal Standards for Rule 12(b)(6):</u>

Fed. R. Civ. P. 12(b)(6) permits a counterclaim to be dismissed "for failure to state a claim upon which relief can be granted."  A motion under that rule is not, however, to decide the merits of a case, *See Gibson v. Chi.*, 910 F. 2d 1510, 1520 (7th Cir. 1990), and in considering a motion to dismiss a counterclaim, a court must both accept as true all of the well pleaded, relevant facts and must draw all reasonable inferences from those facts in the light most favorable to the party pleading those facts.  *Perkins v. Silverstein*, 939 F. 2d 463, 466 (7th Cir. 1991).  It is well established that the party seeking dismissal has the burden of proving that no claim has been stated.  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F. 2d 1406, 1409 (3d Cir. 1991).

The court's inquiry in this regard is limited to the pleadings themselves, and not to facts or allegations first set forth in the motion briefs.  *Car Carriers, Inc., v. Ford Motor Co.*, 745 F. 2d 1101, 1107 (7th cir. 1984).  For its part, it is clear after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that the pleader must describe the claim in sufficient detail so as to give the opposing party fair notice of what the claim is and the grounds upon which it rests.  Further, the allegations must plausibly suggest that the pleader has a right to relief above a speculative level.  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F. 3d 773, 776 (7th Cir. 2007).

<u>The Legal Standards for 15 U.S.C. §1125(a)(1):</u>

This statute, also referred to as §43(a) of the Lanham Act, provides that:

(1) Any person who, on or in connection with any goods or services, or any container for

goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another persons goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Even prior to the 1989 amendments to this statute, courts recognized for many years that there were two types of "wrongs" encompassed by §43(a): false advertising and the common-law tort of "passing off." *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 777-781 (1992)(discussion of historical development of §43(a)). With the 1989 amendments, those two prongs have been set forth in separate subsections: passing off in 1125(a)(1)(A) and false advertising in 1125(a)(1)(B). In addition, the 1989 amendments made it clear that the violation complained of did not itself need to cause the "goods or services to enter into commerce" in order to be "in connection with goods" within the meaning of the statute. *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 831 (N.D. Ill. 2000), citing *Juno Online Services, L.P. v. Juno Lighting, Inc.*, 979 F. Supp. 684, 691 (N.D. Ill. 1997)(defendant is no longer required to actually cause goods or services to be placed into the stream of commerce).

In general, "passing off," or palming off as it is sometimes called, arises when a producer misrepresents his own goods or services as someone elses. *See Dastar Corp. v. Twentieth Centruy Fox Film Corp.*, 539 U.S. 23, 27 at fn 1 (2003). However, a passing off violation under §1125(a)

can also arise when a party's employees misrepresent themselves as a competitor's employees in order to convince third parties to provide a benefit which can increase sales of the deceiver's products. *U.S. News & World Report, Inc. v. Campaigner Publications, Inc.*, 222 U.S.P.Q. 123, 124 (D.D.C. 1982)(preliminary injunction based in part on "false designation or misrepresentation of origin" section of statute pre-1989).

Further, the "confusion" which is actionable under §43(a) of the Lanham Act includes "initial interest confusion," which occurs when a competitor lures potential customers by initially passing off its goods as those of another, even if the confusion as to source of goods is dispelled by the time the sales are completed. *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F. 3d 376, 382 (7th Cir. 1996); *Eli Lilly and Co. v. Natural Answers, Inc.*, 86 F. Supp. 2d 834, 845 (S.D. IN 2000). The court in *Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*, 2004 WL 2967446, at *8 (N.D. Ill. 2004), recently offered the following cogent example of the type of initial interest confusion forbidden by the Lanham Act:

> Imagine if McDonalds puts up a sign at Exit 7 saying "Burger King-Exit 7," but in reality Burger King is located at Exit 8. If there is, however, a McDonalds at Exit 7, McDonalds can benefit from the good will of Burger King because cars that exit the freeway at Exit 7 and do not see the Burger King may simply pull into the McDonalds rather than get back on the freeway. Even though the consumer is fully aware the McDonalds is not a Burger King, the initial confusion of where to exit the freeway allowed McDonalds to improperly reap the good will of its competitor.

Citing *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F. 3d 1036, 1064 (9th Cir. 1999).


