# UNITED STATES DISTRICT COURT

Northern District of Indiana
South Bend Division

| | | |
|---|---|---|
| HEARTLAND RECREATIONAL VEHICLES, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO.:<u>3:08-cv-490 RLM CAN</u> |
| v. | ) | |
| | ) | |
| FOREST RIVER, INC., | ) | JURY DEMAND |
| Defendant. | | |

## AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS

Defendant, Forest River, Inc. ("Forest River"), herein further responds to the Complaint of Heartland by answering the allegations of the Complaint and setting forth its defenses to the claims of Heartland based upon information and belief . Forest River then presents three Counterclaims against Heartland herein, also by allegations based upon information and belief:


<u>ANSWERS TO HEARTLAND'S ALLEGATIONS:</u>

1. Heartland is a company organized and existing under the laws of the State of Indiana and has its principle place of business at 1001 All-Pro Drive, Elkhart, Indiana 46514.

   **Response:** Admitted.


2. Heartland is the assignee of record of United States Patent No. 7,278,650.

   **Response:** Admitted that the face of the patent states that assertion, but Forest River is without knowledge or information sufficient to form a belief as to the present ownership of the patent.

1

Dockets.Justia.com

3. Heartland is a leading manufacturer of travel trailers.

**Response:** Admitted that Heartland is a manufacturer of travel trailers. However, the term "leading" is self laudatory and imprecisely defined. Forest River is without knowledge or information sufficient to form a belief as to what the actual status of Heartland is in terms of "leadership" within the industry.

4. Upon information and belief, Defendant Forest River, Inc. ("Forest River" or "Defendant") is a corporation, organized and existing under the laws of the State of Indiana and has its principle place of business at 55470 County Road 1, Elkhart, Indiana 46514.

**Response:** Admitted.

5. This Court has original jurisdiction over the subject matter of this action pursuant to the provisions of Title 28, United States Code ("U.S.C.") §§1331 and 1338(a), because the action arises under the Patent Laws of the United States, Title 35 U.S.C. §100, et seq.

**Response:** Admitted.

6. Upon information and belief, Forest River is subject to personal jurisdiction in this district because, *inter alia*, it directly and through its agents regularly does, solicits, and transacts business in the Northern District of Indiana.

**Response:** Admitted.

7. Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and c) and §1400(b).

**Response:** Admitted.

8. Heartland hereby incorporates by reference the allegations set forth in paragraphs 1 through 7 as if fully set forth herein.

**Response:** That Heartland has so incorporated its prior allegations is admitted, but the response of Forest River to the content of those prior allegations remains as stated above and need not be repeated here.

9. On October 8, 2007, United States Patent No. 7,278,650 (the "650Patent"), entitled "Travel Trailer Having Improved Turning Radius" was duly and legally issued to Heartland, as assignee. A copy of the '650 patent is attached hereto as Exhibit A.

**Response:** Forest River denies that the '650 Patent was duly and legally issued. That the '650 Patent was issued on that date, that Heartland was indicated to be the assignee on the face of the patent, and that Heartland attached a copy of the patent as Exhibit A are admitted.

10. Possessing all substantive rights to the '650 Patent and the '650 patent being in full force and effect, Heartland has the right to sue for any infringement thereof.

**Response:** Forest River is without sufficient knowledge or information sufficient to form a belief as to who presently owns the '650 patent and/or rights to any actions for infringement. Forest River denies that the '650 Patent is in full force and effect. Forest River denies that Heartland has the right to sue for infringement of the '650 since, among other things, Heartland's fraudulent conduct in obtaining the patent preclude enforcement of the patent by Heartland.

11.  Upon information and belief, Forest River is infringing upon the '650 patent, either directly or contributorily, by making, using, selling, offering for sale, or supplying travel trailers, including Forest River's Silverback product, all in violation of 35 U.S.C. §271 et seq., and will continue to do so unless enjoined by this Court.

     **Response:** Denied.

12.  By reason of Forest River's acts of infringement, Heartland has suffered and is suffering damages, including impairment of the value of the '650 patent, in an amount yet to be determined.

     **Response:** Denied.

13.  Forest River's acts of infringement are causing irreparable harm to Heartland and will continue to cause irreparable harm unless enjoined by this Court.

     **Response:** Denied.

14.  Upon information and belief, Forest River's continued infringement of the '650 Patent is willful and justifies a trebling of damages pursuant to 35 U.S.C. §284.  Further, this is an exceptional case supporting an award of reasonable attorneys' fees pursuant to 35 U.S.C. §285.

     **Response:** As to the first sentence, denied.  As to the second sentence, agreed to the extent that attorneys' fees should be awarded to Forest River on account of the conduct of Heartland described herein below.

<u>DEFENSES AGAINST PATENT INFRINGEMENT AND BASES FOR COUNTERCLAIMS:</u>

15.  Using the reference numbers of the patent for illustration, the claims of the '650 Patent require at least the following elements in a travel trailer chassis:

    a.  a forward edge beam (88) having a first end,

    b.  an outer side frame member (84) substantially perpendicular to the forward edge beam and having a forward end,

    c.  a first cross beam (116) substantially perpendicular to the side frame member and connected to the forward end of the side frame member at a location rearward of the forward edge beam, and

    d.  a second cross beam (120) substantially parallel to the outer side frame member and connected to the first cross beam and the first end of the forward edge beam.

16.  Figure 14 of the '650 Patent, shown below, illustrates a top perspective view of one embodiment of the invention claimed by that patent, as set forth in Claim 1.



FIG. 14

5

17. The photograph below shows the underside view of the front of a type of travel trailer chassis made, used, and sold by Forest River more than one year before the priority date of the '650 Patent, March 29, 2004, and before the invention claimed by the '650 was conceived and reduced to practice by the named inventors of that patent.



