# UNITED STATES DISTRICT COURT
Northern District of Indiana
South Bend Division

| | |
|---|---|
| HEARTLAND RECREATIONAL VEHICLES, LLC, <br>       Plaintiff, <br><br> v. <br><br> FOREST RIVER, INC., <br>       Defendant. | CASE NO.:3:08-cv-490 AS- CAN <br><br> JURY DEMAND |

### FOREST RIVER'S MEMORANDUM IN OPPOSITION TO "HEARTLAND'S MOTION TO DISMISS CERTAIN CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION IN LIGHT OF COVENANT NOT TO SUE"

**Summary of the Opposition:**

Forest River has alleged that the '650 Patent is: not infringed, invalid, and unenforceable. As a result, Forest River has requested both declaratory judgment relief and monetary damages (under 35 U.S.C. §285). The case law is perfectly clear that Heartland's covenant not to sue does not remove this Court's jurisdiction over the damages claim. As to the declaratory judgment claim, Heartland's covenant not to sue Forest River still leaves a case of substantial controversy and sufficient immediacy under the totality of the circumstances that jurisdiction remains with this Court. Agreeing not to sue Forest River directly, while still threatening suppliers which Heartland knows are indemnified by Forest River, and using a "submarine" patent application to prepare for litigation against the suppliers is mere procedural gaming, but not a substantive change in Heartland's intent to enforce the patent against Forest River's interests. However, Rule 41(a)(2) does provide the Court with a means of eliminating the declaratory judgment issues if Heartland now has a change of heart.

1

**Relevant Factual Background:**

To understand fully the present motion, more of the context of this lawsuit should be discussed. This controversy between Forest River and Heartland is and has been fought on multiple levels. The present motion demonstrates the interplay between some of those levels.

Superficially, the controversy started as a patent infringement claim brought by Heartland, asserting that the '650 patent was infringed by Forest River. However, Heartland was at the same time seeking two additional patents (pending before the United States Patent and Trademark Office - the "USPTO"), having the same title and being based upon the same invention disclosure as the '650 patent (see, e.g., Exhibit A). These additional patents have been referred to in this case as the "submarine" patents or patent applications, a term of art in patent law referring to continuation applications used for strategic litigation purposes, typically taking advantage of 35 U.S.C. §282 (first sentence) to obtain ex parte treatment of litigation evidence. While Forest River was barred by law from participating in or discovering the full content of the USPTO proceedings for these submarine patents, it was not unaware of the existence of the patent applications; hence the prior art disclosure colloquy between the parties prior to the start of this litigation (see, e.g., Exhibit B).

The net result is that much of the prior art and other evidence which Forest River uncovered (and publicly identified in the Amended Answer, Docket #21) and which was not known to the USPTO during examination of the application for the '650 patent, was later disclosed to the USPTO during examination of the submarine patents after this lawsuit began (see, e.g., Exhibits C and D). Without Forest River's participation in those USPTO proceedings to offer opposing evidence and

2

interpretations, such as would be the case before a court, the first submarine patent was allowed by the USPTO in a personal hearing discussing this lawsuit (see Exhibit G), and Heartland immediately paid the Issue Fee to have that patent granted expeditiously. Exhibit A. The two independent claims, Nos. 34 and 50, of the new patent are remarkably similar to the independent claim of the '650 patent (compare page 16 of Exhibit A to the Complaint with Exhibits E and F hereto). In fact, since the subject matter of the two patents was nearly identical, the USPTO required Heartland to file a Terminal Disclaimer under 37 CFR 1.321(d), which Heartland did. Exhibit H. It is important to note, however, that contrary to what Heartland's attorney said to this Court and contrary to the testimony of its President (see Exhibit I, pages 179:lines 12-22 and pages 181:line 19 to page 182:line16), Heartland refused to admit to the USPTO that the evidence Forest River had was even prior art, much less that it invalidated the '650 patent! Exhibit J, 2d paragraph.

Accordingly, at this time Heartland has the '650 patent and in a few short weeks will have another patent on virtually the same subject matter. The Covenant Not to Sue, Exhibit A to Docket #43, upon which Heartland bases the present motion, expressly covers only the '650 patent, and not the new patent. Thus, Forest River faces an imminent threat of direct litigation from the new patent. Further, Heartland could sue other parties based upon either patent, of course, but the chronological range of possible damage recovery is greater with the '650 patent and the prosecution history of the new patent can be used to arguably support the validity of the '650 patent even over Forest River's evidence. Thus, while the new patent may be an independent threat, it also bolsters the existing threat of the '650 patent, and not just against Forest River.

