UNITED STATES DISTRICT COURT
Northern District of Indiana
South Bend Division

| | | |
|---|---|---|
| HEARTLAND RECREATIONAL VEHICLES, LLC, <br>     Plaintiff, <br><br> v. <br><br> FOREST RIVER, INC., <br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CASE NO.: 3:08-cv-490 TLS-CAN |

**HEARTLAND'S REPLY IN SUPPORT OF ITS MOTION
FOR PROTECTIVE ORDER QUASHING SUBPOENAS TO NON-PARTIES**

Forest River, Inc's ("Forest River") third-party subpoenas represent a classic case of a litigant using the discovery process to illegitimately obtain a competitor's confidential commercial information. The reach of a subpoena is subject to the relevance standard established by Fed. R. Civ. P. 26(b)(1). *McGrath v. Everest Nat'l Ins. Co.*, 2008 WL 2557444, at *1 (N.D. Ind. June 23, 2008). In its response to Heartland Recreational Vehicles, LLC's ("Heartland") Motion For Protective Order Quashing Subpoenas to Non-parties (the "Response"), Forest River spends twenty-five pages setting forth various conspiracy theories and groundless assumptions in an attempt to demonstrate that some of the confidential commercial information at issue meets this relevance standard. Eventually, Forest River sets forth the five categories of information purportedly sought by the subpoenas:

    (1)    "Ownership Information;"

    (2)    "Heartland's Fraudulent Information;"

    (3)    "Heartland's Collateral Knowledge;"

    (4)    "Heartland's Motive;" and

    (5)    "Witnesses." (Response 16-17.)

An analysis of these categories demonstrates that the information sought is not relevant or reasonably calculated to lead to relevant, admissible evidence, or is information that Forest River already has. In light of the factors used by courts in deciding whether to allow disclosure of confidential information, Forest River has failed to meet its burden to establish that the confidential commercial information it seeks "is sufficiently relevant and necessary to [its] case to outweigh the harm disclosure would cause" to Heartland. *Concord Boat Corp. v. Brunswick Corp.*, 1996 WL 705260, at *2 (N.D. Ill. Dec. 4, 1996) (quoting *Stanley Works v. Newell Co.*, 1992 WL 229652, at *2 (N.D. Ill. Aug. 27, 1992)). Those factors include: **(1) the relevance of the requested information to the underlying litigation; (2) the party seeking discovery's need for the information; (3) whether the requests are burdensome; (4) the fact that the party from whom discovery is being requested is a non-party to the underlying case; and (5) the fact that the disclosure would be made to competitors.** *Id.* at *2. Because these factors weigh overwhelmingly in favor of not permitting disclosure, the Court should grant Heartland's Motion and quash the subpoenas.

A. **Forest River Already Has Evidence Clearly Identifying Who Owns the '650 Patent**

In its Response, Forest River alleges that it needs Heartland's confidential commercial information in order to determine who owns the '650 patent. (Response 17-18.) Forest River states that it attempted to obtain this ownership information via the deposition of Heartland President Brian Brady and public records. (Response 18). But Forest River neglects to inform the Court that it has obtained this information—in unequivocal form—via other discovery. First, on September 10, 2009, Forest River's counsel deposed Marc Magliacano of Catterton Partners, a private equity firm and the indirect majority owner of Heartland Recreational Vehicles, LLC. An excerpt from that deposition reads as follows:

> Q. Who actually owns, among the legal entities we've discussed relating to Heartland, the patent in this lawsuit?
>
> A. Heartland Recreational Vehicles, L.L.C.
>
> Q. The L.L.C., that's the party in this lawsuit, right?
>
> A. That's right.

(Magliacano Dep. p. 104, ll. 23-25; p. 105, ll. 1-4.)[1]

Furthermore, during the October 22, 2009 deposition of Gregory Cooper, one of the attorneys involved in the prosecution of the '650 patent, Cooper specifically identified executed documents of the inventors' assignment of their rights in the patent to Heartland Recreational Vehicles, LLC, which are attached as Exhibit A. (Cooper Dep. p. 34, ll. 8-25; p. 35, ll. 1-5.) These documents again confirm that Heartland owns the patent.

Forest River's insistence that it needs confidential commercial information to obtain knowledge *that it already has* reveals its true motives for issuing the subpoenas—to enable a massive fishing expedition into the confidential financial information of its competitor. The current Protective Order does not alleviate Heartland's confidentiality concerns so completely that it is willing to allow Forest River's counsel to sift through its comprehensive confidential information in order to find evidence Forest River has already acquired. Because Forest River cannot demonstrate that it needs Heartland's confidential commercial information to determine who owns the patent at issue in this case, the Court should quash Forest River's subpoenas. *Concord Boat Corp.*, 1996 WL 705260, at *2.

---

[1] Forest River also claims that it needs to know who owns the rights to the continuation patent applications. While Heartland believes that patents excluded from this lawsuit have no relevance, Mr. Magliacano informed Forest River's counsel that Heartland Recreational Vehicles, LLC owns the rights to these patents as well. (*See* Magliacano Dep. p. 105, ll. 14-25; p. 106, ll. 1-2.)

