# UNITED STATES DISTRICT COURT
Northern District of Indiana
South Bend Division

| | |
|---|---|
| HEARTLAND RECREATIONAL VEHICLES, LLC, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>FOREST RIVER, INC., )<br>Defendant. | CASE NO.:3:08-cv-490<br><br>JURY DEMAND |

## FOREST RIVER'S OBJECTIONS TO MAGISTRATE'S ORDER OF NOVEMBER 19, 2009 (DOCKET ENTRY 73)

Pursuant to Fed. R. Civ. P. 72(a), Forest River objects to the above-referenced Order (docket entry, "DE," number 73) granting to Heartland a Protective Order to quash subpoenas issued to three non-parties and denying as moot a motion for leave to file sur-reply against that Protective Order.

Summary of the Objections:

The Order demonstrates a fundamental misunderstanding of the legal issues remaining in the case and, thereby, misapprehends the scope of relevance to be afforded in discovery. The Order also contains erroneous interpretations of the law of evidence and the law of discovery. These mistakes resulted in a decision which is both clearly erroneous as a matter of factual interpretation and contrary to law. Forest River has suffered actual and substantial prejudice in the denial of discovery. Accordingly, the Order should be reversed or modified so as to be in compliance with law.

1

Relevant Background Information:

      The Primary Legal Issues Pending in this Lawsuit:

Heartland sued Forest River for patent infringement. Forest River filed defenses and counterclaims against Heartland alleging that:

1. The patent was not infringed by Forest River's product,

2. The patent was invalid in light of prior art,

3. The patent was unenforceable in light of information Heartland withheld from the U.S. Patent Office, and

4. Heartland violated Forest River's rights by various forms of unfair competition, including trademark infringement, during the course of the "Hotel Action."

As to each of these issues, Forest River provided detailed explanation and examples of evidence in its Amended Answer (DE 25). Various motions, memorandum, and Orders in this case have also described the pending issues in detail, such as DEs 15, 32, 38, 42, 48, 55, and 70 (sealed).

Heartland has submitted a Covenant not to Sue which has effectively eliminated Issue #1. Issue # 2 remains relevant to the extent that the information Heartland withheld from the U.S. Patent Office, either as a violation of 37 CFR §1.56 or as common law fraud, was sufficiently material to patentability to warrant invalidation of the patent. Issue #3 is still in the case as it affords Forest River a defense against not just Heartland's loopholes in the Covenant (the subject of Forest River's oppositions to the other two currently pending motions, DEs 43 and 54, ) but also the second and third patents (the "submarine patents" referred to the in the briefing) and forms the basis for a monetary damages claim against Heartland. Issue #4 remains in this case unaffected by the Covenant.

The third party subpoenas in issue by the present Order of the Magistrate were directed to discovery relevant to Issues #3 and 4 as well as to the underlying jurisdiction of this Court. As to jurisdiction, the issue involved here is simply, who actually owns the patent in suit and has the right to enforce it? If it is not Heartland, then there was no standing to bring the underlying claim of patent infringement that started this lawsuit. If it is not Heartland, then who is the necessary and indispensable party against whom Forest River must bring its claims against the patent? Thus, evidence of patent ownership is clearly relevant to the jurisdictional issue.

As to the "unenforceability" issue, Forest River uncovered evidence of four different types of fraud/inequitable conduct committed by Heartland in the proceedings before the U.S. Patent Office. This was set forth in detail in "Forest River's Memorandum in Opposition to Heartland's Motion for Protective Order" (DE 70 at pages 8-13, and Exhibit T thereto). In essence, this particular dispute between the parties comes down to three evidentiary inquires:

1. what did Heartland know about the withheld information,
2. how "material" the withheld information was, and
3. what was Heartland's "intent" in withholding that information.

*Molins PLC v Textron, Inc.,* 48 F. 3d 1172, 1178 (Fed. Cir. 1995)(the withholding of known information which forms the basis for inequitable conduct must meet thresholds of both materiality and intent). However, since direct evidence of intent is rarely available, the parties must deal with what can be inferred from all of the circumstantial evidence. *Klein v. Peterson*, 866 F. 2d 412, 415 (Fed. Cir. 1989)("intent is found upon consideration of *all* the facts and circumstances involving the conduct in question").