<u>Application of the Counterclaim Pleadings to the Legal Standards:</u>

¶60 of the Answer, Defenses, and Counterclaims recites the applicable provisions of 15

U.S.C. §1125(a)(1)(A) to put that counterclaim in context. However, the counterclaim pleadings do not merely then assert that the elements of a cause of action under that statute have been met. Instead, Forest River sets forth in ¶s 61-67 specific factual detail of the circumstances which gives rise to the counterclaim so as to give the Heartland fair notice of what the claim is and the grounds upon which it rests. That much has not been put in dispute by this motion. What is in dispute is whether the allegations plausibly suggest that Forest River has a right to relief above a speculative level. To resolve that, we need merely compare the facts stated in the pleadings to the words of §43(a)(1)(A).

This comparison is done below in connection with several alternative interpretations of the terms in the statute as applied to the facts set forth in the pleadings. In doing so below, bold face type is from the applicable portion of the statute, plain type is from the pleadings text at the ¶ indicated, and the bracketed portions are the conclusions or inferences to be easily drawn. As will be explained further below, however, the net result of these alternate applications is a distinction without a difference.

**Any person who,**

¶63. On Wednesday, October 22, at approximately 3:30 p.m., while most of Forest River's guests were in attendance at the private trade show, Heartland had several of its employees enter into each of the hotels reserved by Forest River.

**[Thus, Heartland and those Heartland employees are the "persons."]

**on or in connection with any goods or services,**

¶63 . . .envelopes, each labeled with the name of a Forest River guest and an identification of which hotel that guest was staying at.

**[At a first level, the envelopes themselves were "goods," prepared by Heartland in a way to suggest intimate knowledge of the intended recipients, as only Forest River would know.]

¶64 . . .documents advertising Heartland's travel trailers and documents comparing several Flagstaff models of Forest River products with certain North Trail models of Heartland products.

**[At a second, alternate level, the advertising documents were "goods" created by Heartland.]

¶64 . . .advertising Heartland's travel trailers and documents comparing several Flagstaff models of Forest River products with certain North Trail models of Heartland products.

¶65. Several of Forest River's guests, who were RV dealers, were induced by the contents of those envelopes to visit Heartland's place of business that same week. Several of those RV dealers were induced by Heartland to sign up as Heartland dealers and placed orders for Heartland travel trailers. Brian Brady, the president of Heartland, informed other dealers of Heartland of these events in email correspondence sent by him at 7:36 p.m. on October 28, 2008.

¶66. Heartland is a direct competitor of Forest River. Sales of Heartland travel trailers can reduce sales of Forest River travel trailers.

**[At a third, alternate and most fundamental level, the "goods" are Heartland's RVs, since all of Heartland's actions complained of were done to directly further the sale of those RVs, and the Heartland employees at the hotels were there in connection with RVs, as evidenced by their reference to the dealer meeting and the by contents of the envelopes.]

**or any container for goods,**

¶64.  The envelopes contained documents

**[Using the second, alternate definition of "goods," the envelopes were "containers" for those "goods."]

**uses in commerce any word, term, name,**

¶61 . . .More than 700 guests were invited to attend, representing approximately 350 RV dealerships from across the North America and as far away as Australia.

¶63 . . .Those Heartland employees went to the front desks of the hotels and then falsely stated and represented to the hotel attendants present that they were "from Forest River" and had envelopes which needed to be delivered to the Forest River guests.  The contents of those envelopes were falsely described and represented to the hotel attendants as "important" and "needed for a Forest River dealer meeting the next day."

**[The events in question all arose in commerce, and interstate commerce at that, given the draw of dealers from around the country to which the envelopes were delivered.  By saying the persons were from Forest River and that the envelopes were needed for a Forest River event, the "word, term, name" Forest River was used.]

**uses in commerce any false designation of origin,**

¶61 . . .More than 700 guests were invited to attend, representing approximately 350 RV dealerships from across the North America and as far away as Australia.

¶63 . . .Those Heartland employees went to the front desks of the hotels and then falsely stated and

represented to the hotel attendants present that they were "from Forest River" and had envelopes which needed to be delivered to the Forest River guests. The contents of those envelopes were falsely described and represented to the hotel attendants as "important" and "needed for a Forest River dealer meeting the next day."

**[The events in question all arose in commerce, and interstate commerce at that, given the draw of dealers from around the country to which the envelopes were delivered. By saying the persons were from Forest River and that the envelopes were needed for a Forest River event, the clear implication is that the "origin" of the envelopes was Forest River and that was "a false designation" which applies to both the first and second alternate definition of "goods."]

**false or misleading description of fact, or false or misleading representation of fact,**

¶63 . . .Those Heartland employees went to the front desks of the hotels and then falsely stated and represented to the hotel attendants present that they were "from Forest River" and had envelopes which needed to be delivered to the Forest River guests. The contents of those envelopes were falsely described and represented to the hotel attendants as "important" and "needed for a Forest River dealer meeting the next day."