18. The travel trailer chassis type shown in the photograph of ¶17 is "prior art" with respect to the '650 Patent, as that term is meant under the Patent Laws of the United States.

19. After Heartland accused Forest River of infringing the '650 Patent, Forest River informed Heartland of the trailer chassis type of ¶17 and of Forest River's assertions of the significance of that chassis type as prior art, and provided specimens of that trailer chassis type which were inspected

by Heartland's attorneys at one of Forest River's production facilities more than a month before this lawsuit began. At that inspection, Forest River also provided those attorneys with sample invoices showing that this travel trailer chassis type was on the market several years before the priority date of the '650 Patent.

20. Each and every element and combination of Claim 1 of the '650 Patent is found in the prior art travel trailer chassis type of ¶17.

21. The drawing below shows a top view of a travel trailer chassis made, used, and sold by Roadmaster at least as of October, 2000.



22. The travel trailer chassis of ¶21 is also prior art with respect to the '650 patent.

23. Using the reference letters shown in that drawing, the travel trailer chassis of ¶21 has:

    a. a forward edge beam (B) having a first end,

    b. an outer side frame member (A) substantially perpendicular to the forward edge beam and having a forward end,

    c. a first cross beam (C) substantially perpendicular to the side frame member and connected to the forward end of the side frame member at a location rearward of the forward edge beam, and

    d. a second cross beam (F) substantially parallel to the outer side frame member and connected to the first cross beam and the first end of the forward edge beam.

24. Roadmaster is a competitor of Heartland and was a competitor of Damon Corporation when Brian Brady was President of Damon Corporation.

24. At least one of the named inventors of the '650 Patent, including Brian Brady (the president of Heartland), was aware of the travel trailer chassis of ¶21 prior to filing the application for the '650 Patent.

25. The alleged "invention" of the '650 Patent is for a travel trailer having an improved turning radius. The actual effort of the named inventors in creating this invention was to create a travel trailer having an improved turning radius by altering the configuration of the front, exterior cap of

a fifth wheel travel trailer. As originally filed, the application for the '650 Patent included claims directed toward that front, exterior cap configuration. However, the frame design for the chassis which supports the front, exterior cap was actually created by at least in part by employees of Lippert Components, and not by all of the named inventors. During prosecution of that application, Heartland deleted those cap claims and amended its application to include only claims directed to the chassis frame. The application did not originally include and was not amended to include the identity of the employees of Lippert Components who created the frame design.

26. Accordingly, the '650 Patent is invalid under 35 U.S.C. §102(a), (b), and (f) since the invention claimed by that patent was anticipated by the prior art, including the prior art of Forest River and others and does not meet the conditions of patentability. That invention was known and used by others in this country before the "invention" thereof by the applicants for the '650 patent. That invention was described in printed publications, in public use, and on sale in this country more than a year prior to the date of the application for patent in the United States. Moreover, all of the named inventors did not themselves invent the subject matter claimed in the '650 Patent.

27. In addition to the prior art of ¶s 17 and 21, more than a year before the priority date of the '650 Patent there were a large number of travel trailers made, used, and publically sold in this country which included "V," "bull nose," or otherwise tapered front ends which would prevent the travel trailer from adversely affecting the turning radius of the towing vehicles. Manufacturers of such trailers included Cobra, Bison, Aluminum Trailer Co., Roadmaster, Cherokee, and Sundowner. These travel trailers are also prior art with respect to the '650 Patent. At least one of the named

inventors of the '650 Patent was well aware of at least some of these prior art travel trailers before and during the prosecution of the application for the '650 patent. In addition, more than a year before the priority date of the '650 Patent, there were a number of travel trailers which included notched or cut out portions of the front, exterior cap which would prevent the travel trailer from adversely affecting the turning radius of the towing vehicles. One example of such is the Holiday Rambler, Crown Imperial model, made between 1990 and 1992, a photograph of which is shown below:



28. The travel trailer shown in the photograph of ¶27 is prior art with respect to the '650 Patent.

29. Accordingly, the '650 Patent is invalid under 35 U.S.C. §103 since even if the "invention" is not identically disclosed or described as set forth in 35 U.S.C. §102, the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the "invention" was made to a person having ordinary skill in the art of creating travel trailers. The improvement suggested by the applicants for the '650 patent was no more than the predictable use of prior art elements according to their established functions. *KSR Int'l. v. Teleflex, Inc.*, 550 U.S. 398, 127 S. Ct. 1727, 167 L. Ed 2d 705 (2007).

30. Heartland is bound by the Patent Examiner's assessment of the level of ordinary skill in the art and "obviousness" under 35 U.S.C. §103 made during prosecution of the application for the '650 Patent and is barred under the Doctrine of File Wrapper Estoppel from now asserting a different level of ordinary skill in the art in defending against the allegations of ¶29. The Patent Examiner's assessment in that regard is reflected in the Office Action of July 24, 2007 when rejecting many of the claims under 35 U.S.C. §103. Heartland did not traverse that rejection in its Amendment of August 2, 2007. That failure to traverse was knowing and intentional by Heartland, made expressly "in order to passage quickly to issuance" so that Heartland could assert that patent against Forest River and attempt to divert sales from Forest River.

31. The '650 Patent was not validly issued in light of the requirements of 35 U.S.C. §112 (second

paragraph), in that one or more of the Claims do not particularly point out and distinctly claim the subject matter which the applicants regard as their invention. Instead, for example, certain terms and phrases in the Claims, such as "connected to the forward end" and "substantially" are made intentionally ambiguous. Further, the Claims are invalid under the "Missing Element" doctrine, as applied under §112.