Another level on which the controversy between Forest River and Heartland resides is the threat of litigation by Heartland against suppliers indemnified by Forest River. After accusing Forest

River of patent infringement, Heartland then intentionally accused at least two of Forest River's suppliers (Global Composites and Lippert Components) of infringing the same patent. Exhibits K and L. Heartland's President admitted this was done "to send a message to Forest River." Exhibit I, page 118: line 21 to page 119:line 8. Heartland knew before this lawsuit began that Forest River had agreed to hold harmless and indemnify at least one of those suppliers against the patent infringement claim by Heartland, and in fact had even suggested to that supplier "you better make sure you get it," referring to the hold harmless agreement. Exhibit M, page 239:line 24 to Page 241: line 1. The Covenant Not to Sue does not expressly cover Global Composites or Lippert Components; it only mentions Forest River. In fact, not only has Heartland not given a similar covenant not to sue to either of those suppliers, it has not at any time backed off from its threats to sue each of those suppliers. Exhibit I, pages 129 to 136; Exhibit M, page 239 to 240: line 2. Further, Heartland has maintained that threat to sue at least Global Composites on several occasions. Exhibit M, page 236.

Also, the Covenant Not to Sue expressly covers only "currently existing products." However, even Heartland's President does not know if Forest River's current Silverback frame was meant to be covered by that agreement. Exhibit I, line 178:line 15 to page 181:line 11. Moreover, as Heartland is well aware, the RV industry and Forest River in particular introduce new products every model year. Heartland was especially aware of the Surveyor prototype made by Forest River and under consideration for inclusion in the product line. Amended Complaint, ¶42, Docket #21; Exhibit M, page 232. Once again, as we are approaching the start of a new model year in August, Forest River has been thwarted in its desire to add new products to achieve improved turning radius by the threat of expanded litigation with Heartland. Exhibit N, ¶s 3 and 4.

**Analysis of the Legal Issues:**

    1. <u>The Invalidity and Unenforceability Issues Remain for the Damages Claim</u>

All of Heartland's case law citations and argument point to disposing of litigation claims which are based solely upon a request for declaratory judgment. There is no question, however, that claims Forest River has made for damages under 35 U.S.C. §285 on account of the fraudulent and inequitable conduct (Amended Complaint, ¶61) are not mere declaratory judgment claims and, thus, must remain in this case even if Heartland voluntarily drops its claims against Forest River. *Dodge-Regupol, Inc. v. RB Rubber Products, Inc.*, 585 F. Supp. 2d 645, Part C at 655-6 (M.D. Pa 2008)(detailed discussion of relationship of inequitable conduct counterclaim in the context of a covenant not to sue); *Knauf Fiber Glass, GmbH, v. Certainteed Corp.,* 204 WL 771257, *1-*2 (S.D. Ind. 2004)(distinguishing the *Super Sack* doctrine relied upon by Heartland).

The fraud and inequitable conduct claims are based upon and intertwined with the issues of unenforceability and invalidity. For example, evidence of invalidity is per se "material" under 37 CFR. §1.56; conduct which is fraudulent is axiomatically the basis for unenforceability. Heartland recognizes this explicitly when it argues to the Court that if all claims involving infringement, validity, and unenforceability are dismissed, only the Lanham Act and Criminal Deception Claims remain in the case (see Heartland's Memorandum in Support, page 3 at FN1). However, the law does not allow the baby to get tossed out with the bath water. A court's jurisdiction to rule on attorneys fees under 35 U.S.C. §285 encompasses the jurisdiction to make findings of inequitable conduct. *Monsanto Co. Bayer Bioscience N.V.*, 514 F. 3d 1229, 1242 (Fed. Cir. 2008).

If, as it professes, Heartland is serious about ending this aspect of the lawsuit, it could always divest the Court of jurisdiction over the attorneys fees issue by offering to pay the entire amount.

5

*Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 523 F. #d 1374, 1379-80 (Fed Cir. 2008). However, the Covenant Not to Sue did not do so, and Heartland has not made that offer otherwise.

    2. <u>The Totality of the Circumstances Keeps Declaratory Judgement Jurisdiction</u>

Forest River agrees that Heartland's citation of *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F. 3d 1294 (Fed. Cir. 2009) provides appropriate guidance on the issue of jurisdiction in light of a covenant not to sue, particularly the opinion discussion at 1297-98. As that Court noted in connection with its analysis of *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F. 3d 1372 (Fed. Cir. 2007), an agreement not to sue does not necessarily divest the court of declaratory judgment jurisdiction. Instead, following the standard of *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 118-9, 127 S. Ct. 764, 166 L. Ed. 2d. 604 (2007), the court determined that declaratory judgement is still available when the facts "under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality." This is the so-called "totality of the circumstances" test, considering particular facts and the relationships involved. Further, "whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution* at 1297.