3

B. **Forest River's Request for Heartland's Accounting Information is Not Reasonably Calculated to Elicit Heartland's Knowledge of Prior Art**

Forest River speculates that Heartland may have provided its accountants with information related to its knowledge of prior art. First, Forest River asserts that information submitted to the subpoenaed parties as late as 2009 is relevant to its allegations of inequitable conduct. (Response 16). However, Heartland's knowledge of prior art **after** the patent's issuance in October of 2007 is irrelevant. "If a sufficient level of materiality is found, the intent of the applicant must be determined. Hindsight analysis should be avoided. The court must look to the facts and circumstances **at the time of the patent prosecution**." *FMC Corp. v. Manitowoc Co.*, 654 F.Supp. 915, 935 (N.D. Ill. 1987). Hence, documents created after the patent issued, including Crowe Horwath's 2008 audit of Heartland's business and confidential information used to complete that audit, are not relevant to Forest River's interests in this litigation.

Second, Heartland has already provided Forest River with RSM McGladrey's 2007 valuation of the patent.[2] That document clearly discloses the method and information used to value the patent. Forest River's request for the confidential commercial information provided to RSM McGladrey in order to complete that assessment extends far beyond the relevance boundaries of Rule 26(b)(1) and overstates the extent to which accountants evaluate prior art during the valuation process. Fed. R. Civ. P. 26(b)(1). Accountants are not patent attorneys and do not have the skills and technical background to analyze prior art documents. Thus, Forest River's requests for the confidential commercial information provided to RSM McGladrey to assist in its valuation of the '650 patent are not relevant or even "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Because Forest River cannot demonstrate that its interest in the confidential information responsive to the subpoenas outweighs Heartland's

---

[2] RSM McGladrey valued all of the intangible assets of Heartland for accounting purposes as part of the normal course of business after Catterton's investment in Heartland.

4

interest in preventing its disclosure to a competitor, the Court should grant Heartland's Motion and quash the subpoenas. *See Concord Boat Corp.*, 1996 WL 705260, at *2.

        **C.**        **Forest River Cannot Demonstrate the Relevance or Necessity of Obtaining Heartland's "Collateral Knowledge"**

Forest River contends that it needs documents "disclose[d] to third parties about the patents, related patent applications, or the lawsuit." (Response 16). As an initial matter, Forest River contends that "Heartland has specifically identified only disclosure of the valuation appraisals as imposing any burden upon it. No other documents have been mentioned as being a problem." (Response 22). While Heartland certainly wishes to protect the aforementioned valuation appraisals to the extent that have not yet been disclosed,[3] Heartland's Motion also seeks to protect information "provided to the accountants, appraisers, and financial service providers of the Non-Parties in order to complete necessary assessments of the value of Heartland's business." (Heartland's Mot. for Prot. Or. ¶ 8). This includes (but is not necessarily limited to) not only the valuation and audit prepared by McGladrey and Crowe Horwath, but also (1) any confidential commercial information provided to McGladrey and Crowe Horwath to facilitate their assessments; (2) any formal or informal appraisals of Heartland's assets performed internally by Heartland and provided to the third parties; (3) any confidential commercial information provided to Fifth Third Bank to help it determine whether to lend to Heartland; and (4) any documents created by the third parties that incorporate the confidential commercial information provided to them by Heartland.

Furthermore, it is unclear what relevant evidence Forest River seeks to gain through its vague request for "Heartland's Collateral Knowledge." As discussed in Section B., Forest River has already made a separate request for documents demonstrating "Heartland's

---

[3]    Heartland assumes that when Forest River uses the term "valuation appraisals," it is referring to RSM McGladrey's 2007 valuation of the patent and Crowe Horwath's audit of Heartland's business, which commenced in early 2009.

Fraudulent Knowledge," i.e., its knowledge of prior art related to the '650 patent. What other supposedly relevant information related to the patents does Forest River hope to obtain? Forest River does not say, leaving the questions of whether and why "Heartland's Collateral Knowledge" is relevant unanswered.

Forest River has not demonstrated that confidential information regarding "Heartland's Collateral Knowledge" has *any* relevance to its inequitable conduct claim, let alone enough to outweigh Heartland's interests in protecting its confidential information from disclosure. As such, the Court should grant Heartland's Motion and quash the subpoenas. *Concord Boat Corp.*, 1996 WL 705260, at *2; *McGrath*, 2008 WL 2557444, at *1.

### D. The Information Sought in Connection with "Heartland's Motive" is Irrelevant and Unnecessary to Forest River's Counterclaims

Throughout the Response, Forest River argues that Heartland's pursuit of the '650 patent was motivated by financial gain, and that because Heartland hoped to obtain money by securing the patent, it had a motive to commit fraud.[4] (*See generally, e.g.* Response 22-24.) However, Heartland's motive for financial gain has no relevance to Forest River's counterclaims.

First, evidence of Heartland's motive for financial gain is irrelevant to Forest River's inequitable conduct allegations. Because nearly all patents are sought with the hope of monetary reward, courts have precluded parties from implying fraudulent intent by alluding to a patent owner's desire for financial gain. "An inventor's motives in applying for a patent or his views on the purposes of the patent system are generally irrelevant to a proper determination of inequitable conduct…financial reward does not alone show an intent to deceive the USPTO."