As to the "Hotel Action," Forest River has charged Heartland with "willful" infringement

3

under the trademark laws. DE 25, §83. It is clear as a matter of trademark law that the requisite intent of Heartland can be shown by circumstantial evidence there as well. *See, e.g., Square D Co. v. Breakers Unlimited, Inc.*, 2009 WL 1702079, Fn 1, (S.D. Ind. 2009).

So, what were the "circumstances" at the time of the fraud and the Hotel Action which may have caused the actions of Heartland which are in issue by this lawsuit? Since those circumstances had that impact or causal relation, they are relevant evidence. That is what the subject subpoenas sought to uncover.

The Circumstances About Which Discovery is Sought by the Subpoenas:

During the same time that the patent application was being examined by the U.S. Patent Office, the patent application was being evaluated by the McGladrey accounting firm to determine its value. As explained in detail in "Forest River's Memorandum in Opposition to Heartland's Motion for Protective Order," that examination is likely to have included prior art, inventorship, claim definition, and patent validity investigations (DE 70 at pages 4-5, and Exhibits I and M thereto). This parallel proceeding likely involved Heartland and its patent attorneys directly. Thus, the results of the McGladrey investigation were likely to have been known to Heartland and its patent attorneys at the same time that they were under an obligation to disclose information to the U.S. Patent Office. However, the official file history of the patent in suit shows no disclosure of information to the U.S. Patent Office as a result of the McGladrey investigation.

Another time period under investigation concerns the Fall of 2008 when Heartland engaged in the Hotel Action. At that time, Heartland was in serious financial trouble: the market for its products was low, Forest River had challenged the validity of the patent upon which Heartland's

4

financial loans depended, and Forest River was about to have a "big event" that could result in a further drop in sales for Heartland. Additional details of this are described more fully in "Forest River's Memorandum in Opposition to Heartland's Motion for Protective Order," although under seal (DE 70 at pages 4-7, 20, 23-24). This time, the Crowe Horwath firm conducted its evaluation of the patent and the financial status (continued viability?) of Heartland.

During both of these time periods, ownership rights of some sort were being assigned by Heartland to various banks. We know the assignments took place because the banks notified the U.S. Patent Office of their respective security interests and mentioned the assignments in that context. However, the actual assignments apart from the security interests were not filed with that governmental agency. Again, the details of this evidence was set forth in Forest River's Memorandum in Opposition to Heartland's Motion for Protective Order" (DE 70 at page 6, and Exhibits Q and R thereto) as well as in "Forest River's Sur-Reply" and the Exhibit thereto (DEs 72-2 and 72-3). Rather telling, is the content of the Fifth Third Patent Collateral Agreement (DE 72-3) wherein it states that "the assignment, mortgage, pledge and security interest in the patents and patent applications made and granted hereby are more fully set forth in the Security Agreement." An "assignment" is often a transfer of ownership. Was the bank assigned the patent rights as collateral to hold until the loan was repaid? If so, then it is and was the real party in interest in this lawsuit, rather than Heartland, and Heartland had no standing to file the lawsuit in the first place.

The Order of November 19, 2009 dealing with the Discovery Sought:

On the very first page of the Order, a fundamental misunderstanding is demonstrated: "Forest River alleged that a disputed patent design, the "'650 patent," was invalidly issued to Heartland and

5

is, therefore, unenforceable by Heartland." However, invalidity and unenforceability are two very different concepts and require distinct proofs and evidence. A patent is invalid because of failure to comply with the statutory requirements. A patent is unenforceable, even if it was validly issued, because of inequitable conduct/fraud. In the former case, we typically seek evidence of prior art. In the latter case, we typically seek evidence that material prior art was knowingly withheld from disclosure to the U.S. Patent Office. This error in patent law has direct relation to the Order's misunderstanding of the importance of "Heartland's Motive" on page 6-7 thereof. There, the Order asserts that "motive is not an element of any of Forest River's claims" and that "motive is not the same as intent." The Order goes on to distinguish motive from intent through a citation that shows liability can exist even with benign motive. Accordingly, the Order concludes that evidence of Heartland's motive is not relevant to the issues in the litigation.