**[The association of the Heartland employees with Forest River and the association of the envelopes with a Forest River event are each "false or misleading" facts which occurred "in connection with" each of the three alternative definition of "goods."]

**which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship,**

**or approval of his or her goods, services, or commercial activities by another person**

¶63 . . .Those Heartland employees induced the hotel attendants to immediately deliver the envelopes to the rooms of each named guest in their respective hotels, such as by slipping the envelopes under the guests' room doors.

§65. Several of Forest River's guests, who were RV dealers, were induced by the contents of those envelopes to visit Heartland's place of business that same week. Several of those RV dealers were induced by Heartland to sign up as Heartland dealers and placed orders for Heartland travel trailers.

¶67 . . .the false statements and representations made to the hotel attendants which deceived those attendants into delivering Heartland advertisements to Forest River guests at a key time in the private trade show event. Those actions of Heartland also resulted in disruption and confusion among several of Forest River's guests because of the incongruity and surprising manner in which the envelopes were delivered.

**[The likelihood of confusion, mistake, or deception is evident from the actual confusion, mistake and deception of the hotel attendants which caused the delivery of the envelopes. There was also confusion alleged to be in the minds of the recipient guests (RV dealers) caused by that delivery; at the very least there was "initial interest confusion" since had those envelopes not been delivered by the hotel attendants, those dealers would not have gone to Heartland and signed up or placed orders. In the case of the first and second alternate definitions of "goods," the confusion, mistake, and deception is clearly as to the affiliation, connection, or association between Forest River and those "goods." In the case of the all three alternate definitions of "goods," the confusion, mistake, and deception is also as to the affiliation, connection, or association of the Heartland employees with Forest River. Also in the case of all three alternate definitions of "goods," the "word, term, name"

Forest River was used and it was that use which induced the hotel attendants to act in error.]

**shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.**

¶65.  Several of Forest River's guests, who were RV dealers, were induced by the contents of those envelopes to visit Heartland's place of business that same week.  Several of those RV dealers were induced by Heartland to sign up as Heartland dealers and placed orders for Heartland travel trailers.

¶66.  Heartland is a direct competitor of Forest River.  Sales of Heartland travel trailers can reduce sales of Forest River travel trailers.

**[Those dealer sign-ups and orders placed clearly form a reasonable belief for damage.  The direct and proximate cause of that damage is either the confusion, mistake, and deception which caused the envelopes and advertisements to be delivered to the dealers, under the first and second alternate definitions of "goods," or the confusion, mistake, and deception is also as to the affiliation, connection, or association of the Heartland employees with Forest River in the minds of the hotel attendants, under any of the three alternate definitions of "goods."]

Stated summarily, the statute gives Forest River claims against Heartland for passing off:

1. Envelopes, which were falsely designated as being from Forest River, to Forest River's invited dealers by deceiving the hotel attendants - the envelopes being instead from Heartland and being presented at a time intended to disrupt Forest River's sales efforts to market RVs at a private trade show event, as set forth in ¶68, and intended to increase Heartland's sales of RVs.

2. Heartland advertisements in envelope "containers," which were falsely designated as originating with Forest River, to Forest River dealers - again presented at a time intended to disrupt Forest River's sales efforts to market RVs at a private trade show event, as set forth in ¶68, and intended to increase Heartland's sales of RVs..

3. Heartland's employees as Forest River employees in connection with the sales of RVs so as to induce third parties to take actions which increased sales of Heartland RVs by direct interference with Forest River's sales efforts to market RVs at a private trade show event, as set forth in ¶68.

Regardless of which claim basis is used, however, the damage done could be measured by the same standard, lost sales of RVs. Thus, while there are subtle differences in the basis of the claims, there is no difference in the net liability of Heartland under those claims.

It is important to note that the statute prohibits these false statements in "connection with any goods." Thus, the falsity does not have to be in an advertisement about Forest River or Heartland's RVs per se. Indeed, there is a separate section of the statute, §1125(a)(1)(B) which deals with such false advertisements. In this case, there is falsity about the envelopes, their contents, and the persons associated with Forest River in connection with the sales of RVs.

Further, there is no requirement in the statute that the false statements need to be made to a customer or potential customer. Instead, it is enough that the statute does require "damage" or at least the likelihood of it, and that is shown here by the allegations of the pleadings and the proximate causation from the use of Forest River's name and the false statements to the resulting dealer sign-ups and orders placed. Merely duping a hotel attendant to do its dirty work does not get Heartland off the hook for the damage it set in motion: it is still actionable passing off under 15 U.S.C.