32. The '650 Patent was not validly issued in light of the requirements of 35 U.S.C. §101 since the named inventorship is not accurate. No correction of that named inventorship was made during prosecution of the application for that patent as the scope and content of the claims sought was changed by Heartland's amendments to the application. Incorrect named inventorship inherently causes increased cost in enforcement litigation. Heartland failed to comply with this requirement of the patent laws in willful or reckless disregard of its adverse impact on accused infringers.

33. The Complaint did not indicate which of the Claims in the '650 Patent that Forest River is considered to infringe. Accordingly, Forest River specifically litigates herein against all of those Claims. Under 35 U.S.C. §288 (second sentence), Heartland is not entitled to recover costs in this litigation even if it prevails on one or more of the Claims of the '650 Patent because one or more other Claims of the '650 Patent are not valid and Plaintiff has filed no disclaimer of the invalid Claims with the United States Patent and Trademark Office ("USPTO") prior to commencing this lawsuit.

34. The Silverback travel trailer of Forest River was specifically designed by Forest River to avoid

infringement of the '650 Patent after Heartland informed Forest River of that patent. A top,

perspective view of the chassis of the Silverback travel trailer is shown below:



35. Unlike with the '650 Patent, the Silverback trailer achieves a reduced turning radius not by an inward recess or notch in the frame, but rather by using outriggers (19), (22), (23), and (24) extending forward from the frame. The use of outriggers on travel trailers is very old in the art and well known. An example of prior art travel trailer chassis using outriggers is shown in the drawing of ¶21 (note elements I extending from the outer side frame members A). Forest River is not aware of any prior use of outriggers extending forward from the frame. However, that novel feature is not contemplated by '650 Patent.

36. Heartland alleges that the Silverback trailer infringes the '650 patent because that chassis has:

    a.  a forward edge beam (8) having a first end,

    b.  an outer side frame member (4) substantially perpendicular to the forward edge beam and having a forward end (25),

    c.  a first cross beam (5) substantially perpendicular to the side frame member and connected to the forward end of the side frame member at a location rearward of the forward edge beam, and

    d.  a second cross beam (7) substantially parallel to the outer side frame member and connected to the first cross beam and the first end of the forward edge beam.

37. To the extent that the Silverback trailer has the chassis elements and combination of elements which form the basis for Heartland's allegation of infringement, those same chassis elements in that same combination and for that same purpose are found in the prior art with respect to the '650 Patent. Examples of such are the Roadmaster trailer shown in the drawing of ¶21 and the Cherokee

trailer shown in the front end underside view below:



38.  The trailer shown in the photograph of ¶37 was made on June 5, 2000, according to its VIN plate, by Cherokee Industries, Inc., of Oklahoma City, OK.  That trailer is prior art with respect to the '650 patent.

39.  Based upon the teachings of the unpatented prior art, Forest River has a right to use the chassis elements and combination of elements which form the basis for Heartland's allegations of infringement.  Accordingly, Forest River does not infringe the '650 Patent.

40.  Heartland has accused Forest River of "willful" infringement, and on that basis seeks to obtain treble damages and attorneys fees.  However, Heartland has made that accusation in bad faith and

without evidentiary support and without a likelihood that evidentiary support will exist after a reasonable opportunity for further investigation or discovery.

41. Specifically, prior to the issuance of the '650 Patent, the application for that patent was published by the USPTO. That publication included substantially different claims that those which were ultimately issued in the patent. Those original claims primarily focused upon the configuration of the travel trailer cap which provided an improved turning radius. When Heartland informed Forest River of the application for the '650 Patent and warned Forest River about patent infringement, Forest River responded by conducting an investigation into the scope and content of the prior art relevant to the original claims in the application and then informing Heartland that the claims of that application were considered invalid in light of the prior art. See Exhibit A hereto. Thereafter, the Patent Examiner did in fact reject most of the claims of the patent application in light of certain prior art, even though Forest River was not permitted to participate in the prosecution of that application. The Patent Examiner's rejection of those claims was not based upon the unpatented industry prior art which was known to Forest River. Prosecution of the application for the '650 Patent was in fact kept secret from Forest River by the USPTO and by Heartland even though Heartland had accused Forest River of infringement and expected Forest River to avoid infringement of the claims not yet allowed by the USPTO.

42. In September, 2007, after the '650 Patent was amended by Heartland to delete the claims referring to the improved turning radius front cap and after the frame claims were allowed by the USPTO but before the patent issued, Heartland falsely represented to various suppliers of Forest

River that Heartland had a patent on the "turning radius cap" and threatened those suppliers with patent infringement litigation if they continued to assist and sell products to Forest River which related to a prototype Surveyor model then being considered by Forest River, but not yet in production. Forest River was informed of those threats by suppliers and conducted a more extensive investigation into unpatented prior art of travel trailers having a front end which facilitates an improved turning radius. The Roadmaster and Cherokee prior art referred to in ¶s 21 and 37, for example, were discovered by Forest River at that time. The results of that investigation confirmed Forest River's prior assessment about the invalidity of the patent claims sought by Heartland.

43. After the '650 Patent issued, Heartland again contacted Forest River and accused it of patent infringement, even though at that time Forest River did not have any accused product on the market. Heartland's claim was based upon discovering a Cedar Creek prototype travel trailer frame which Forest River had entrusted to one of its suppliers pending completion of the new frame design. Thereafter, Forest River and Heartland engaged in extensive discussions about the patent validity, Heartland's fraud, and patent infringement issues, with Forest River providing detailed information about the bases for its belief that Heartland had no legitimate claim against Forest River. See, for example, Exhibits B and C hereto.