The circumstances here are that while Heartland purports to let Forest River off the hook for its products, Heartland has continued to assert its claims against Forest River's suppliers for their products, all the while knowing full well that Forest River is the real party in interest and that Forest River must by contract come to the defense of its suppliers under the hold harmless indemnification or intervene to protect its sources of supply under an interference with business relations claim (see, e.g., Exhibit O, pages 2-3). Indeed, the whole reason to bother Forest River's suppliers was to target

6

Forest River and "send a message to Forest River." Heartland certainly wanted Lippert to "make sure you get" that hold harmless agreement from Forest River so that Heartland's cordial relationship with Lippert would not be adversely affected by suing Lippert; Forest River would be the party really bearing the burden. Thus, Heartland could be back in litigation with Forest River not by suing Forest River, but rather by suing Forest River's suppliers. This is entirely distinguishable from the "speculative" nature of the supplier suits consider by the court in *Dodge-Regupol.*

This threat of end-run litigation is now immediate. The submarine patent game has been played, and Heartland has done what it set out to do: get the USPTO to "bless" nearly identical claim subject matter even over the litigation evidence which Heartland's attorneys told its President "invalidated" the '650 patent (Exhibit I, page 182: lines 11-12). Once the USPTO issued the Notice of Allowance, Heartland did not wait the three month payment period; instead, it rushed to immediately pay that fee and get the new patent granted as soon as possible. Exhibit A, compare the 9/15/09 "Due Date" mid way down on the right hand side, with the June 24, 2009 payment date on the lower right portion. Morever, as noted above, even though the new patent could itself give rise to a separate lawsuit, it is far more likely that the '650 patent would be used for renewed litigation with the new patent acting in a support role. This results because the period of time for which damages can be claimed may extend back to the Publication Date of February 23, 2006 for the '650 patent while the damages period for the new patent would only be a few months due to the claim amendments.

In addition, at no time did Heartland admit to the USPTO what it was willing to concede in its President's deposition and in oral discussions with this Court, that the '650 patent is invalid in light of the prior art Forest River found. If the new patent alone was the intended focus of any

additional litigation, there would be no reason to hide those admissions from the USPTO. On the other hand, keeping quiet about the validity of the '650 patent keeps the threat of that patent alive independently of the new patent.

Moreover, this is not a case where there is a clear target product which stands accused. The patent claims specify that the infringing product must be a "travel trailer chassis." Exhibit A to the Complaint, last page, last three paragraphs. Heartland has yet to disclose specifically which Forest River chassis or frames which it considers to be an infringement. Its own President has testified that he does not even know what Forest River's accused frame looks like. Under the circumstances, it is clear that Heartland intended its lawsuit to have wide ranging impact; anything that could be at risk would be at risk. That intent has been achieved in that Forest River has been reluctant to expand its product lines with new features. Exhibit N. *Petersen Mfg. Co., Inc., v. Adjustable Clamp Co., Inc.,* 30 USPQ 2d 1193, 1199-1200 (N.D. Ill. 1993)(reluctance to expand product line shows reasonable apprehension sufficient to retain jurisdiction).

Also, there are objective indications that the so-called Covenant Not to Sue was a deliberate sham. As pointed out in an earlier motion in this case, Docket #44 at page 5, when it presented the subject motion to dismiss Forest River's claims, Heartland did not bother to seek to dismiss its own claims for patent infringement. That omission was pointed out to Heartland on May 29, 2009, and has not been corrected since then. Accordingly, Heartland is presently in breach of the Covenant, and Forest River is entitled to, and indeed required by the pleading rules, maintain all of its defenses- including those of non-infringement, invalidity, and unenforceability.

If Heartland does dismiss its infringement claims, is Forest River nonetheless absolutely certain that Heartland is about to sue one of its suppliers and state the litigation over again? No, but

it does not need to be. *Implant Innovations, Inc. v. Nobelpharma AB*, 1994 WL 68498 at *2 (N.D. Ill. 1994)(patent undergoing re-examination still presents a reasonable apprehension of litigation under certain circumstances despite withdrawal of lawsuit - "reasonable apprehension does not require absolute certainty"). Clearly, under the circumstances of this lawsuit Forest River's apprehension of continued litigation is a reasonable conclusion. All of the circumstances considered, and all the relationships between the parties, the two patents, and the claims, there truly is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to justify retention of declaratory judgment jurisdiction.