---

[4] Forest River goes to great lengths to insinuate that Heartland may have concealed information in order to deceive its own accountants. (*See* Response 23). It is unclear how evidence that Heartland intentionally deceived its accountants would be relevant to Forest River's claim that Heartland committed inequitable conduct **before the USPTO**, the only body relevant to Forest River's claim. The immateriality of the information sought by the subpoenas once again reveals Forest River's true motives for issuing the subpoenas: to harass Heartland and its business associates and to create the false illusion that Heartland commits fraud in all of its business dealings, including those with absolutely no relevance to this case.

6

*Research Corp. Techs., Inc. v. Microsoft Corp.*, 536 F.3d 1247, 1253 (Fed. Cir. 2008). "[T]he desire for financial gain, which most if not all patent applicants seek by applying for a patent, is not probative of the intent required for inequitable conduct." *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F.Supp.2d 924, 956 (N.D. Ill. 2008) (explaining the Federal Circuit's holding in *Research Corp. Techs., Inc. v. Microsoft Corp.*). Hence, Heartland's alleged financial motives are irrelevant to Forest River's inequitable conduct counterclaim.

Forest River also argues that it needs the subpoenaed information in order to show that Heartland's purported financial difficulties motivated its alleged conduct in the hotel incident in October of 2008. Such motive evidence is wholly unnecessary to proving Forest River's "unfair competition" claims. "Motive" is not an element of any of Forest River's claims, and if Forest River can establish that Heartland committed conduct sufficient to satisfy the elements actually pertinent to its claims, Heartland's motives for its actions will be irrelevant. "[M]otive does not equal intent; fraud, larceny, embezzlement, and the other financial crimes and their tort equivalents are actionable even when the motive for the wrongful conduct is benign." *Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617, 623 (7th Cir. 2000). Furthermore, Forest River's assertion that evidence of Heartland's motives will be relevant to a determination of whether Heartland's alleged trademark infringement was "willful" lacks merit. In determining whether a defendant is a willful infringer under the Lanham Act, courts ask whether the conduct was "malicious, fraudulent, deliberate or willful." *JCW Investments, Inc. v. Novelty, Inc.*, 509 F.3d 339, 342 (7th Cir. 2007) (quoting *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1099 (7th Cir. 1994). Thus, Courts concern themselves with whether the defendant acted intentionally or deceptively, not the alleged *reasons* for acting intentionally or deceptively.

7

Evidence that Heartland's alleged conduct was motivated by financial gain is neither relevant nor necessary to proving Forest River's counterclaims. Because Forest River cannot demonstrate that its need for "motive" evidence sufficiently outweighs Heartland's interests in preventing the disclosure of its confidential commercial information to a key competitor, the Court should grant Heartland's Motion and quash the subpoenas. *Concord Boat Corp.*, 1996 WL 705260, at *2.

E.  **The Need to Locate Witnesses Does Not Warrant or Require the Disclosure of Heartland's Confidential Commercial Information**

Finally, Forest River contends that it needs documents containing Heartland's confidential commercial information so that it can identify witnesses from the subpoenaed parties. (Response 24-25.) If Forest River's pursuit of Heartland's confidential information via the subpoenas constitutes an inappropriate and intrusive fishing expedition, then identifying and deposing witnesses in order to obtain this information would also constitute an inappropriate and intrusive fishing expedition. Therefore, the Court should grant Heartland's Motion and quash the subpoenas.

## CONCLUSION

As outlined above, Forest River's subpoenas seek information that is not relevant or reasonably calculated to lead to relevant, admissible evidence, or is information that Forest River already has. The lack of necessity and relevance of the information sought demonstrates Forest River's true motives for issuing the subpoenas: to perform a far-reaching fishing expedition into Heartland's comprehensive confidential commercial information. Because, the factors considered by courts in deciding whether to compel disclosure of confidential commercial information weigh overwhelmingly in favor of not permitting the production of

8

Heartland's confidential information, the Court should grant Heartland's Motion and quash the subpoenas. *See Concord Boat Corp.*, 1996 WL 705260, at *2.

BAKER & DANIELS LLP


By: */s/ David P. Irmscher*
David P. Irmscher (#15026-02)
Abigail M. Butler (#22295-02)
111 East Wayne, Suite 800
Fort Wayne, Indiana 46802
Tel: 260.424.8000
Fax: 260.460.1700
david.irmscher@bakerd.com
abigail.butler@bakerd.com

ATTORNEYS FOR PLAINTIFF,
HEARTLAND RECREATIONAL
VEHICLES, LLC

## **CERTIFICATE OF SERVICE**

The undersigned counsel for plaintiff Heartland Recreational Vehicles, LLC, hereby certifies that a copy of the foregoing was served upon the following, this 4th day of November, 2009, by operation of the Court's electronic filing system:

>Ryan M. Fountain
>420 Lincoln Way West
>Mishawaka, Indiana  46544-1902

>*/s/ David P. Irmscher*
>David P. Irmscher