However, it is well established as a matter of evidence law in many situations that while motive may be immaterial to excuse wrongful intent, clearly evidence of motive can be used to show wrongful intent. *Reddy v. Commodity Futures Trading Commission,* 191 F. 3d 109, 119 (2d Cir. 1999)("evidence of motive strengthens an inference of intent"); *United States v. Simpson*, 950 F. 2d 1519, 1525 (10th Cir. 1991)("the motive of the accused is immaterial, except insofar as evidence of motive may aid in determining that state of mind or intent"); *United States v. Snow*, 670 F. 2d 749, Fn 9 (7th Cir. 1982); *Wiggins v. Citizens Gas & Coke Utility*, 2008 WL 4530679, *2 (S.D. Ind. 2008)(Knowledge plus motive provides sufficient evidence of intent); *United States v. Wilson*, 2 F. Supp. 2d 1170, 1171 (E.D. Wis. 1998)("motive may be probative of intent").

The Order assumes the surviving patent issues relate to patent validity, and intent and motive clearly have no relevance there since non-disclosure of prior art is not an element of the invalidity

6

claim. The Order does not apprehend that unenforceability is very much interested in motive since the intent of a party withholding information is an element of that claim.

In this case, Forest River argued that Heartland's motive was relevant to a showing that the withholding of information from the U.S. Patent and Trademark Office was intentional. If a true and proper valuation of the patent was conducted by the McGladrey firm, it would have revealed the prior art that Mr. Tuttle and Mr. Lantz knew of as well as the prior art that Forest River pointed out in the Amended Complaint. If that and the other missing information described in Exhibit T (DE 70), were disclosed to the U.S. Patent Office, the patent would not have issued and the bank loans would not have sufficient collateral to avoid default. In additional, Forest River argued that Heartland's motive in surviving its financial distress at the time of the Hotel Action is relevant to understanding if that action was willful or merely an innocent mistake. The order did not address the relevance of those purposes, apparently not understanding the uses to which evidence of motive can be put as a matter of law in light of the issues in this case.

Another fundamental misunderstanding of the issues is shown on page 2 of the Order where it asserts that Forest River "hypothesizes that . . . Heartland misled the US Patent and Trademark Office ("USPTO") regarding the extent of the particular product-design's use in the Recreational Vehicle industry and that Heartland "illegally" minimized the "prior art" status of the to-be patented design." That would be the case if Forest River was, for example, bringing an "on sale" defense, asserting the Heartland product against itself because the application was untimely filed. However that is not what Forest River is doing. The prior art status of the to-be patented design is not in issue. Instead, Forest River is asserting that "prior art," other devices which pre-date the to-be patented design, invalidate the patent. See, for example, DE 25 at §§17, 21, 27, and 29.

7

This misunderstanding of patent law and the case issues in the Order also had a direct effect on the relevance determination. As argued by Forest River, the McGladrey investigation should have itself revealed at least three things: what was the level of ordinary skill in the art, what prior art was out there that was relevant to the claimed invention (since McGladrey needed to find that out in order to evaluate the strength of the patent), and if Heartland knew about that prior art at the time the patent application was pending before the U.S. Patent Office. Further, prior art and level of skill information which was material to McGladrey's analysis would by definition be material to the Patent Examiner since they were doing much the same analysis. Thus, the McGladrey investigation could expose four types of evidence relevant to the unenforceability claim: withheld information itself, materiality of withheld information, knowledge of that information by Heartland at a time it needed to be disclosed, and a motive for not disclosing that information. The Order did not address the relevance of any of this evidence apart from that of motive.

Similarly, the Order did not address the issues of Collateral Information and Witness Identification which were argued by Forest River. Presumably, the misunderstandings of the case issues cited above account for that as well. It should be clear, however, that both of these types of information are at the very least perfectly valid sources of discovering and introducing into evidence the information described above.

As to ownership of the patent in suit, the Order misapprehended the nature of discovery itself. Forest River pointed out that Heartland's President did not know who owned the patent, that the corporate ownership structure was complex, and that an "assignment" to a bank was known to exist, albeit of an unknown scope. Heartland's reply memo for the first time argued that a third party stockholder testified that Heartland owned the patent and that there was only one assignment, and

8

that was from back in 2005. Forest River then found a 2008 Bank agreement referring to a post-2005 "assignment" and sought to introduce that by a Sur-reply. The Order then played the role of fact finder itself, deciding that Forest River should accept the stockholder's word for it, and that the 2008 evidence contradicting Heartland's assertion was "moot."