§1125(a)(1)(A).

Heartland does not address in its motion the passing off aspect of §43(a), but drawing from the arguments it did present, Forest River anticipates Heartland would reply with an argument that since it did not pass off its RVs as those of Forest River, it has no liability. No doubt, Heartland would also argue in the *Pure Imagination* case above that as long as McDonalds convinced someone else to actually put up the false sign, it was not liable for the proximate result.

Analysis of Heartland's Arguments:

Page 3 of Heartland's Memorandum demonstrates the primary flaw in its analysis. Heartland recites the text of §1125(a)(1)(A), the passing off portion of the statute, but then goes on to cite "the following five elements" of "a claim for false or deceptive advertising" under §1125(a)(1)(B)! Passing off law is not the same thing as false advertising law. The primary case relied upon by Heartland, *Truck Components, Inc. v. K-H Corporation*, 776 F. Supp. 405 (N.D. Ill. 1991), starts its analysis with and based its decision on §1125(a)(1)(B), *Id.,* at 408, but actually recognized the historical distinction with respect to passing off claims ("The other typical claim involved the defendants attempts to palm-off its goods as those of the plaintiff and thus ride on the coattails of the plaintiff's goodwill."). *Id.*, at 409.

Heartland may suggest that it did not palm off its RVs as those of Forest River, but it did palm off the envelopes as those of Forest River. Those envelopes led to initial interest confusion of dealers, which led to some dealers to sign up at Heartland and place orders.

A Word about Lures:

Heartland attempts at the outset of its Memorandum to lure sympathy for its motion by the potential of a dismissal of the entire case, as mentioned in its footnote 1 ("If Heartland dismisses these claims, the only claim that will remain is Forest River's Lanham Act counterclaim against Heartland."). First off, under Fed. R. Civ. 41, Heartland cannot dismiss the patent claims without the Court's permission since the Answer has now been served. Second, if Heartland's patent claims are dismissed, Forest River's counterclaim for declaratory judgement, at least based upon the inequitable conduct, is required to remain in this case under Rule 41(a)(2) since it seeks money damages on account of that "fraud" and presents a separate and viable case in controversy, especially in light of Heartland's threats of further litigation on the continuation patent application and/or a reissue of the present patent. *See Implant Innovations, Inc., v. Nobelpharma AB*, 1994 WL 68498 at *2 (N.D. Ill. 1994). Third, and most telling, Heartland can seek to dismiss its claims at any time, or at no time, and Heartland has never offered a consent judgment or even dismissal with prejudice. Heartland claims to be "currently analyzing certain prior art." However, some of the prior art information raised in the Answer was disclosed on November 17, some Heartland has had since early October, and some Heartland has known about for years. Heartland's claims remain nonetheless, and no account should be given to some interest in dismissal until if and when that occurs.

Also, Heartland characterizes the counterclaim it seeks to have dismissed as completely separate from the patent issues, asserting in its Memorandum at page 2 that the passing off was a "commercial activity that is wholly unrelated to the '605 patent at issue." Heartland goes on to suggest that the passing off claim should become a separate action in State Court (see its fn 4 at page 6). However, as Forest River points out at ¶69 of its Answer, those two activities are very much related in that they each arose from a common motivation: to artificially increase Heartland's market

13

share rapidly and allow the stock of Catterton Partners to be sold off. Forest River is not bringing an action for securities fraud in this case, but that motivation is evidence of bad faith in the passing off counterclaim and for the inequitable conduct before the USPTO and for this litigation itself.

Conclusions:

The counterclaim is sufficiently plead to constitute a claim upon which relief can be granted under 15 U.S.C. §1125(a)(1)(A). Heartland's motion is without merit and should be denied.

Dated: December 30, 2008
Respectfully submitted,

s/Ryan M. Fountain
_____
Ryan M. Fountain (#8544-71)
    *RyanFountain@aol.com*
420 Lincoln Way West
Mishawaka, Indiana 46544
Telephone: (574) 258-9296
Telecopy: (574) 256-5137
Attorney for Defendant Forest River, Inc.

**Certificate of Service**

I certify that on December 30, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, which sent notification of such filing to all of the parties through at least the following counsel of record:

David P. Irmscher    david.irmscher@bakerd.com
Abigail M. Butler    abidgail.bulter@bakerd.com

        s/Ryan M. Fountain
        _____
        Ryan M. Fountain
        Attorney for Defendant Forest River, Inc.