44. Ultimately, the Cedar Creek prototype evolved into the Silverback model, and Forest River began production and sales of that product. In doing so, Forest River did not disregard or ignore Heartland's patent or act in bad faith toward it. Instead, Forest River did so in the good faith belief, based upon its detailed investigation, that the '650 Patent was not validly issued in light of the prior

art unknown to the USPTO, not enforceable due to Heartland's fraud during patent prosecution, and in any event, not infringed by the Silverback product because of the substantial differences in the chassis design.

45. Accordingly, even if it turns out that the '650 Patent is valid and enforceable and infringed by Forest River, that infringement is not "willful" within the meaning of the Patent Laws, and Heartland is not entitled to treble damages or attorneys fees.

46. Regardless of the validity of the '650 Patent, and regardless of the infringement of that patent if it was validly issued, the '650 Patent is not enforceable by Heartland against Forest River because of fraud and inequitable conduct committed by Heartland during the prosecution of the application for that patent.

47. Heartland made false or misleading statements of pre-existing fact to the USPTO in its application for the '650 Patent. Specifically and for example, in the "Background" portion of the specification Heartland asserted as to the scope and content of the prior art: "Conventionally, the upper deck of a typical fifth wheel has a rectangular or parallelogram-shape footprint whose forward corners form right angles." Further on, the specification includes Figure 9A and a description of that as prior art. Heartland knew these statements were false and incomplete and were misleading at the time they were made. Heartland was aware at the time the application was filed with the USPTO that many typical prior art travel trailers included "V," "bull nose," or otherwise tapered front ends. Heartland knew these typical prior art trailers had forward corners which were not right angles and

which would prevent the travel trailer from adversely affecting the turning radius of the towing vehicles. Heartland knew these prior art trailers would provide the same benefits of the claimed invention and in the same manner. Heartland had this knowledge as a result of its direct competition with some of the manufacturers of this prior art and because one or more of the named inventors was aware of this prior art from their many years of experience in the travel trailer industry. Heartland knew or should have known that the undisclosed information was material to the patentability of the claims of the application for the '650 Patent

48. Under 37 C.F.R. §1.56 Heartland, its attorneys before the USPTO, and each of the named inventors personally had "a duty of candor and good faith" to the USPTO and were required to disclose to the USPTO "all information known to" them which was material to the patentability of "each pending claim." Neither Heartland nor the named inventors complied with this duty. For example, on June 27, 2005, Heartland filed an Information Disclosure Statement with the USPTO which listed certain patents, but Heartland expressly refused to admit to the USPTO that any of those patents was material to the patentability of any pending claim or even qualified as prior art (see Exhibit D hereto), and failed to ever identify any prior art to the USPTO which it considered to be material to the patentability of any claim, and especially failed to inform the USPTO of any of the unpatented prior art frames actually made and sold within the industry, despite having actual knowledge of frames which were material to the examination of its patent claims, such as is referred to in ¶s 24 and 27.

49. Further, after initially accusing Forest River of expected patent infringement and while the

application for the '650 Patent was still pending, on July 11, 2005, Forest River responded to that accusation in writing with information about the "Eliminator" travel trailer prior art which "anticipated" at least some of Heartland's pending claims and rendered them unpatentable under the patent laws. Heartland failed to disclose that information to the USPTO during the entire pendency of the patent application. Heartland knew or should have known that the undisclosed information was material to the patentability of the claims of the application for the '650 Patent. Heartland failed to make that disclosure because it wanted the '650 Patent to be allowed and issued by the USPTO with as broad a set of patent claims as it could get and as soon as possible (see ¶30 above, last sentence). Heartland wanted the patent to issue as soon as possible so that it could use the issued patent as a colorable claim of exclusionary power in the market for travel trailers. Heartland intended to and did use the issued patent to threaten and intimidate its competitors, the competitors' suppliers, and the competitors' customers so as to increase Heartland's own sales, market share, and economic power within the travel trailer market. Heartland was doing so pursuant to a "five year plan" entered into with Catterton Partners to artificially increase the market share in a manner which was intended to allow Brian Brady and Catterton to sell off equity interest in Heartland.

50. Later, after the present lawsuit began and the Heartland was informed that Forest River intended to use the Eliminator reference in its defense against the '650 Patent, Heartland secretly disclosed that reference to the USPTO in a continuation patent application, Serial Number 11/834,214, (see Exhibit E, and the listed exhibits 1 - 5 therein) which was based upon the disclosure of the '650 patent and which was intended to serve as a "submarine patent" to be used against Forest River in litigation. When confronted by the Patent Examiner in a personal interview at the USPTO (which

interview Forest River was not informed of in advance or permitted to attend) on December 4, 2008, Heartland discussed the present litigation with the Patent Examiner and then admitted that the Eliminator reference was prior art with respect to the claimed invention (see Exhibit F, middle portion of page). However, immediately afterwards Heartland attempted to withdraw and conceal that admission as well as the other arguments/admissions made to the Patents Examiner during that interview.

51. For example, the next day, December 5, 2008 when Heartland filed the formal Information Disclosure Statement, it retracted the admission that the Eliminator reference (and indeed any other reference cited therein) was prior art or material information to the examination of the patent claims (see Exhibit G, ¶2). Further, since Heartland is bound under the doctrine of "File Wrapper Estoppel" to the explanations, interpretations, evidence, and arguments made before the Patent Examiner when litigating any issued patent and since Heartland had requested the Patent Examiner to reconsider his rejection of the continuation application at that interview, then under 37 CFR §1.133(b) after the interview Heartland was required to file with the USPTO "a complete written statement of the reasons presented at the interview as warranting favorable action." Heartland did not do so. Instead, Heartland filed the summary remarks and "thank you" shown in Exhibit H hereto. Heartland ignored this disclosure and recordation requirement despite being specifically reminded of its obligation to do so by the USPTO (see Exhibit I, last parag., and Exhibit J, 7th parag.).