      3. <u>Evaluating the Substance of the Motion under Rule 41(a)(2)</u>

Viewing the present motion most charitably to Heartland, one may assume that the substance of the motion was an effort to obtain voluntarily dismissal under Fed. R. Civ. P. 41(a)(2), tendering the Covenant as "terms" for the Court to consider "proper." Heartland seeks the dismissal to be without prejudice "given the procedural posture," according to its Memorandum in support of this motion, at FN 2. Obviously, there is more to the procedural posture of this case than Heartland lets on, as evidenced by the fact that we are up to Docket #47 already and that there have been extensive discovery disputes centered around alleged "stalling" by Heartland[1], and the fact that there has been

---

[1]That discovery stalling has had an impact on Forest River's response to the present motion as well. As pointed out in a prior motion, Docket #44, Forest River served a Notice of Deposition of Heartland under Rule 30(b)(6) as to the patent prosecution procedures so as to bring to this Court's attention substantive similarities in the scope of the claims and in the arguments made to the USPTO regarding prior art, level of ordinary skill in the art, etc. Heartland has failed to provide a witness to testify. Rather than defer any response to the present motion further, Forest River responds herein without that information to add to the totality of the circumstances, and will seek to amend its response at a later date if that deposition becomes available.

9

a complete end run around this Court through at least one submarine patent.

Nonetheless, Forest River submits that Rule 41(a)(2) does provide the Court with a means of eliminating both the declaratory judgment issues and Heartland's claims of patent infringement. If Heartland is truly not going to use the '650 patent any more to sue Forest River directly or indirectly, the Court could condition dismissal upon it being "with prejudice," even though "without prejudice" is requested. *LeBlang Motors, Ltd., v. Subaru of America, Inc.,* 148 F. 3d 680, 687 (7th Cir. 1998). Alternatively, the Court could condition dismissal upon Heartland accepting a consent order that the '650 patent is not valid. Either condition would be appropriate given Heartland's admissions in open Court as to the invalidity effect of the prior art cited by Forest River. Naturally, such a dismissal would resolve many of the ambiguities raised by the current form of covenant not to sue and substantially alter the nature of Forest River's objections to the present motion. Similarly, as pointed out above, if Heartland truly wants even the damages claims to "go away," the Court could offer to dismiss for lack of jurisdiction even there if Heartland agrees to reimburse all of Forest River's legal expenses incurred in connection with the '650 patent issues. *See Hinfin Realty Corp. v. The Pittston Co.,* 212 F.R.D. 461,462 (E.D. N.Y. 2002)(courts often grant fee awards when a plaintiff dismisses without prejudice under Rule 41(a)(2)).

**Conclusions:**

The present motion should be denied or a grant conditioned upon terms which resolve the flaws in Heartland's analysis in accordance with the discussion above.

Dated: July 6, 2009                                              Respectfully submitted,

s/Ryan M. Fountain

_____
Ryan M. Fountain (#8544-71)
*RyanFountain@aol.com*
420 Lincoln Way West
Mishawaka, Indiana  46544
Telephone: (574) 258-9296
Telecopy: (574) 256-5137
Attorney for Defendant Forest River, Inc.

**Certificate of Service**

I certify that on July 6, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, which sent notification of such filing to all of the parties through at least the following counsel of record:

| | |
|---|---|
| David P. Irmscher | david.irmscher@bakerd.com |
| Abigail M. Butler | abidgail.bulter@bakerd.com |

s/Ryan M. Fountain

_____
Ryan M. Fountain
Attorney for Defendant Forest River, Inc.

**INDEX OF EXHIBITS**

Exhibit A        Fee Transmittal Statement for Continuation patent to '650 Patent

Exhibit B        Oct. 2, 2208 letter from Forest River to Heartland

Exhibit C        Supplement IDS from Heartland in Continuation patent case

Exhibit D        IDS from Heartland in Continuation patent case

Exhibit E        Allowed Claims, page 1, in Continuation patent case

Exhibit F        Allowed Claims, page 2, in Continuation patent case

Exhibit G        Dec. 4, 2008 Interview Summary of Heartland meeting with USPTO Examiner

Exhibit H        Terminal Disclaimer in Continuation patent case

Exhibit I        Excerpts of Brady deposition transcript

Exhibit J        Dec. 5, 2008 IDS cover sheet from Heartland to USPTO

Exhibit K        Heartland infringement demand letters to Lippert

Exhibit L        Global response to Heartland infringement demand letter

Exhibit M        Excerpts of Rhymer deposition transcript

Exhibit N        Declaration of Jeff Babcock

Exhibit O        Aug. 29, 2008 letter from Forest River to Heartland