However, the scope and purpose of discovery is to obtain information "regarding any non-privileged matter that is relevant to any party's claim or defense" and relevance is defined as that which is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Generally, broad discovery is available under the Federal Rules of Civil Procedure. *See Blancha v. Raymark Industries*, 972 F. 2d 507, 514 (3d Cir. 1992)("Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant"). Privileges excluding relevant evidence are to be construed narrowly because the they constrict the fact-finding process. *Ryan v. Commissioner of Internal Revenue,* 568 F. 2d 531, 542-3 (7th Cir. 1977), *cert. denied,* 439 U.S. 820 (1978). In the present case, not only was discovery construed narrowly, the Order actually decided the ultimate issue in dispute: Heartland owns the patent!

Unquestionably, however, a party has a right to test the consistency of its opponents' statements. *Turner v. Shoney's Inc.,* 195 F.R.D. 637, 639 (S.D. Ind. 1999)(overruling Magistrate's Order limiting civil discovery under Rule 72(a)). In the present case, Heartland argues that we ought to be bound by a stockholder's testimony despite the fact that documents state contrary information (i.e., that a later assignment of some form exists). The scope of discovery can be critical to the merits of a case, *Id.,* at 638, and no less so in the present case. There can be no serious question of the relevance of evidence of jurisdictional facts. If Heartland does not own the patent in suit, does

9

this entire litigation effort fail for lack of jurisdiction or an indispensable party?

Another example of clearly erroneous ruling by the Order and a decision contrary to law is in the complete omission of any reference to the existing Protective Order by this Court (DE 61). The Order correctly sets forth the factors to be considered, on page 4, including whether or not there would be a burden or if disclosure would be made to a competitor. Then, the Order finds that it is too burdensome for Heartland to disclose this "highly confidential business information" to its competitor. The Order ignores, however, Forest River's information that the existing Protective Order has already made accommodation for that kind of confidential information. The earlier Protective Order specifically gives Heartland the option of eliminating its burden and risk by limiting the disclosure to "Attorneys Eyes Only." Forest River would then never get to see the valuation information Hartland is trying to keep confidential. In fact, that Protective Order on its face contemplates use to protect information about "value of or purchase of corporate assets." DE 61, §1(d). That would seem to cover precisely Heartland's concerns here.

Even if the prior Protective Order did not exist, Rule 26(c) gives the Court the authority to fashion such relief, specifying accommodating reasonable terms for discovery. The Advisory Committee Notes to that Rule, particularly to the 1970 Amendments adding Section c, make it clear that trade secrets are to be afforded only "limited protection," not absolute protection. Instead, the Order made Heartland's protection absolute.

<u>The Standard of Review for the Order:</u>

Rule 72(a) requires that the Court "must timely consider and modify or set aside any part of the order that is clearly erroneous or contrary to law." Obviously, this is a deferential standard, not

merely de novo.  At the same time, however, when the reviewing Court examines the entire record and is left with a definite and firm conviction that a mistake has been made or when the magistrate judge has misinterpreted or misapplied applicable law, the order must be overturned.  *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

Conclusions:

Clearly, the Order misinterpreted and misapplied the applicable patent and evidentiary laws, as explained above.  Further, the Order was clearly mistaken about the issues in the case.  These errors were a direct and contributing factor in granting the protective order to quash the subpoenas and to deny consideration to the sur-reply evidence.  Accordingly, the Order should be reversed.  To the extent Heartland wishes to preserve the confidentiality of it information, it should use the methods permitted in the existing Protective Order.

Dated: December 7, 2009                                      Respectfully submitted,

                                                             s/Ryan M. Fountain

                                                             _____
                                                             Ryan M. Fountain (8544-71)
                                                                     *RyanFountain@aol.com*
                                                             420 Lincoln Way West
                                                             Mishawaka, Indiana  46544
                                                             Telephone: (574) 258-9296
                                                             Telecopy: (574) 256-5137
                                                             ATTORNEY FOR DEFENDANT

**Certificate of Service**

I certify that on December  7, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, which sent notification of such filing to all of the parties

through at least the following counsel of record:

    David P. Irmscher    david.irmscher@bakerd.com
    Abigail M. Butler    abidgail.bulter@bakerd.com

s/Ryan M. Fountain<br>
Ryan M. Fountain<br>
ATTORNEY FOR DEFENDANT