52. Heartland failed to make the disclosure required under 37 CFR §1.133(b) in order: a.) to conceal from Forest River in this litigation the weaknesses in the arguments presented to the USPTO which

led to the Patent Examiner's agreement during the interview to issue a new set of claims for use in renewed litigation against Forest River and b.) to conceal the fact that Heartland is interpreting the scope of the patent claims differently in this litigation than it did before the USPTO. Heartland did this because a.) it wanted to strengthen its litigation posture by the statutory "presumption of validity" and b.) impose a greater litigation burden and uncertainty on Forest River regardless of the true merit of its patent claims and c.) prolong the overall litigation against Forest River so as to use the colorable claim of the patent to affect dealer purchasing decisions. Heartland's objective in that regard was to curtail Forest River's ability to effectively compete in the market for travel trailers, particularly the type of travel trailers referred to as "fifth wheels."

53. Heartland has filed two continuation patent applications based upon the '650 Patent, those applications being identified by the USPTO as Serial Nos.11/834,214 and 12/315,894 (referred to below as "the '214 case" and "the '894 case," respectively). Those patent applications are being used at least in part by Heartland as "submarine patents" in the present lawsuit to attempt to shift the burden of proof in this lawsuit and to ensure that litigation between the parties continues over the subject matter of the '650 Patent even if Heartland dismisses its claims under the '650 Patent. At least some of the patent claims of the pending patent applications are so similar to the scope of the patent claims in the '650 Patent that the USPTO considers them to be patentably indistinct. To overcome rejection of the '214 case under the doctrine of "double patenting" because of that lack of distinction, Heartland filed a Terminal Disclaimer on December 5, 2008, and admitted thereby that at least some of patent claims were patentably indistinct.

54. The '894 case was filed after Forest River filed and served its Answer in this lawsuit. The '214 case and '894 case include patent claims asserting scope of invention which significantly exceeds what the inventors considered to be their invention. The newly asserted claims were presented only after Heartland saw products which its competitors invented to avoid infringement of the '650 Patent and/or to obtain similar or better turning radius results for fifth wheels. Such information would be material to the patentability examination of the '214 and '894 cases by the USPTO. Heartland knew or should have known that the undisclosed information was material to the patentability of the claims of the application for the '650 Patent. Heartland did not inform the USPTO of these facts, despite its obligation to do so under 37 CFR §1.56.

55. The named inventors of the '650 Patent and the '214 and '894 cases are not "co-inventors" within the meaning of the patent laws. Certain of those persons, Mr. Brady in particular, is not an inventor of the subject matter claimed in the '650 Patent and/or the '214 and '894 cases. Instead, the five named inventors were merely the original shareholders of Heartland. The error in designation of inventorship did not arise without deceptive intent. Naming the shareholders rather than the true inventors was done intentionally for business control, ownership and/or operational purposes. Such information would be and have been material to the patentability examination of the '650 Patent application and/or the '214 and '894 cases by the USPTO. Heartland knew or should have known that the undisclosed information was material to the patentability of the claims of the application for the '650 Patent. Heartland did not inform the USPTO of these facts, despite its obligation to do so under 37 CFR §1.56.

56.  The actions of Heartland referred to in ¶s 47 - 55 were made with the specific intent that the Patent Examiner rely upon the lack of material prior art references in the patent application record and the accuracy of the application information provided by Heartland in making his decision to allow some or all of the original claims presented by Heartland.

57.  The Patent Examiner of the '650 Patent was justified in relying upon a patent applicant to comply with its duty under 37 C.F.R. §1.56.  The Patent Examiner did in fact rely upon the lack of material prior art in the patent application record with regard to the subject matter of Claims 1 - 3 of the '650 Patent in making his decision to allow those claims.

58.  The present lawsuit against Forest River could not have been brought by Heartland if the Patent Examiner had decided not to allow the claims of the '650 Patent.

59.  The present lawsuit against Forest River has and will cause Forest River to incur costs and expenses.

60.  The actions of Heartland referred to in ¶s 47 - 55 constitute "inequitable conduct" within the meaning of the Patent Laws and fraud.

61.  Accordingly, Heartland's fraudulent and inequitable conduct referred to in ¶s 47 - 55 has caused damage to Forest River and warrants a finding both that this case is "exceptional" within the meaning of 35 U.S.C. §285 such that Forest River should be awarded its reasonable attorneys' fees,

*see, e.g., A.B. Chance Co. v. RTE Corp.*, 854 F. 2d 1307, 1312 (Fed. Cir. 1988)(inequitable conduct before the USPTO can support an award of attorneys' fees) and that Heartland is barred from enforcing the '650 Patent under long established principles of equity and patent law, *see, e.g., Precision Instrument Mfg., Inc. v. Automotive Maintenance Mach., Co.,* 324 U.S. 806, 65 S. Ct. 933, 89 L. Ed. 1381 (1945)(traditional doctrine of "Unclean Hands" bars enforcement if patent obtained through fraud or inequitable conduct); *J.P. Stevens & Co., Inc., v. Lex Tex Ltd., Inc.*, 747 F. F2 1553, 1560-61 (Fed. Cir. 1984)(inequitable conduct with respect to any claim prevents enforceability of all claims of the patent - the so-called "All Claims Rule"), *cert. denied,* 474 U.S. 822 (1985).


## COUNTERCLAIMS AGAINST HEARTLAND:


A.  Declaratory Judgement of Invalidity, Non-infringement and Unenforceability


62.  As shown by the Complaint, Heartland has brought a lawsuit against Forest River in this Court, and Forest River's continued sale of the accused products is put at substantial risk of liability. Forest River has, by conferences with Heartland prior to and after the filing of this lawsuit, attempted to resolve this matter without litigation and/or without further litigation, but has been unsuccessful. Accordingly, a case of actual controversy exists between the parties and within the jurisdiction of this Court that is now ripe for a declaration of the rights of the parties by this Court under 28 U.S.C. §2201 as to the following allegations of Forest River:

63.  One or more of the Claims of the '650 Patent was not validly issued in light of the requirements of 35 U.S.C. §§101, 102, 103, and/or 112, including, but not limited to, for the

reasons set forth more fully above.

64.   The products of Forest River do not infringe upon the Claims of the '650 Patent since those products do not have one or more of the required elements of the patent claims or the equivalent of those required elements, including, but not limited to, for the reasons set forth more fully above.

65.   The '650 Patent is not enforceable by Heartland in whole or part, including, but not limited to, for the reasons set forth above and the reasons set forth below.

66.   Further, even if Heartland dismisses the infringement claims against Forest River based upon the '650 Patent itself, that action would be a sham since an actual case in controversy would still exist between these parties.   Heartland intends to assert additional claims of patent infringement against Forest River based upon a patent issuing from at least the '214 case.   In that '214 case, among the allowable patent claims which Heartland intends to assert, there are patent claims which are patentably indistinct from those patent claims asserted against Forest River in the '650 Patent. Accordingly, litigation is likely to continue involving patent claims which are patentably indistinct from those presently before the Court.

67.   The fraud and inequitable conduct and prior art which renders the '650 Patent unenforceable is directly related to the subject matter of the allowed claims in the '214 case.   Further, Heartland used the '650 Patent as a vehicle for obtaining additional prior art information in litigation which it attempted to neutralize via the Patent Examiner interview process in the '214 case without disclosure of evidence binding it under the Doctrine of Equivalents.   Accordingly, any patent issuing from the

'214 case is also unenforceable. *See Consolidated Aluminum Corp. v. Foseco Intern. Ltd.*, 910 F. 2d 804 (Fed. Cir. 1990).

68.  Forest River has a reasonable apprehension that litigation will continue with respect to patent claims which are patentably indistinct from those in the '650 Patent and through patents continuing from and claiming patent "priority" based upon the disclosure of the '650 Patent.  Some of the bases for this apprehension are:

a.  After this lawsuit began based upon the "650 Patent, Heartland took the prior art disclosed by Forest River in this patent application back to the USPTO and sought to obtain allowance of a new set of claims with which Heartland intends to sue and/or threaten to sue Forest River when a patent issues from the '214 case.

b.  After Forest River filed its Answer in this case, Heartland filed a third patent application, the '894 case, based upon the disclosure of the '650 patent which it intends to use as a further submarine patent to sue or threaten to sue Forest River if additional prior art is disclosed after issuance of a patent from the '214 case,

c.  Heartland failed to provide the required disclosure under 37 CFR §1.133(b) when overcoming the prior art during the Dec. 4, 2008 private interview with the Patent Examiner. Such a disclosure would have committed Heartland to interpretations of the prior art and claims scope which are inconsistent with the arguments made to Forest River in this litigation.  Such a disclosure would limit Heartland's ability to alter its legal arguments under the Doctrine of File Wrapper Estoppel in any future litigation based upon the '214 case.

d. Heartland has targeted Forest River as its principle competitor in recent advertisements and promotional materials. This has happened at a time when Forest River is one of the few RV manufacturers that has been able to ride out the current severe economic downturn in the RV market.

e. Heartland has sought to maximize the marketing advantages of a colorable claim for patent infringement against Forest River, regardless of the known infirmities of the '650 Patent, by coupling it with other deceitful actions. For example, the "hotel action" described more fully below took place only two days before Heartland filed this lawsuit. At the time of the "hotel action," Heartland knew that it was going to file this lawsuit and had already instructed its attorneys to do so. It was Heartland's intent that the lawsuit happen at the same time as the "hotel action" so as to have a detrimental effect upon Forest River's private trade show by also embarrassing Forest River to the dealers present at that trade show.

f. Prior to this litigation, Forest River offered to identify all of the prior art it had against the '650 Patent if Heartland would agree that any litigation involving the disclosure of the '650 Patent would only be through the '650 Patent (i.e., there would be no subsequent litigation involving any patent continuing from that disclosure, no submarine patents). Heartland refused to do so.

g. During the Preliminary Pre-trial Conference of January 7, 2009, Heartland suggested that the prior art Forest River cited in its Answer, particularly the Roadmaster trailer, may render the '650 Patent invalid and that Heartland may seek to dismiss this lawsuit. Forest River indicated, among other things, that it would oppose that dismissal unless Heartland was willing to enter into a judgment which would prevent future litigation

over the continuation cases.  Heartland refused that offer.

69.  Accordingly, a case in controversy also exists, and remains between Forest River and Heartland regardless of whether the infringement claims under the '650 Patent are dismissed, for so long as there is a dispute based upon any other patent issuing therefrom and for so long as those patent claims are tainted by the inequitable conduct and fraud of Heartland which also tainted the parent patent case. *See, e.g., Mobile Oil Corp. v. Advanced Environmental Recycling Technologies, Inc.*, 28 USPQ 2d 1075 (D.Del. 1993)(reasonableness of apprehension of litigation continues when patent owner refuses to accept a judgment of non-infringement or grant a covenant not to sue).

70.  There is a strong public interest in our community in resolving the issue of the validity and enforceability of the '650 Patent and any other patent based upon the disclosure of that patent. Heartland has threatened to sue Global Glass, Lippert Components, and Keystone for infringement of its patent rights under the '650 Patent and its progeny.

B.  Infringement of Forest River's Trademark Rights under 15 U.S.C. §1125

71.  This counterclaim is an action for infringement of federal trademark rights under 15 U.S.C. §1125.  This Court has jurisdiction over this claim pursuant to 15 U.S.C. §1121 and 28 U.S.C. §1331.  Venue is proper in this district under 28 U.S.C. §13391(b) and (c) since the accused party, Heartland, is an Indiana corporation which has its principle place of business in this district and is subject to personal jurisdiction in this district.

72.  Under 15 U.S.C. §1125(a)(1)(A), "any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, . . or commercial activities by another person, . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

73.  On October 22 and 23, 2008, Forest River hosted a private trade show next to its corporate offices in Elkhart, Indiana.  On display were nearly the full range of product types manufactured and sold by the various divisions of Forest River, including boats, portable toilets, cargo trailers, travel trailers, motor homes, and modular buildings.  More than 700 guests were invited to attend, representing approximately 350 RV dealerships from across North America and as far away as Australia.  This event was briefly featured on the evening news of WSBT-TV in South Bend on October 22, 2008.  However, this was not a public showing of Forest River products; the facilities were surrounded by a chain link fence, and there were gate attendants at the entrance to ensure that only invited guests and other persons given specific permission by Forest River could attend.

74.  A theme of this trade show was "Pick Your Partner," referring to the business relationships that can develop between an RV manufacturer and an RV dealer.  One of the purposes of this event was to encourage sales of various Forest River products to new and existing RV dealers.  However, there were also presentations made and information given to those dealers about methods of coping with and remaining profitable during the current economic downturn in the RV industry, as well as

presentations made and information given to dealers by related businesses involved in RV financing and insurance, such as GEICO (like Forest River, another subsidiary corporation of Berkshire Hathaway, Inc.).

75.  To provide overnight accommodations for its guests, Forest River reserved several hotels in Mishawaka, Indiana, including the Hyatt Place, Country Inn & Suites, Residence Inn, Courtyard Marriott, Springhill Suites, Holiday Inn Express, Hampton Inn, and Varsity Club.  Forest River created an internal business document, called a "Master List," identifying each guest who would be attending the private trade show and which hotel that guest would be staying at.  Forest River paid for its guests' accommodations at these hotels.

76.  On Wednesday, October 22, at approximately 3:30 p.m., while most of Forest River's guests were in attendance at the private trade show, Heartland had several of its employees enter into each of the hotels reserved by Forest River.  Those Heartland employees were carrying stacks of envelopes, each labeled with the name of a Forest River guest and an identification of which hotel that guest was staying at.  Those Heartland employees went to the front desks of the hotels and then falsely stated and represented to the hotel attendants present that they were "from Forest River" and had envelopes which needed to be delivered to the Forest River guests.  The contents of those envelopes were falsely described and represented to the hotel attendants as "important" and "needed for a Forest River dealer meeting the next day."  Those Heartland employees induced the hotel attendants to immediately deliver the envelopes to the rooms of each named guest in their respective hotels, such as by slipping the envelopes under the guests' room doors.  Security video cameras

monitoring the front desks in at least two of these hotels recorded this event and the Heartland employees doing it.

77.  The envelopes contained documents advertising Heartland's travel trailers and documents comparing several Flagstaff models of Forest River products with certain North Trail models of Heartland products.  The envelopes also contained a specific invitation to visit Heartland's place of business in Elkhart that same week, while the guests were in the area attending Forest River's private trade show, including a map showing how to get there.

78.  Several of Forest River's guests, who were RV dealers, were induced by the contents of those envelopes to visit Heartland's place of business that same week.  Several of those RV dealers were induced by Heartland to sign up as Heartland dealers and placed orders for Heartland travel trailers. Brian Brady, the president of Heartland, informed other dealers of Heartland of these events in email correspondence sent by him at 7:36 p.m. on October 28, 2008.

79.  Heartland is a direct competitor of Forest River.  Sales of Heartland travel trailers can reduce sales of Forest River travel trailers.  The hotel action of Heartland resulted in some lost sales by Forest River.

80.  Accordingly, Heartland is liable to Forest River under 15 U.S.C. §1125(a)(1)(A) on account of the false statements and representations made to the hotel attendants which deceived those attendants into delivering Heartland advertisements to Forest River guests at a key time in the private trade

show event. Those actions of Heartland also resulted in disruption and confusion among several of Forest River's guests because of the incongruity and surprising manner in which the envelopes were delivered.

81. Heartland's actions in this regard were willful and deliberate, with several purposes in mind. One of Heartland's purposes was to obtain immediate financial gain by signing up new dealers and selling travel trailers to those dealers. Another of Heartland's purposes was to disrupt Forest River's private trade show, embarrass Forest River before its customer base, and thereby decrease Forest River's sales of travel trailers and other products. To a degree, that disruption and embarrassment did adversely affect Forest River's good will with its dealers and adversely affected Forest River's sales of its products. Coincident with the "hotel action" described in ¶s 63 and 64, Heartland has disparaged Forest River's private trade show by repeated correspondence with RV dealers which suggests Forest River as a "False Partner," a derogatory allusion to the "Pick Your Partner" theme. Heartland's actions exceed the pale of legitimate competition and instead demonstrate bad faith and actual malice toward Forest River. In that regard, Heartland has engaged in unfair competition against Forest River.

82. Heartland was motivated to that unfair competition, including the "hotel action," by the financial incentives offered by Catterton Partners, a Connecticut firm which obtained a controlling or equity security interest in Heartland in 2007 as a short term investment and who seeks to rapidly increase Heartland's market share in the RV industry so that Catterton can then quickly sell off ownership interest at a profit. When the recent economic downturn in the RV industry stunted the potential for

Heartland to obtain that rapid growth by legitimate competition, Heartland turned to illegal means, such as the "hotel action," to attempt to reach that investor's goal.

83. Accordingly, Heartland is a willful infringer under the Lanham Act, justifying an award of damages, including treble damages, to Forest River, and this is an "exceptional case" within the meaning of 15 U.S.C. §1117, justifying an award of attorneys fees to Forest River.

84. Accordingly, an injunction against Heartland is justified and properly entered under 15 U.S.C. §1116 for a period of time against any and all sales and business relationship with any dealer doing business with Heartland as a result, in whole or part, of the "hotel action."

## C. Civil Action under Criminal Deception

85. This counterclaim is an action under IC 34-24-3-1 on account of pecuniary losses suffered by Forest River as a result of criminal deception by or resulting from Heartland's acts in violation of IC 35-43-5-3 (6). This Court has jurisdiction over this counterclaim under 28 U.S.C. §1367(a). Venue is proper in this district under 28 U.S.C. §13391(b) and (c) since the accused party, Heartland, is an Indiana corporation which has its principle place of business in this district and is subject to personal jurisdiction in this district.

86. The deception of Heartland in violation of IC 35-43-5-3 (6) is based upon the same "hotel action" event which gives rise to the Lanham Act counterclaim set forth above.

87. The actions of Heartland employees described above in ¶76 were intentional and were caused by Heartland. By the statements made to the hotel attendants, Heartland's employees intentionally misrepresented both their identities and the identity of the envelope property given to the hotel attendants. Heartland intended that misrepresentation to occur so as to defraud the hotel attendants into delivering Heartland advertisements to a select group of Forest River dealers. Heartland intended that delivery would also deprive Forest River of sales from those dealers receiving the envelopes. Heartland did this for both personal financial gain and maliciously so as to embarrass Forest River in the eyes of those dealers at an important time, during Forest River's private trade show.

88. Forest River has and will suffer pecuniary loss resulting from this deception by Heartland, including lost sales to its dealers and also at least some of the types of losses listed in IC 34-24-3-1.

89. Heartland has violated IC 35-43-5-3 and is liable to Forest River under IC 34-24-3-1.

## RELIEF REQUESTED

Forest River requests this Court enter Judgment against Heartland and dismiss Heartland's claim against Forest River, declaring that:

A. Forest River does not infringe upon the '650 patent,

B. Forest River is not a willful infringer even if it did infringe upon the '650 Patent,

C. The '650 Patent was not validly issued, and

D. The '650 Patent is not enforceable.

35

Forest River further requests this Court enter Judgment in favor of Forest River on the counterclaims, declaring that:

E.  Heartland has infringed Forest River's rights under 15 U.S.C. §1125,

F.  Heartland has violated IC 35-43-5-3, and Forest River is entitled to recovery of its losses under IC 34-24-3-1,

G.  The '650 Patent and its progeny were procured as a result of fraud and inequitable conduct by Heartland which caused economic injury to Forest River,

H.  This case is "exceptional" under 35 U.S.C. §285 and 15 U.S.C. §1117, and

I.  Awarding Forest River all such damage recovery and such of the profits of Heartland as is appropriate,

J.  Awarding Forest River treble damages and attorneys fees,

K.  Awarding Forest River recovery of its losses under IC 34-24-3-1,

L.  Entering an injunction sufficient to prevent Heartland from gaining further from its illegal conduct, and

M..  Awarding Forest River all such other relief as may be just and proper.


**DEMAND FOR JURY TRIAL UNDER FED. R. CIV. P. 38(b) BY FOREST RIVER, INC.**


Dated: January 12, 2009                    Respectfully submitted,

                                           s/Ryan M. Fountain

                                           _____
                                           Ryan M. Fountain (#8544-71)
                                                *RyanFountain@aol.com*
                                           420 Lincoln Way West

Mishawaka, Indiana  46544
Telephone: (574) 258-9296
Telecopy: (574) 256-5137
Attorney for Defendant Forest River, Inc.

**Certificate of Service**

I certify that on January 12, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, which sent notification of such filing to all of the parties through at least the following counsel of record:

David P. Irmscher        david.irmscher@bakerd.com
Abigail M. Butler         abidgail.bulter@bakerd.com

                                        s/Ryan M. Fountain
                                        _____
                                        Ryan M. Fountain
                                        Attorney for Defendant Forest River, Inc.

## INDEX OF EXHIBITS

Exhibit A      Unsigned copy of February 12, 2007 letter to Heartland's attorney from Forest River's attorney.

Exhibit B      Unsigned copy of August 28, 2008 letter to Heartland's attorney from Forest River's attorney.

Exhibit C      Unsigned copy of October 2, 2008 letter to Heartland's attorney from Forest River's attorney.

Exhibit D      Copy of June 23, 2005 letter of Heartland's attorney to the USPTO.

Exhibit E      Copy of Heartland's Information Disclosure Statement Form of 12/05/2008

Exhibit F      Copy of USPTO Interview Summary, page 2

Exhibit G      Copy of Heartland's Information Disclosure Statement Letter of 12/5/2008 to USPTO

Exhibit H      Copy of Heartland's Remarks section of Amendment After Final of 12/5/2008

Exhibit I      Copy of USPTO Interview Summary, page 3

Exhibit J      Copy of USPTO Interview Summary, page 4