# UNITED STATES DISTRICT COURT
## Northern District of Indiana
## South Bend Division

| | | |
|---|---|---|
| HEARTLAND RECREATIONAL VEHICLES, LLC, | ) ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO.: 3:08-cv-490 TLS-CAN |
| | ) | |
| FOREST RIVER, INC., | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF
## HEARTLAND'S MOTION FOR SUMMARY JUDGMENT


BAKER & DANIELS LLP


By:  */s/ David P. Irmscher*
　　　David P. Irmscher (#15026-02)
　　　Abigail M. Butler (#22295-02)
　　　111 East Wayne, Suite 800
　　　Fort Wayne, Indiana  46802
　　　Tel: 260.424.8000
　　　Fax: 260.460.1700
　　　david.irmscher@bakerd.com
　　　abigail.butler@bakerd.com

ATTORNEYS FOR PLAINTIFF,
HEARTLAND RECREATIONAL
VEHICLES, LLC

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  HEARTLAND AND ITS ATTORNEYS DID NOT COMMIT INEQUITABLE
     CONDUCT ................................................................................................... 2

     A.   The Inequitable Conduct Standard is Very High ................................... 5

     B.   There is No Evidence That Heartland or its Attorneys Intended to Deceive the
          Patent Office ......................................................................................... 6

     C.   None of Forest River's Allegations Support a Finding of Inequitable Conduct ..... 9

          1.   Heartland's Specification Was Not Misleading ......................... 9

          2.   Heartland was not required to admit the materiality of prior art .............. 10

          3.   There is no clear and convincing evidence that Heartland knew of the
               Cardinal or Roadmaster fifth wheel trailer frames or withheld them with
               deceptive intent ...................................................................... 10

          4.   There is no evidence that Heartland knew of or intentionally withheld any
               other prior art trailers .............................................................. 12

          5.   Pete Liegl's July 11, 2005 letter was too vague to provide knowledge of
               prior art .................................................................................... 15

          6.   Conduct occurring during prosecution of a subsequent continuation patent
               cannot support a finding of inequitable conduct ....................... 15

          7.   Any errors in inventorship arose through an honest misunderstanding of
               what it means to be an "inventor" ............................................ 16

          8.   The named inventors' alleged failure to read the patent application does
               not warrant a finding of inequitable conduct ............................ 18

          9.   Heartland's attorneys took appropriate steps to gather and disclose
               information regarding the "nature" of the invention ................. 19

          10.  The attorneys' alleged negligence in gathering and disclosing prior art
               cannot form the basis of inequitable conduct ........................... 20

          11.  There is no duty of disclosure with respect to "ordinary skill in the art" . 21

          12.  There is no duty to disclose information detailing the differences and
               similarities between the claimed invention and prior art ........... 21

          13.  The trailer frame is a crucial aspect of Heartland's invention.................. 22

          14.  Heartland's alleged failure to meet the enablement requirements of §112
               cannot form the basis of inequitable conduct ........................... 22

          15.  Heartland's attorneys disclosed all material prior art of which they knew 23

III.     FOREST RIVER'S TRADE SHOW FOR RV DEALERS .............................................. 23

IV.     FOREST RIVER'S LANHAM ACT CLAIM FAILS AS A MATTER OF LAW .......... 25

     A.     Heartland Did Not Make a False Statement or Misrepresentation of Fact ........... 25

     B.     The Lanham Act Does Not Govern Conduct That is Irrelevant to Consumers .... 26

          1.     Because Heartland did not make a false statement or misrepresentation to a relevant customer, no customers could be confused by Heartland's alleged conduct ......................................................................................... 28

          2.     Heartland did not make a false statement about goods actually offered for sale ........................................................................................................... 29

          3.     Forest River's inability to recover damages entitles Heartland to summary judgment ...................................................................................... 32

V.     HEARTLAND IS ALSO ENTITLED TO SUMMARY JUDGMENT ON FOREST RIVER'S CRIMINAL DECEPTION CLAIM .................................................................. 35

          1.     Heartland made no misrepresentations in connection with the Hotel Incident ........................................................................................................ 35

          2.     Forest River was not the target of an alleged fraud .................................. 36

          3.     Forest River cannot show that Heartland's alleged conduct caused it pecuniary harm ......................................................................................... 37

VI.     CONCLUSION ................................................................................................................. 38

## STATEMENT OF ISSUES

I.      Can Forest River, Inc. ("Forest River") create an issue of material fact as to whether Heartland Recreational Vehicles, LLC ("Heartland") and its patent attorneys, Gregory Cooper and Gerard Gallagher of Barnes & Thornburg, committed inequitable conduct where there is no evidence that any party substantively involved in the prosecution of U.S. Patent No. 7,278,650:

   a.  failed to disclose material information of which they had knowledge to the Patent Office;

   b.  submitted materially false information to the Patent Office; or

   c.  possessed a specific intent to deceive the Patent Office?

II.     Can Forest River create an issue of material fact as to whether Heartland violated the Lanham Act where there is no evidence that:
   a.  a Heartland employee made a misrepresentation while delivering its promotional materials to certain hotels on October 22, 2008;

   b.  a RV dealer could have been confused by Heartland's alleged conduct;

   c.  a Heartland employee made a misrepresentation about the goods Heartland and Forest River offer for sale, i.e. RVs; or

   d.  Forest River suffered monetary damage as a result of actual consumer reliance upon a false statement by Heartland, or that a false statement by Heartland proximately caused Heartland to gain profits?

III.    Can Forest River create an issue of material fact as to whether Heartland committed criminal deception where there is no evidence that:
   a.  a Heartland employee made a misrepresentation while delivering its promotional materials to certain hotels on October 22, 2008;

   b.  Forest River was the target of an alleged fraud; or

   c.  Forest River suffered pecuniary harm as a proximate result of Heartland's alleged conduct?

BDDB01 5914325v4

# TABLE OF AUTHORITIES

**Cases**

*ABN AMRO Mortgage Group, Inc. v. Maximum Mortgage, Inc.*, 429 F.Supp.2d 1031 (N.D. Ind. 2006).................................................................................................................... 38, 39, 40

*Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 286 F.Supp.2d 969 (N.D. Ill. 2003)........................ 33

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.,* 508 F.3d 641 (11th Cir. 2007)..................... 31

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ....................... 28, 33, 34

*Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309 (Fed. Cir. 2006)....................... 5, 6

*Felsher v. Univ. of Evansville*, 755 N.E.2d 589 (Ind. 2001)........................................................ 26

*Francorp, Inc. v. Siebert*, 2002 WL 731170, at *1 (N.D. Ill. April 24, 2002) ....................... 29, 30

*Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2nd Cir. 1995)......................................... 32

*Hartzler v. Goshen Churn & Ladder Co.*, 55 Ind. App. 455, 104 N.E. 34, 38 (Ind. App. 1914). 26

*Keller Med. Specialties Prods. v. Armstrong Med. Indus., Inc.*, 842 F.Supp. 1086 (N.D. Ill. 1994) .................................................................................................................................... 29

*Kennedy v. Nat'l Juvenile Detention Ass'n*, 187 F.3d 690 (7th Cir. 1999) ....................... 29, 30, 31

*Kingsdown Med. Consultants v. Hollister, Inc.*, 863 F.2d 867, 872 (Fed.Cir. 1988) ................... 5

*Kingsdown*, 863 F.2d at 876 ........................................................................................................ 6

*L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.*, 9 F.3d 561 (7th Cir. 1993)............. 35, 37

*Mishawaka Rubber & Wollen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203 (1942) ...................... 35

*Molins PLC v. Textron, Inc.* 33 U.S.P.Q.2d 1823 (Fed. Cir. 1995)....................................... 6, 13

*Monoflo Intern., Inc. v. Sahm*, 726 F.Supp 121 (E.D. Va. 1989) ............................................... 32

*Pure Imagination, Inc. v. Pure Imagination Studios*, Inc., 2004 WL 2967446, at * 5 (N.D. Ill. 2004)..................................................................................................................................... 30

*Regents of the Univ. of California v. Howmedica, Inc.*, 530 F.Supp. 846 (D.N.J. 1981)............. 19

*Rothman v. Target Corp.*, 556 F.3d 1310 (Fed. Cir. 2009) ............................................... 5, 13, 16

*Sanderson v. Brugman*, 2002 WL 31255470, at *5 (S.D. Ind. Sept. 20, 2002)............... 38, 39, 40

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357 (Fed. Cir. 2008)......... 6, 12, 17

*Upjohn Co. v. Mova Pharmaceutical Corp.*, 225 F.3d 1306 (Fed. Cir. 2000) ............................ 22

**Statutes**

15 U.S.C. § 1117.................................................................................................................. 32, 33

15 U.S.C. § 1125(a)(1)(A) ............................................................................................... 1, 27, 29

35 U.S.C. § 112................................................................................................................... 21, 22

Ind. Code § 34-24-3-1................................................................................................ 1, 35, 36, 38

Ind. Code § 35-43-5-3(6)........................................................................................................ 1, 35

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................................................... 1

# I.     INTRODUCTION

In its Amended Answer, Defenses, and Counterclaims (the "Amended Answer"), Forest River, Inc. ("Forest River") asserts three distinct counterclaims against Heartland Recreational Vehicles, LLC ("Heartland"): (1) inequitable conduct in the prosecution of U.S. Patent No. 7,278,650 (the "'650 patent"); (2) "passing off" or "palming off" in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); and (3) criminal deception in violation of Ind. Code §§ 35-43-5-3(6) & 34-24-3-1.[1]  These counterclaims falsely accuse Heartland of a wide array of deceptive conduct.  Ultimately, though, the counterclaims consist of mere conspiracy theories, conjecture, and futile attempts to extend the applicable law well beyond its intended bounds. Because Forest River's counterclaims have no evidentiary or legal basis, the Court should grant Heartland's Motion.

The Federal Rules of Civil Procedure provide that motions for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  As the evidence designated by Heartland will demonstrate, no issue of material fact exists with respect to any of Forest River's counterclaims, and Heartland is entitled to summary judgment.

---

[1]     Forest River has also asserted counterclaims seeking a declaratory judgment with respect to the issues of invalidity and non-infringement.  Heartland believes that these claims are likely to fall out of the case pursuant to Heartland's Voluntary Motion to Dismiss and the filing of its Covenant Not to Sue.  (*See* Heartland's Mot. to Dismiss Certain Claims in Light of Covenant Not to Sue, Dckt. Entry Nos. 42-43.)  However, Forest River has apprised Heartland that it intends to claim that this is an "exceptional case" and to file a motion seeking attorneys' fees.  Such a motion would require a determination of the merits of Forest River's inequitable conduct counterclaim.  Hence, Heartland has included the counterclaim of inequitable conduct in its Motion for Summary Judgment.

## II. HEARTLAND AND ITS ATTORNEYS DID NOT COMMIT INEQUITABLE CONDUCT

In 2003, five individuals—Brian Brady, Scott Tuttle, John Rhymer, Timothy Hoffman, and Doug Lantz—formed Heartland. Hoping to find a niche in the RV market, Heartland began searching for a way to differentiate its flagship fifth wheel from the competitors' models. The emerging trend of extended cab and short-bed trucks provided the Heartland owners with a perfect opportunity. Because these truck designs brought the front of fifth wheels closer to truck cabs, they significantly reduced a fifth wheel's turning radius. (SOF 6.) All too often, this reduced turning radius caused the front corner of the fifth wheel to collide with the truck cab, resulting in broken windows, dented cabs, and crunched fiberglass, as shown in Figure 4 of the '650 patent. (*Id.*)



(Exh. H, Fig. 4); (Exh. MM.)

Heartland created a solution to that problem—a unique fifth wheel design featuring a frame and front end cap with notched corners. As shown below, the invention allows for an improved turning radius for RV owners.



(Exh. H, Fig. 5.); (Exh. NN.)

The named Heartland inventors decided to apply for a patent for their invention. Heartland owner Scott Tuttle was assigned the task of procuring the patent, and he acted as the primary liaison between the named Heartland inventors and their patent attorneys.  (SOF 4, 16.)

Tuttle provided patent attorney Gregory Cooper with a detailed written description of the invention. "This revolutionary concept involves both rethinking how the steel frame of the 5th wheel is designed, as well as how the [] fiberglass front cap design flows in relationship to the frame…By angling the frame back at the corners, and incorporating a sweeping design in the fiberglass front cap that flows back and over that section of the frame…we have essentially 'cut off' the lower corners of the front of the 5th wheel, resulting in a 30%+ increased turning radius." (SOF 7.)  As Tuttle's description shows, the invention was more innovative than prior designs. Heartland removed **just enough of the bottom corners** of the trailer's frame and fiberglass cap to improve the turning radius, as shown in the figure below from the '650 patent.

BDDB01 5914325v4



(Exh. H, p. 1)

This innovative design provides all the benefits of an improved turning radius while sacrificing very little of the living space that RV consumers need. The '650 patent issued on October 9, 2007. (Exh. H, p. 1.) The patent application that resulted in the '650 patent included over 30 claims directed to the design of the shell of the 5th wheel and its frame. (SOF 30.) The '650 patent has only 3 claims, each of which is directed to the frame. (*See* Exh. H, p. 6.)

In an attempt to render the '650 patent (and any future related patents) unenforceable, Forest River has accused Heartland of inequitable conduct. In its Amended Answer and interrogatory responses, Forest River baselessly claims that the named inventors or their highly reputable attorneys, Gregory Cooper and Gerard Gallagher, acted deceptively in nearly every conceivable phase of the patent prosecution process. Both Cooper and Gallagher are currently partners with the law firm of Barnes & Thornburg. (SOF 3, 15.) Inequitable conduct is an exceptionally serious offense with severe penalties for both inventors and attorneys. Therefore, the Federal Circuit requires proof by **clear and convincing evidence** that inventors or their counsel intentionally deceived the Patent Office in order to obtain a patent.

For the reasons outlined below, Forest River cannot prove that Heartland committed inequitable conduct.

## A.     The Inequitable Conduct Standard is Very High

"A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution." *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006).  In order to protect inventors from having their patents rendered unenforceable due to careless errors, inattention, or honest misunderstandings that occurred during the patent application process, courts have designed an intricate and stringent test to evaluate claims of inequitable conduct.

First, Forest River must prove **by clear and convincing evidence** that Heartland either submitted false material information or failed to disclose material information to the Patent Office.  *Kingsdown Med. Consultants v. Hollister, Inc.*, 863 F.2d 867, 872 (Fed.Cir. 1988). Information is material if a reasonable examiner would have considered it important in deciding whether to allow the application. *Digital Control*, 437 F.3d at 1315-16.  Importantly, "[a]n applicant has no duty to disclose a reference to the PTO if it is cumulative of or less material than references already before the examiner."  *Rothman v. Target Corp.*, 556 F.3d 1310, 1326 (Fed. Cir. 2009).

In addition to proving the materiality of any omitted or false information by clear and convincing evidence, Forest River must also prove by **clear and convincing evidence** that Heartland's conduct was carried out with deceptive intent.  *Digital Control*, 437 F.3d at 1313. The level of intent Forest River must prove by clear and convincing evidence is very high.  If a misleading statement or material omission occurs through negligence, oversight, carelessness, an error in judgment, **or even gross negligence**, there is no intent to deceive and there is no inequitable conduct.  *Kingsdown*, 863 F.2d at 876.  Because Forest River is accusing Heartland

of intentionally withholding material information, it must present clear and convincing evidence that Heartland "**made a deliberate decision** to withhold a **known** material reference." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008) (quoting *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995) (emphasis in original). Furthermore, in order to meet the clear and convincing standard, an inference of deceptive intent must "be the single most reasonable inference to be drawn from the evidence." *Id.*

"If a threshold level of intent to deceive or materiality is not established by clear and convincing evidence, the district court does not have any discretion to exercise and cannot hold the patent unenforceable regardless of the relative equities or how it might balance them." *Id.* at 1367. If materiality and intent are each independently shown by clear and convincing evidence, the Court must then make a discretionary decision whether to find inequitable conduct. In exercising this discretion the Court must "balance the **substance** of those now-proven facts and all the equities of the case to determine whether the severe penalty of unenforceability should be imposed." *Id.*

Forest River cannot prove by clear and convincing evidence that Heartland had actual knowledge of material information and then failed to disclose that material information. Forest River cannot prove by clear and convincing evidence that Heartland submitted materially false information. Forest River cannot prove by clear and convincing evidence that Heartland at any time possessed the specific intent to mislead or deceive the Patent Office. Heartland did not commit inequitable conduct and is entitled to summary judgment.

### B.     There is No Evidence That Heartland or its Attorneys Intended to Deceive the Patent Office

Before analyzing each allegation of inequitable conduct, Heartland emphasizes that there is simply no issue of material fact as to whether Heartland intended to deceive the

Patent Office during the prosecution of the '650 patent. Scott Tuttle, the Heartland employee responsible for obtaining the patent, affirms that he did not intentionally lie to the Patent Office, that he did not intentionally deceive the Patent Office, and that he did not intentionally withhold any references of any type from the Patent Office. (SOF 83.)

Named inventor Doug Lantz affirms that he did not intentionally withhold any prior art from the Patent Office and did not intentionally misrepresent any prior art to the Patent Office; furthermore Lantz has no information indicating that the five original Heartland owners were named as inventors in order to deceive anyone. (SOF 66, 87, 88.)

John Rhymer testified that he believes that the named inventors complied with their duty of disclosure under the Patent Rules. (SOF 20.) Rhymer further testified that he and Tuttle discussed potential examples of prior art, but that he did not consider himself an expert in evaluating prior art and did not believe he could tell Tuttle whether a particular reference constituted prior art. (SOF 21, 45.)

There is no clear and convincing evidence that Brian Brady was aware of any allegedly withheld material prior art, or that he withheld such prior art with deceptive intent. (*see generally* SOF 32-43, 131.).

Forest River did not ask Timothy Hoffman about his knowledge of specific prior art during the patent prosecution or whether he withheld any information with deceptive intent. Hence, there is no evidence supporting a claim that Hoffman committed inequitable conduct.

Heartland attorney Gregory Cooper states that he did not mislead or mischaracterize any fact to the Patent Office in connection with the '650 patent application. (SOF 91.)

Heartland attorney Gerard Gallagher believes that neither he nor anyone else involved in the prosecution of the '650 patent committed inequitable conduct.  (SOF 92.)

Patent law expert Jay Taylor, a retired partner with the law firm of Ice Miller, reviewed the patent prosecution files, the pleadings, and discovery in this matter.  In his expert opinion, there is no evidence that Heartland had any intent to deceive the Patent Office.  (*See generally* SOF 104-132.)

Finally, Jeff Babcock, Forest River's 30(b)(6) designee on the topic of inequitable conduct, concedes that Heartland had no intent to deceive the Patent Office.  Babcock opines that Heartland did not act "knowingly" in its alleged conduct during the prosecution of the '650 patent.  (SOF 97, 98.)  Babcock believes that Scott Tuttle, the Heartland employee responsible for gathering information about the invention and providing it to Heartland's attorneys, is a "truthful" individual. (SOF 95.) Babcock testified that Heartland's John Rhymer is "very honest." (*Id.*)  When asked whether Rhymer and Tuttle intentionally lied to the Patent Office, Babcock stated that they "didn't intentionally go out and say 'We're gonna lie to the patent office here and try to prove something here.'  I don't think that their scope was broad enough prior to filing that. Then they should have or their attorney should have caught that."  (SOF 96.)  But even if Heartland or its attorneys failed to "catch" something, Forest River cannot counter Heartland's "I didn't know" with an assertion that they "should have known."  *Kingsdown*, 863 F.2d at 875, n. 11, 876.  The inequitable conduct defense exists to penalize parties who intentionally deceive the Patent Office, not to punish inventors and attorneys for ignorance or lapses in professional practice and judgment.  *Id.* at 876.

The Court can dispose of Forest River's inequitable conduct claim very easily. Because the evidence designated by Heartland clearly demonstrates that all parties, including

Forest River, agree that Heartland did not intend to deceive the Patent Office, Heartland is entitled to summary judgment as a matter of law.

### C. None of Forest River's Allegations Support a Finding of Inequitable Conduct

Forest River's Amended Answer and its answers to Heartland's interrogatories contain numerous allegations of inequitable conduct. (Exh. K, Am. Ans. ¶¶ 47-56); (Exh. J, Resp. to Interrog. No. 3.) An analysis of each individual allegation by Forest River confirms that Heartland and its attorneys did not commit inequitable conduct. Heartland addresses each allegation in turn.

#### 1. Heartland's Specification Was Not Misleading

Forest River alleges that Heartland misled the Patent Office with the following statement in the '650 patent specification: "Conventionally, the upper deck of a typical fifth wheel has a rectangular or parallelogram-shape footprint whose forward corners form right angles." (Exh. H); (Exh. K, Am. Ans. ¶ 47.) The statement in Heartland's specification is true. In the context of a patent, "conventionally" merely means "known in the art." (SOF 107) Heartland provided the Patent Office with U.S. Patent Nos. 6,343,830; 6,860,545, 6,170,903; and 5,746,473. These references all depict upper decks with corners forming right angles. (*See* Exh. H, p. 1, listing disclosed patents); (Exhs. V – Figs. 1 & 2, W – Figs. 1 & 2, X – Figs. 1, 2A & 2B, & Y – Figs. 5 & 6); (SOF 107.) Therefore, upper decks with rectangular corners are "known in the art," and Heartland's statement regarding conventional fifth wheel design was accurate. (SOF 107.)

Forest River also alleges that Heartland's statement that Figure 9A of its specification depicts prior art is false and misleading. As Jay Taylor noted in his report, "the construction shown in Figure 9A of the '650 patent is very similar to the front edge construction

shown in Figure 2 of U.S. Patent No. 6,860,545 and Figures 5 & 6 of U.S. Patent No. 5,746,473, thus showing that Figure 9A does depict prior art and was neither false nor misleading." (SOF 107); (Exh. W, Fig. 2; Exh. Y, Figs. 5 & 6.)

Furthermore, because neither of these statements is false, obviously there can be no evidence that the named inventors or attorneys made them with deceptive intent. This allegation cannot support a finding of inequitable conduct.

2.     Heartland was not required to admit the materiality of prior art

Forest River alleges that Heartland violated its duty of candor to the Patent Office by failing to admit that the references cited in its Information Disclosure Statement were material. (Exh. K, Am. Ans. ¶ 48.) There is simply no requirement under either the Patent Act or the Patent Office Rules that an applicant "admit" that disclosed information is either prior art or that it is material. (SOF 108.) (citing Patent Rules 1.56, 1.97, and 1.98.) This allegation cannot form the basis of an inequitable conduct finding.

3.     There is no clear and convincing evidence that Heartland knew of the Cardinal or Roadmaster fifth wheel trailer frames or withheld them with deceptive intent

Forest River has alleged that the named inventors had knowledge of a Roadmaster fifth wheel trailer frame and a Forest River Cardinal fifth wheel trailer frame, and that Heartland withheld them from the Patent Office with deceptive intent. There is no clear and convincing evidence that either the named inventors or Heartland's attorneys knew of these frames or that they withheld them in order to deceive the Patent Office.

Heartland's Brian Brady does not recall ever seeing the Roadmaster trailer frame. (SOF 41.) Brady further testified that he does not know if Roadmaster was ever a competitor with any company for which he worked. (*Id.*) Brady also has no recollection of ever seeing **any**

10

trailers made by Roadmaster.  (*Id.*)  John Rhymer has never seen an RV similar to the Roadmaster trailer. (SOF 47.) Upon viewing a sketch of the Roadmaster frame during his deposition, Rhymer did not think that it could have constituted prior art because it is a cargo trailer.  (*Id.*)

Similarly, there is no clear and convincing evidence that any of the named inventors had knowledge of the Forest River Cardinal fifth wheel frame. (*See* SOF 57, 116.) Indeed, Heartland is uncertain whether the Cardinal frame even constitutes prior art, as the document Forest River produced depicting this frame contains the word "PROTO," indicating that this may be a prototype that was never used in a trailer offered for sale.  (*See* Exh. M.)

Again, Forest River's burden of proof is extremely high.  Because Forest River is accusing Heartland of intentionally withholding material information, it must prove by clear and convincing evidence that Heartland "**made a deliberate decision** to withhold a **known** material reference." *Star Scientific,* 537 F.3d at 1366.  There is no clear and convincing evidence that Tuttle, Rhymer, Brady, Lantz, Hoffman, or Heartland's attorneys knew of these frames.  Forest River may try to show their knowledge and deceptive intent through circumstantial evidence and speculation.  But in order to meet the clear and convincing standard, an inference of deceptive intent must "**be the single most reasonable inference to be drawn from the evidence.**"  *Id.* (emphasis added.)

Forest River cannot show that Heartland knew of the Roadmaster or Cardinal fifth wheel frames or that they made a conscious decision to withhold these frames in order to deceive the Patent Office.  Thus, the non-disclosure of these frames cannot be inequitable conduct.

4.    There is no evidence that Heartland knew of or intentionally withheld any other prior art trailers

In addition to its allegations regarding the Roadmaster and Cardinal fifth wheel frames, Forest River accuses Heartland of failing to disclose certain unpatented prior art trailers of which the named inventors supposedly knew. (Exh. K, Am. Ans. ¶ 48.)  Forest River identifies these trailers as: (1) the Eliminator fifth wheel trailer; (2) the Cherokee fifth wheel trailer; (3) a Holiday Rambler fifth wheel trailer; and (4) the Space Craft fifth wheel trailer. There is simply no clear and convincing evidence that the named inventors or attorneys knew of these trailers, recognized them as prior art material to their invention, or intentionally withheld them in order to deceive the Patent Office.  (*See* SOF 38, 39, 40, 51, 52, 56, 71, 75, which collectively outline Heartland's statements regarding these trailers); (SOF 111-114.)

Furthermore, "[a]n applicant has no duty to disclose a reference to the PTO if it is cumulative of or less material than references already before the examiner."  *Rothman v. Target Corp.*, 556 F.3d 1310, 1326 (Fed. Cir. 2009).  All four of these trailers are cumulative of prior art actually before the examiner prior to the issuance of the patent.  *See Molins PLC v. Textron*, *Inc.* 33 U.S.P.Q.2d 1823, 1832 (Fed. Cir. 1995) ("When a reference was before the examiner, whether through the examiner's search or the applicant's disclosure, it cannot be deemed to have been withheld from the examiner.")  That prior art includes U.S. Patent No. 4,767,132 (the "Avery Patent"), U.S. Patent Application No. 2002/0003341 (the "Hall Reference"), and DE 3321306 (the "Foreign Publication").[2]  (Exhs. Z, AA, & BB.)  These references are depicted below.

---

[2]    Specifically, The Avery and Hall references were cited by the examiner in rejecting some of Heartland's claims in the patent application.  This shows that the examiner was aware of prior art showing "V" nose and curved corner trailers and fifth wheels.  (SOF 111.)

**The Avery Patent ("V" nose/Tapered Front End)**



(Exh. Z, p. 1.)

**The Hall Reference (Curved Front Corners)**



(Exh. AA, p. 1.)

**The Foreign Publication (Curved/Slanted Front Corners)**



(Exh. BB, Fig. 1.)

As shown in Exhibit J of Heartland's Appendix, the Eliminator has curved front corners. (Exh. J); (SOF 111.) This feature is disclosed in the Hall Reference and the Foreign Publication. (SOF 111); (Exhs. AA & BB.)

13

As shown in Exhibit CC of Heartland's Appendix, the Cherokee has both a "V" nose and curved front corners.  (*See* Exh. CC); (SOF 112.)  These concepts are disclosed in the three examples of prior art depicted above.  (SOF 112.); (*see* Exhs. Z, AA, & BB.)

As shown in Exhibit DD of Heartland's Appendix, the Holiday Rambler has slanted or rounded front corners, which are disclosed in the Hall Reference and the Foreign Publication Reference.  (*See* Exhs. DD, AA & BB); (SOF 113.)

As shown in Exhibit EE of Heartland's Appendix, the Space Craft fifth wheel trailer has a "V" nose front, a characteristic disclosed in the Avery Patent and the Hall Reference. (SOF 114); (*see* Exhs. EE, Z, & AA.)

The named inventors had no duty to disclose these cumulative trailers, and even if they did, their failure to do so resulted from a lack of knowledge or skill in evaluating prior art, not deceptive intent.  Thus, the allegations regarding the Eliminator, the Cherokee, the Holiday Rambler, and the Space Craft trailers do not support a finding of inequitable conduct.

Finally, it is not clear from the pleadings and interrogatories whether Forest River is contending that the attorneys and named inventors should have disclosed the Shadow Cruiser fifth wheel, the Catalina Coachmen fifth wheel, or the Trail Bay Hauler fifth wheel toy hauler. Regardless, there is no evidence that anyone subject to a duty of disclosure knew of these references, considered them material to the '650 patent, or withheld them in an attempt to deceive the patent office.  (*See* SOF 37, 46, 58, 59, outlining named inventors' lack of knowledge regarding these products); (SOF 117, 118, 119.)

Furthermore, these trailers are also cumulative of prior art either disclosed to or otherwise considered by the Patent Office.  The Catalina and Trail Bay trailers have a lower portion of the front edge that has square corners.  (*See* Exhs. GG, II.)  According to Jay Taylor,

14

such construction is disclosed in U.S. Patent Nos. 6,860,545 – Ingram et al. (*see* Exh. W); 6,343,830 – Ingram et al. (*see* Exh. V); 6,231,115 – Crean (*see* Exh. HH); and 5,746,473 – Crean (*see* Exh. Y). (SOF 118, 119.)  Furthermore, Jay Taylor affirms that the Shadow Cruiser has a V nose and sloped front surfaces, which is shown in Avery and the Ingram et al. patents.  (SOF 117); (*see* Exhs. Z, V, & W.)  Hence, the non-disclosure of these three references also cannot form the basis of inequitable conduct.  (SOF 117-119); *Rothman*, 556 F.3d at 1326.

> 5. <u>Pete Liegl's July 11, 2005 letter was too vague to provide knowledge of prior art</u>

Forest River specifically contends that a July 11, 2005 letter from Forest River's Pete Liegl to Heartland counsel Gerard Gallagher provided the attorneys and named inventors with knowledge of the Eliminator trailer, and that Gallagher and the named inventors withheld their knowledge of this trailer with deceptive intent. (Exh. K, Am. Ans. ¶ 49.)  This allegation typifies the baseless nature of Forest River's inequitable conduct allegations.  Rather than actually identifying the Eliminator by name or providing a meaningful description, the letter from Liegl merely states that "[q]uite a few years ago there was a **certain recreational vehicle product** that had a similar design to the one in question." (SOF 111); (Exh. F) (emphasis added). This letter is too vague to provide Heartland with knowledge of the Eliminator trailer.  Hence, this allegation cannot serve as the basis of an inequitable conduct finding.

> 6. <u>Conduct occurring during prosecution of a subsequent continuation patent cannot support a finding of inequitable conduct</u>

Forest River claims that Heartland "secretly" disclosed the Eliminator reference to the Patent Office in a continuing application, SN 11/834,214, did not inform Forest River of or allow Forest River to attend an interview regarding the examination of that continuation application, filed an improper information disclosure statement after the interview, and did not

adequately comply with Rule 1.133(b) in connection with the prosecution of that continuation application. (Exh. K, Am Ans. ¶ 52.) Forest River also contends that Heartland improperly added claims to continuation applications SN 11/834,214 and 12/315,894. (Exh. K, Am. Ans. ¶ 53 & 54.) Finally, Forest River alleges that on June 24, 2009—nearly two years following the issuance of the '650 patent— Heartland's attorneys declined to inform the Patent Office of false inventorship in connection with a continuation application. (Exh. JJ, Resp. to Interrog. No. 3, p. 6.)

These allegations are irrelevant to Forest River's claim of inequitable conduct. As a matter of law, conduct occurring in connection with the prosecution of a continuation patent **after** the issuance of the parent patent cannot from the basis of a claim of inequitable conduct with respect to the parent patent. *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1370, n. 10 (Fed. Cir. 2008); (SOF 120.)

7. <u>Any errors in inventorship arose through an honest misunderstanding of what it means to be an "inventor"</u>

Forest River alleges that Heartland and its attorneys committed inequitable conduct by including inventors who were not actually "co-inventors." (Exh. K, Am. Ans. ¶ 55.) At worst, the decision to include all five owners as inventors stemmed from an honest misunderstanding as to the meaning of "inventorship" under the patent laws, not a desire to deceive the Patent Office.

While John Rhymer thought he was the primary inventor of the patent, he testified that he did not think it seemed "right for just my name to be on there. So when the question was asked to me, I answered 'well, I think we should all been on there' . . . It just didn't seem fair that just my name would be on there." (SOF 76.) When asked whether he knew if Scott Tuttle had

discussed the inventorship issue with Heartland's attorneys, Rhymer stated "Meaning having multiple names on there? … I don't know that was a problem." (SOF 77.)

Scott Tuttle testified that all five owners were listed because "we felt it was a team effort….we were all there for the discussions when we were trying to conceive this…we felt like we all played a part." (SOF 78.) Tuttle also testified to being confused as to the meaning of inventorship, stating that "there may have been some gray area in my understanding between what ownership and what inventor, you know, rights and things are." (SOF 79.)

Doug Lantz considers himself an inventor because of his contributions during many product development meetings, his monetary investment in the firm, his development of the building where the fifth wheels were manufactured, his procurement of computer technology to facilitate the invention, his development of the bill of materials for the company, and his procurement of insurance for Heartland's venture. (SOF 80.) Lantz further testified that he has no information that any of the inventors were named in order to deceive anyone. (SOF 81.)

Also, after the execution of the patent application, all five named inventors assigned their rights to Heartland. (SOF 82.) Consequently, they had no conceivable motive to deceptively include their names on the patent application – they transferred their ownership rights in the patent anyway.

Forest River also alleges that Heartland attorney Gregory Cooper should have known that certain named inventors were not actually inventors. But Cooper testified that he informed Scott Tuttle of what it means to be an inventor before Tuttle gave him the list of inventors to include on the provisional application. (SOF 8.) Furthermore, Forest River's argument that Cooper "should have known" that the inventorship was wrong amounts to an

accusation of mere negligence or, at worst, gross negligence, neither of which warrants a finding of inequitable conduct. *Kingsdown*, 863 F.2d at 876.

The evidence confirms that any error in the inventorship portion of the '650 patent application occurred through honest mistake, not deceptive intent. (SOF 123.) Thus, Forest River's allegation of imperfect inventorship cannot from the basis of inequitable conduct.

8.  <u>The named inventors' alleged failure to read the patent application does not warrant a finding of inequitable conduct</u>

Forest River alleges that at least three named inventors executed the Declaration of Inventorship under false pretenses because they did "not read the application sufficiently to understand its content and claims." (Exh. JJ, Resp. to Interrog. No. 3, p. 3.) Forest River also alleges that Heartland's attorneys should have known this fact and should have prevented the application from being prosecuted. (*Id.*) Contrary to Forest River's allegation, Scott Tuttle confirmed that the named inventors did in fact read the application: "I recall that as we sat in a room that different partners of mine were absolutely reviewing it and looking at it….They had it in their hands, they saw it, they read it." (SOF 11.) Furthermore, at least one reported case has found that an inventor's failure to read an application before executing the Declaration is not a sufficient basis for a finding of either invalidity or inequitable conduct. (SOF 126) (citing *Regents of the Univ. of California v. Howmedica, Inc.*, 530 F.Supp. 846, 853-54, 862 (D.N.J. 1981).

Additionally, no evidence exists to support a claim that Heartland attorney Gregory Cooper knew of any alleged failure to read the application. When Cooper sent the application to the named inventors for execution, he included a transmittal letter. In that letter, he informed the named inventors that "by signing the Declaration, you are declaring that you have reviewed and understood the contents of the application including the patent claims." (SOF

18

13.)  Because the Declaration was signed and returned to him, he had no reason to believe that the named inventors had not complied with his instructions.  Furthermore, because Gerard Gallagher did not assume representation of Heartland until after the Declaration had been signed, he had no reason to question whether the named inventors had read the application.  After all, the file transferred to him included both Cooper's transmittal letter and a copy of the named inventors' signed declarations.

Finally, Forest River's allegation essentially accuses the named inventors and their attorneys of negligence or, at worst, gross negligence, which are insufficient to support a claim of inequitable conduct.  *Kingsdown*, 863 F.2d at 876.

9.    Heartland's attorneys took appropriate steps to gather and disclose information regarding the "nature" of the invention

Forest River claims that Heartland's attorneys failed to sufficiently gather and disclose information regarding the "nature" of the invention.  (Exh., JJ, Resp. to Interrog. No. 3, p. 3.)  Contrary to Forest River's assertion, Barnes & Thornburg's patent prosecution file contains extensive information, drawings, and photographs provided by Heartland to Gregory Cooper regarding the scope of the invention.  (*See* Exh. B, B&T 02-040.)  Furthermore, when Cooper sent the provisional and utility applications to Heartland, he included letters requesting that the named inventors review the applications for errors and submit any proposed changes.  (SOF 9, 11); (Exh. B, B&T 043, 080.)  These steps were sufficient and appropriate to fulfill Cooper's need to collect and disclose information regarding the "nature" of the invention.  (SOF 125.)

Finally, because this allegation accuses the attorneys of mere negligence or gross negligence, it cannot support a finding of inequitable conduct.  *Kingsdown*, 863 F.2d at 876.

BDDB01 5914325v4

10. <u>The attorneys' alleged negligence in gathering and disclosing prior art cannot form the basis of inequitable conduct</u>

Forest River incorrectly claims that Heartland's attorneys failed to gather and disclose information from the named inventors regarding the scope of prior art within the RV industry.

First, in a letter dated April 5, 2005 Gregory Cooper informed the named inventors of their duty of disclosure. Gregory Cooper explained the concept of "prior art" to the Heartland named inventors and asked them to provide him with any examples of prior art. Specifically, Cooper described prior art as "all patent and non-patent publications and other facts that a reasonable examiner may consider to be important to an assessment of patentability of the claimed invention. Such other facts include public demonstrations or sales or offers of sale of products pertaining to the invention and information any of the inventors received from others prior to making the invention." The letter further noted that "[e]ach person involved in the preparation and prosecution of the patent application has an obligation to disclose such publications and facts to the USPTO." (SOF 13.)

Also, Gerard Gallagher testified that he told the named inventors that "anything that was out there, prior patents, publications, products, you know, that were similar to this or achieve a similar purpose or that, you know, someone might consider material, you know, to their invention, it should be brought to our attention and that they should err on the side of disclosing more to us, not less." (SOF 17.)

Furthermore, as explained by Jay Taylor in his expert report "[t]o the extent to which it is Forest River's contention that the named inventors should have disclosed their entire knowledge of the commercially available products in the field of the invention, that contention

has been found meritless by the Court of Appeals for the Federal Circuit." (SOF 127) (citing *Upjohn Co. v. Mova Pharmaceutical Corp.*, 225 F.3d 1306, 1315 (Fed. Cir. 2000)).

Finally, this allegation accuses Heartland and its attorneys of mere negligence or gross negligence, which cannot support an inequitable conduct finding. *Kingsdown*, 863 F.2d at 876.

11. <u>There is no duty of disclosure with respect to "ordinary skill in the art"</u>

Forest River contends that the attorneys committed inequitable conduct by failing to gather and disclose information regarding the level of ordinary skill of travel trailer and fifth wheel designers. (Exh. JJ, Resp. to Interrog. No. 3, p. 4.) This allegation has no merit. As explained by Jay Taylor, Rule 1.56 requires only requires disclosure of material prior art information, and nothing in the Patent Act requires disclosure to the Patent Office of the level of ordinary skill in the art. (SOF 128) (citing Rule 1.56; 35 U.S.C. § 112.) Furthermore, there is no known reported case finding that a failure to disclose the level of ordinary skill in the art can form the basis of a finding of inequitable conduct. (SOF 128.)

12. <u>There is no duty to disclose information detailing the differences and similarities between the claimed invention and prior art</u>

Forest River next alleges that the Heartland attorneys failed to gather and disclose information regarding the differences and similarities between the claimed invention and prior art. (Exh. JJ, Resp. to Interrog. No. 3, p. 5.) This allegation is meritless. Again, there is no requirement in the Patent Office Rules that inventors or attorneys provide such detailed information. (SOF 129) (explaining rules applicable to disclosure and the duties they create). Thus, this allegation also cannot form the basis of inequitable conduct.

13.  The trailer frame is a crucial aspect of Heartland's invention

Forest River also accuses Heartland's attorneys of failing to accurately claim the named inventors' "real" invention. (Exh. JJ, Resp. to Interrog. No. 3, p. 5.)  Apparently, Forest River contends that the named inventors did not think that the frame constituted part of their turning radius invention, and that the attorneys should not have sought claims related to the frame.  The evidence contradicts this contention.

In providing disclosure information to Gregory Cooper, the named inventors included drawings of the frame.   (*See, generally* Exh. B, B&T 02-040); (Exh. H).  Furthermore, in the written description of the invention provided to Gregory Cooper by Scott Tuttle, Heartland stated that it "has engineered a unique new 5th wheel concept…. This revolutionary concept involves both rethinking how **the steel frame of the 5th wheel is designed**…. The first step was cutting off the corners of the upper front section of the frame instead of extending them all the way out at a 90° angle, as is the case in a traditional 5th wheel frame design." (SOF 7); (Cooper Dep. p. 15, ll. 9-25; p. 16, ll. 1-7).  Thus, it is clear that the named inventors believed that the frame was an important part of the invention.

14.  Heartland's alleged failure to meet the enablement requirements of §112 cannot form the basis of inequitable conduct

Forest River also contends that the final, amended application prepared by Gerard Gallagher does not enable one of ordinary skill in the art to make and use the invention. However, a specification is presumed to meet the enablement requirement of § 112 as all of the formal § 112 objections to the specification made by the examiner were corrected by the applicant during prosecution and the examiner allowed the patent to issue.  (SOF 130.)

Finally, Forest River does not identify what supposedly material information was intentionally withheld in this allegation.

15. <u>Heartland's attorneys disclosed all material prior art of which they knew</u>

There is no evidence that either Gregory Cooper or Gerard Gallagher withheld **any** material prior art of which they had knowledge during the prosecution of the '650 patent, or that they did so with deceptive intent. (SOF 132.) Gregory Cooper transferred Barnes & Thornburg's patent prosecution file to Gerard Gallagher before the Information Disclosure Statement was due. (SOF 14-15.) Furthermore, the file transferred to Gerard Gallagher contained copies of patents Cooper apparently located during his prosecution of the patent. (SOF 25.) Although Cooper could not specifically recall how these patents had been obtained, he stated that either Heartland provided the patents, or the patents were found in a formal or informal prior art search. (SOF 24.) Gallagher disclosed these included patents in the Information Disclosure Statement he filed with the Patent Office. (SOF 24, 25.) Hence, there is no evidence that Heartland's attorneys intentionally withheld any prior art in order to deceive the Patent Office, or, more importantly, that the attorneys did so with deceptive intent.

In sum, an analysis of each of Forest River's allegations indicates that no clear and convincing evidence exists that any of the named Heartland inventors or the Heartland attorneys failed to disclose material information, submitted materially false information, or intended to deceive the Patent Office. Thus, there is no evidentiary or legal basis for a finding of inequitable conduct, and Heartland is entitled to summary judgment. (*See generally* SOF 104-132.)

## III. <u>FOREST RIVER'S TRADE SHOW FOR RV DEALERS</u>

On October 22 and 23, 2008, Forest River held a private trade show in Elkhart, IN (the "Trade Show"). (SOF 133.) The Trade Show was for Forest River RV dealers only. (SOF 156.) No retail consumers were invited to the show. (*Id.*) Approximately 260 Forest River dealers from around the country attended the Trade Show. (SOF 134.) Ninety-five percent of

23

these dealers also sell RV products from manufacturers other than Forest River. (SOF 135.) The dealers stayed at hotels in the Mishawaka, IN area. Forest River paid for their accommodations. (Exh. K, Am. Ans. ¶ 75.)

Forest River alleges that on or about October 22, 2008, Heartland employees went to these hotels and delivered envelopes containing Heartland promotional materials to the dealers. (the "Hotel Incident") (Exh. K, Am. Ans. ¶¶ 76-77, 86). These envelopes were marked with a large Heartland logo in the upper corner. (SOF 157.) Forest River does not contend that **a single RV dealer** received false or misleading information. Instead, Forest River alleges that a Heartland employee told a hotel receptionist that he was from Forest River—a contention Heartland denies— in order to secure delivery of the materials. Forest River claims that, even though no RV dealers were deceived or confused by Heartland's conduct, the alleged false statement to a hotel receptionist entitles Forest River to damages from Heartland for sales to these dealers. In a futile attempt to find a legal theory supporting these allegations, Forest River has accused Heartland of violating the Lanham Act and committing **criminal** deception.

As a practical matter, Forest River's allegation that Heartland lied to a hotel employee defies common knowledge about the practices of hotels. Forest River apparently believes that because it paid for the dealers' hotel rooms, the hotels would refuse to allow non-Forest River correspondence to reach its guests, and that stealth and deception were needed to penetrate the security measures of a common hotel chain. But common sense and practical experience tell us that hotels do not keep messages from their guests; when a person has a

package or message for a guest, the hotel serves essentially as a mailbox and facilitates its delivery. Heartland did not lie while delivering the promotional materials.[3]

Regardless, even if Forest River can somehow create an issue of material fact regarding whether Heartland lied to a hotel employee, Forest River's counterclaims still fail as a matter of law. Because Forest River cannot show that Heartland made a misrepresentation to an RV dealer about the products it offers for sale, or that an RV dealer was confused or deceived by Heartland's conduct, it cannot prevail on its Lanham Act claim.[4] Furthermore, because Forest River cannot show that **Forest River** relied upon a false statement by Heartland in parting with money or property, its criminal deception claim also fails. For the reasons discussed below, Heartland is entitled to summary judgment on Forest River's claims related to the Hotel Incident.

## IV. FOREST RIVER'S LANHAM ACT CLAIM FAILS AS A MATTER OF LAW

### A. Heartland Did Not Make a False Statement or Misrepresentation of Fact

Forest River can produce no witness with personal knowledge of any false statements made by Heartland at the hotels. Forest River's inability to designate any admissible evidence showing that a Heartland employee lied while delivering its promotional materials entitles Heartland to summary judgment.

In an interrogatory to Forest River, Heartland asked Forest River to "[i]dentify all misrepresentations or untruthful statements alleged to have been made by Heartland in

---

[3] Heartland employee Brian Walczak delivered the envelopes to the Hyatt Place and several other hotels. He affirms that he did not lie while delivering the envelopes. (SOF 144-150.)

[4] To the extent that Forest River claims that the Hotel Incident is the basis of an unfair competition claim under Indiana state law, that claim fails for the same reasons that Forest River's Lanham Act and criminal deception claims fail. *See Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001) (noting definition of unfair competition as "any conduct, the natural and probable tendency and effect of which is to deceive the public so as to pass off the goods or business of one person as and for that of another"), *citing Hartzler v. Goshen Churn & Ladder Co.*, 55 Ind. App. 455, 104 N.E. 34, 38 (Ind. App. 1914) ("the true test of unfair competition is whether the acts of defendant are such as are calculated to deceive the **ordinary buyer** under the ordinary conditions which prevail in the particular trade to which the controversy relates.") (emphasis added).

connection with the Hotel Action…." (Exh. JJ, Interrog. No. 9); (SOF 151.) Only one allegation Forest River offered in response to this interrogatory constitutes a false statement. Forest River alleges that "Heartland told at least the receptionist at the Hyatt Place hotel that the packages were from Forest River and needed to be delivered right away to the dealers since they were important and were needed for a dealer meeting the next day."[5] (SOF 152.) However, Forest River has not identified the Hyatt Place employee to whom Heartland allegedly made these statements. (*Id.*) Furthermore, it has not named a single witness from the Hyatt Place in its initial or supplemental disclosures. (SOF 153.) Bryan Walczak, the Heartland employee who distributed Heartland's promotional materials at the Hyatt Place, categorically denies engaging in any of the misleading conduct alleged by Forest River. (SOF 138-140, 144-150.) If Forest River cannot produce a credible witness with personal knowledge of facts rebutting Mr. Walczak's affirmations, it follows that it cannot create an issue of material fact as to whether a false statement was made. The making of a false statement is a necessary element of Forest River's Lanham Act claim. Thus, the claim cannot survive summary judgment.

### B.     The Lanham Act Does Not Govern Conduct That is Irrelevant to Consumers

Forest River's Lanham Act claim attempts to extend the Act's scope beyond matters involving purchaser confusion or deception. But as the United States Supreme Court has declared, "**[t]he words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers.**" *Dastar Corp. v. Twentieth Century Fox Film*

---

[5]   Forest River also contends that "Heartland mislead the Country Inn & Suites into thinking the packages were to go along with the Forest River party in part by his mannerisms and in part by having the specific dealer's name on the cover and asking for a call back to pick up the undeliverable packages," and that "Heartland mislead and made false statements to the receptionist at Residence Inn by asking for the room number of the named guests to be looked up and marked on the packages, then evading inquiry about his identity and who the packages were from and if the guests were expecting the packages, and then expressly denying that he knew what the packages were for." (SOF 154-155.) However, on their face, neither of these allegations reference conduct constituting a false designation of origin or a false description or representation. (*See* SOF 154.)

*Corp.*, 539 U.S. 23, 32-33 (2003); *see also Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005) ("Consumers rather than producers are the objects of the (Lanham Act's) solicitude.").  Because Forest River has no evidence that a false representation by Heartland affected the relevant consumers in this case—RV dealers—its Lanham Act claim fails.

Forest River purports to be asserting a "passing off" claim under 15 U.S.C. § 1125(a)(1)(A).[6] (Forest River's Mem. Opp. Mot. to Dismiss Lanham Act Claim, Dckt. Entry No. 15, pp. 1, 3, 10-12.)  This claim alleges that Heartland used a false designation of origin or false description or representation in connection with goods or services, and that Heartland's conduct was likely to cause confusion about its products among relevant consumers.  *Kennedy v. Nat'l Juvenile Detention Ass'n*, 187 F.3d 690, 695-96 (7th Cir. 1999); *Francorp, Inc. v. Siebert*, 2002 WL 731170, at *1 (N.D. Ill. April 24, 2002).  In order to limit the scope of the Lanham Act to conduct affecting actual consumers, courts have crafted the following three requirements:

(1)     The alleged false statement must be made to a relevant consumer, and it must be likely to cause confusion among relevant consumers;

(2)     The alleged false statement must be about goods actually offered for sale to relevant consumers; and

(3)     In order for a plaintiff to avoid summary judgment, it must prove that it can recover damages resulting from the false statement.

Forest River's counterclaim contains no allegations that Heartland's alleged conduct affected the relevant class of consumers—RV Dealers—in a way that invokes the

---

[6]     In this Court's February 18, 2009 Memorandum Opinion & Order, the late Judge Sharp recognized the inherent weaknesses in Forest River's Lanham Act claim, stating that "this Court questions, and indeed doubts, whether Forest River has adequately pled a passing off violation under the Lanham Act…." (Mem. Op. & Order, Dckt. Entry No. 32, p. 7.)

protections afforded by the Lanham Act.   An application of the facts to the three requirements outlined above demonstrates that Forest River's claim fails as a matter of law.

     1.    <u>Because Heartland did not make a false statement or misrepresentation to a relevant customer, no customers could be confused by Heartland's alleged conduct</u>

To succeed on its Lanham Act claim, Forest River must show that Heartland made a misrepresentation **to a customer or potential customer.**  *See Keller Med. Specialties Prods. v. Armstrong Med. Indus., Inc.*, 842 F.Supp. 1086, 1092 (N.D. Ill. 1994) (statements not made "to a customer or potential customer" are "outside the policy underlying the Lanham Act.") In an interrogatory, Heartland asked Forest River to "[i]dentify all misrepresentations or untruthful statements alleged to have been made by Heartland in connection with the Hotel Action."  (SOF 151.)  In response, Forest River failed to identify a single misrepresentation made to an RV dealer.  (*See* SOF 152, 154-55.)  Rather, it alleged that Heartland made false statements to **hotel employees**, who are not relevant customers of either Heartland or Forest River. (*Id.*)

As a separate, additional element, Forest River must also demonstrate that it was "likely to be damaged as a result of the misrepresentation." *Kennedy*, 187 F.3d 695-96.  This element is satisfied "when the plaintiff shows that there is a likelihood of **consumer** confusion as a result of the false representation."  *Francorp.,* 2002 WL 731170, at *1 (emphasis added).  But if Forest River cannot identify any misrepresentations made to consumers, it obviously cannot show that consumers were likely to be confused by a misrepresentation.[7]  Consumers cannot be

---

[7]    Typically, the Seventh Circuit weighs seven factors in deciding the likelihood of consumer confusion: **(1)** similarity of the marks; **(2)** similarity of the products or services; **(3)** area and manner of concurrent use; **(4)** degree of care likely to be exercised by consumers; **(5)** strength of the plaintiff's mark; **(6)** whether actual confusion exists; and **(7)** whether the defendant intended to "palm off" his product as that of the plaintiff.  *Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*, 2004 WL 2967446, at * 5 (N.D. Ill. 2004). These factors are designed to gauge whether a defendant's misrepresentation is likely to cause a consumer to confuse the defendant's product with the plaintiff's, or vice versa.  But where a plaintiff never even alleges that a consumer received a misrepresentation, the possibility of consumer confusion never materializes, and these factors

confused by something to which they are utterly oblivious. *See Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.,* 508 F.3d 641, 652 (11th Cir. 2007) (summary judgment appropriate on Lanham Act claim where consumers would be very unlikely to see defendant's mark, thus negating possibility of consumer confusion).

Even Jeff Babcock, Forest River's 30(b)(6) deponent with respect to the Hotel Incident, concedes that the RV dealers could not be confused by Heartland's alleged conduct. Babcock admits that the dealers who received promotional materials know that Heartland and Forest River are separate entities. (SOF 136.) He also admits that when the dealers received the promotional materials, they knew that the materials were from Heartland, not Forest River. (SOF 158.) This is unsurprising, given that the envelopes containing Heartland's promotional materials were marked with a large Heartland logo in the upper corner. (SOF 157.)

Forest River alleges only that Heartland made misrepresentations to hotel employees, not that Heartland made a misrepresentation to a customer or potential customer. Obviously, without evidence that Heartland made a misrepresentation to an RV dealer, Forest River cannot show that any RV dealers were confused. Forest River's failure to create an issue of material fact with respect to either of these requirements entitles Heartland to summary judgment.

          2.      <u>Heartland did not make a false statement about goods actually offered for sale</u>

The language of 15 U.S.C. § 1125(a)(1)(A) requires a plaintiff to demonstrate that the defendant made a misrepresentation "on or in connection with…goods or services." 15 U.S.C. § 1125(a); *Kennedy*, 187 F.3d at 695. Courts interpret this language as requiring

---

become irrelevant. The futility of applying these factors further proves that the Lanham Act does not cover Forest River's allegations.

plaintiffs to prove that the defendant made a misrepresentation about the goods of the plaintiff or the defendant. "The Lanham Act does not prohibit false statements generally. It prohibits only false or misleading descriptions or false or misleading representations of fact made about one's own or another's goods or services." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2nd Cir. 1995).

In this case, the goods of the parties are RVs. Forest River does not allege that Heartland made any misrepresentations **about** RVs. Instead, Forest River has argued that Heartland's alleged misrepresentation was "in connection with goods" because "all of Heartland's actions complained of were done to directly further the sale of those RVs." (Forest River's Mem. Opp. Mot. to Dismiss Lanham Act Claim, Dckt. Entry No. 15, p. 6). By making this argument, Forest River attempts to expand the Lanham Act to cover **any** misrepresentation made in commerce.[8] Courts have refused to expand the Lanham to cover such a broad array of misrepresentations. *See Monoflo Intern., Inc. v. Sahm*, 726 F.Supp 121, 124 (E.D. Va. 1989) (allowing false statements that are not *about* goods or services would "sweep within the [Lanham] Act's ambit almost any misstatement made in the context of a commercial transaction, a result contradicted by the Act's plain meaning and sharply at odds with its application by the courts").

Forest River has also argued that the "goods" in this case are the promotional materials. (*See* Forest River's Mem. Opp. Mot. to Dismiss Lanham Act Claim, Dckt. Entry No.

---

[8]   Consider the consequences of adopting Forest River's view of the Lanham Act. If a manufacturer made a misrepresentation to a lender to secure financing for additional inventory, the manufacturer's competitors could sue for its profits on the theory that the misrepresentation conceivably "furthered the sale" of the inventory. If a manufacturer lied to a newspaper in order to secure a discount for an ad in the Sunday edition, its competitors could sue for the profits because the advertisement, true as it may be, "furthered the sale" of its goods. These examples, like Forest River's allegations, involve no misrepresentation to a consumer about a good offered for sale. As such, they are simply not the type of claims that the Lanham Act is intended to cover. *See Dastar*, 539 U.S. at 32-33 ("[t]he words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers.")

15, pp. 5-6.)  But the United States Supreme Court has specifically limited the definition of "goods" to those products that a party actually offers for sale.  In *Dastar*, the United States Supreme Court determined that the phrase "origin of goods" in § 1125(a) means "the producer of the tangible product **sold in the marketplace**."  *Dastar*, 539 U.S. at 31 (emphasis added).  It reiterated later in its opinion that "goods" means "the tangible goods **that are offered for sale.**"  *Id.* at 37 (emphasis added).

The case of *Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 286 F.Supp.2d 969 (N.D. Ill. 2003) is instructive.  In *Bretford*, the defendant borrowed the legs from a table manufactured by a competitor to construct a prototype of a table it was in the process of developing.  *Id.* at 970. The defendant then submitted this sample prototype to a customer, the Dallas Independent School District, who in turn placed an order for the final products the defendant eventually offered for sale.  *Id.*  The competitor alleged that the defendant had committed "reverse passing off" by promoting the legs of the sample table as their own when showing the prototype to the District.  *Id.*

Citing the Supreme Court's definition of "goods" in *Dastar*, the *Bretford* Court found the Lanham Act inapplicable to a misrepresentation about the sample table **because the sample was not the good eventually offered for sale**:

> [T]he sample table was not the good offered for sale.  What was offered for sale were the tables later purchased by the District after it had awarded the contract to [defendant].  There was no misrepresentation as to the "origin" of those tables.

*Id.* at 971.  Heartland's promotional materials, like the sample table in *Bretford*, were not "goods that are offered for sale."  What Heartland offered for sale were its RVs.  Thus, Forest River cannot argue that the promotional materials are "goods" under the Lanham Act.  *Id.*; *Dastar*, 539 U.S. at 31, 37.

31

Forest River does not allege that Heartland made a misrepresentation about RVs, and its allegation that Heartland made a misrepresentation about its promotional materials is not cognizable under the Lanham Act. Thus, Heartland is entitled to summary judgment.

### 3. Forest River's inability to recover damages entitles Heartland to summary judgment

Two types of monetary relief are typically available in Lanham Act cases: (1) monetary damages resulting from actual consumer reliance upon a misrepresentation; and (2) an award of defendant's profits attributable to the misrepresentation. *See* 15 U.S.C. § 1117; *see generally Hot Wax, Inc. v. S/S Car Care*, 1999 WL 966094, at *1-7 (N.D. Ill. Oct. 14, 1999). Heartland is entitled to summary judgment because Forest River cannot show that (1) Forest River suffered monetary harm due to actual consumer reliance upon a false representation; or (2) that a false statement caused Heartland to gain profits. *L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993); *see also Hot Wax, Inc.*, 1999 WL 966094, at *3 (collecting Lanham Act cases dismissing claims based on lack of available damages).

First, in order for a court to grant Forest River its actual monetary damages, "the plaintiff 'must demonstrate that it has been damaged by **actual consumer reliance on the misleading statements**.'" *Heath*, 9 F.3d at 575 (emphasis added). Again, Forest River has not alleged that such statements reached any RV dealers.[9] If no misleading statement ever reached the dealers, then it is impossible for the dealers to have actually relied upon any misleading statement.[10] Hence, Forest River cannot recover any actual damages.

---

[9] Furthermore, Jeff Babcock, Forest River's 30(b)(6) deponent with respect to the Hotel Incident, testified that Forest River had not even bothered to contact its dealers to see if they had received Heartland's promotional materials or relied upon them in making a purchase from Heartland. (SOF 160.)

[10] The requirement that a plaintiff demonstrate actual customer reliance on a misrepresentation in order to collect monetary damages reinforces Heartland's argument that misrepresentations made to non-customers do not fall within the scope of behavior prohibited by the Lanham Act. *See* Section IV.B.1, *supra*.

For similar reasons, Forest River is not entitled to an accounting of Heartland's profits. It is well-established that a plaintiff is not entitled to profits that are not attributable to defendant's violation of the Lanham Act. *Mishawaka Rubber & Wollen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942); 15 U.S.C. § 1117 (codifying framework outlined in *Mishawaka*). Again, no misrepresentations were ever made to the purchasers, thus negating any possibility that any of Heartland's profits were attributable to a false statement by Heartland.

Furthermore, even under a more attenuated argument that Heartland's alleged misrepresentations set into motion a chain of reactions that ultimately led Heartland to an RV sale, the evidence still precludes an award of Heartland's profits. During the time periods relevant to Forest River's counterclaim,[11] only two attendees of Forest River's trade show placed relevant orders for Heartland products: (1) Racetrack RV ("Racetrack") and (2) Loveall RV's ("Loveall"). (SOF 161.)

Racetrack was a very happy customer of Heartland's prior to the Trade Show. Heartland had prospected Racetrack with respect to its Eagle Ridge line of products prior to the Trade Show, and Racetrack had indicated that they would like to do more business with Heartland. (SOF 162.) Also, Heartland sales employee Bryan Walczak had a long-standing relationship with Racetrack's owner, Kenny Maines, prior to the Hotel Incident. (SOF 163.) But most importantly, Racetrack visited Heartland's facilities on the day of the Hotel Incident **before Heartland's employees distributed the promotional materials.** (*Id.*)

Furthermore, Loveall had been engaged in a courtship with Heartland for six months prior to the Hotel Incident. (SOF 164.) Heartland had performed multiple "drive-bys" at

---

[11] Any benefit Heartland derived from the Hotel Incident would have dissipated in early December; every year, in early December, the entire RV Industry convenes at the annual National RV Trade Show in Louisville, KY. (SOF 166.) If Heartland made any sales to dealers beyond this point, they can be attributed to activity at the Trade Show, not the distribution of promotional materials in connection with the Hotel Incident.

Loveall and had been on Loveall's lot. Prior to the Hotel Incident, Loveall had shown strong interest in buying Heartland's products. (*Id.*)

The evidence shows that Heartland had a substantial relationship with both Racetrack and Loveall that predated the Hotel Incident. These pre-existing relationships caused Heartland's sales to Racetrack and Loveall, not the delivery of promotional materials. In fact, Jeff Babcock, Forest River's Vice President of Sales and its 30(b)(6) designee with respect to the Hotel Incident, testified that the mere distribution of promotional materials does not cause dealers to purchase RVs. According to Babcock, providing promotional materials is "not all you have to do…You gotta sell them on the product….You have to talk to the dealer. You have to go through the product. You have to feature benefit the product. You gotta convince the dealer that the product you have sitting in front of him is gonna make him money on his lot." (SOF 159.) These activities—talking to dealers, taking them through the product, etc.—are precisely the steps Heartland took both before and after the Hotel Incident to sell its products, and which act as superseding causes of any sales and profits Heartland realized.

In addition, Jeff Babcock offered a further opinion as to why Racetrack and Loveall purchased Heartland products. During his 30(b)(6) deposition, he stated that Heartland's very good prices caused the sales, not the delivery of promotional materials. (SOF 165.)

Because there is no evidence that Racetrack or Loveall bought an RV from Heartland as a result of Heartland's alleged false statement to a hotel receptionist, Forest River cannot show entitlement to any monetary remedy. Forest River's lack of remedy entitles Heartland to summary judgment. *L.S. Heath & Son*, 9 F.3d at 575; *see also Hot Wax, Inc.* 1999 WL 966094, at *3.

## V.  HEARTLAND IS ALSO ENTITLED TO SUMMARY JUDGMENT ON FOREST RIVER'S CRIMINAL DECEPTION CLAIM

To prevail on its claim of criminal deception,[12] Forest River must prove that (1) with intent to defraud; (2) Heartland misrepresented their identity or the identity or quality of property; and (3) caused Forest River pecuniary harm. *See* Ind. Code § 35-43-5-3(6); Ind. Code § 34-24-3-1 (outlining Indiana's Victim's Relief Act statute).  Furthermore, to recover damages under the Victim's Relief Act, Forest River must show that it was the "target" of an alleged fraud. *See Sanderson v. Brugman*, 2002 WL 31255470, at *5 (S.D. Ind. Sept. 20, 2002); *ABN AMRO Mortgage Group, Inc. v. Maximum Mortgage, Inc.*, 429 F.Supp.2d 1031, 1045 (N.D. Ind. 2006). For each of the following independent reasons, Heartland is entitled to summary judgment on Forest River's criminal deception claim.

### 1.  Heartland made no misrepresentations in connection with the Hotel Incident

In its Amended Answer, Forest River declares that its criminal deception claim is based on the same facts set forth in support of its Lanham Act claim. (Exh. K, Am. Ans. ¶ 86.) As discussed in Section IV.A above, Forest River can present no admissible evidence that Heartland made a misrepresentation in connection with the Hotel Incident.  Because Forest River cannot create an issue of material fact regarding this essential element of its criminal deception claim, Heartland is entitled to summary judgment.

---

[12]  In its Memorandum in Opposition to Heartland's "Motion to Dismiss Forest River, Inc.'s Criminal Deception Counterclaim," Forest River contended that it has also stated a claim of criminal mischief under Ind. Code § 35-43-1-2.  (*See* Mem. Opp. Mot. to Dismiss Criminal Deception, Dckt. Entry No. 38, p. 1.) While Forest River makes no mention of such a claim in its Amended Answer, the similarities between the two claims render the criminal mischief claim superfluous.  Under both statutes, a plaintiff must prove the occurrence of a misrepresentation (or, in criminal mischief, "deception").  Furthermore, to recover on either claim under the Victim's Relief Act, the plaintiff must prove that he or she was the target of a fraud.  *See Sanderson*, 2002 WL 31255470, at *5; *ABN AMRO Mortgage Group, Inc.*, 429 F.Supp.2d at 1045 (N.D. Ind. 2006).  Finally, to recover under the Victim's Relief Statute, a plaintiff must demonstrate that defendant's conduct caused it to suffer pecuniary loss.  *See* Ind. Code § 34-24-3-1.  As discussed in the argument related to Forest River's criminal deception claim, Forest River cannot present evidence creating a material issue of fact as to any of these elements, and Heartland is entitled to summary judgment as a matter of law.

## 2. Forest River was not the target of an alleged fraud

While case law interpreting criminal deception claims under the Victim's Relief Act is sparse, two relatively recent cases provide guidance beyond the bare language of the statute. Those cases are *Sanderson v. Brugman*, 2002 WL 31255470 (S.D. Ind. Sept. 20, 2002) and *ABN AMRO Mortgage Group, Inc. v. Maximum Mortgage, Inc.*, 429 F.Supp.2d 1031 (N.D. Ind. 2006). The holdings in these two cases demonstrate that Forest River's claim under the Victim's Relief Act fails as a matter of law.

In *Sanderson*, the Court dismissed plaintiff's claims under the Victim's Relief Act because plaintiff "was not the target of any alleged fraud." *Sanderson*, 2002 WL 31255470 at *5. In its reasoning, the Court stated as follows:

> [Plaintiff] was not the target of any alleged fraud, however. **He has not identified any instance in which the Indiana courts have allowed a company to sue a commercial competitor [] for treble damages under this statute on the theory that the competitor used deception to secure a sale from a customer.** Recognizing such a claim would seem to stretch the civil remedy statute well beyond its purpose and to open the door to a broad vista of new commercial litigation between competitors. Without much clearer signals that the Indiana legislature intended such results, the court finds that [Plaintiff] has failed to state claim for relief under Ind. Code § 34-24-3-1.

*Id.* (emphasis added)

Forest River's criminal deception allegation is precisely the type of claim that the *Sanderson* Court refused to recognize.[13] A "company" (Forest River) has sued "a commercial competitor" (Heartland) on the theory that the "competitor" (Heartland) used "deception"

---

[13]   In the *Sanderson* case, the alleged "misrepresentations" made by the defendant at least actually reached consumers. As discussed above, Forest River cannot even demonstrate that a relevant *consumer* was the target of a fraud, i.e. that a consumer was the recipient of a misrepresentation and relied upon that misrepresentation in parting with property or money.

36

(misrepresentations made to hotel employees) "to secure a sale from a customer" (to gain assistance in distributing promotional materials to customers). *Id.*

Meanwhile, the *ABN* case demonstrates what a plaintiff must prove to show that it *was* the target of a fraud. In *ABN*, the Court found that ABN was the target of the alleged fraud because the defendants' "fraudulent scheme was to induce ABN to loan money when it would not otherwise do so." *ABN AMRO, Inc.*, 429 F.Supp.2d at *1045. In making its finding, the Court cited two key allegations: (1) that ABN was the intended recipient of the defendants' misrepresentations; and (2) that ABN actually relied upon the misrepresentations in parting with its money. *Id.* at 1037, 1045. Unlike the plaintiff in *ABN*, Forest River has not alleged that it was the intended recipient of any misrepresentation by Heartland, or that it relied upon Heartland's alleged misrepresentations in parting with money. Thus, the key facts cited by the *ABN* Court are utterly absent from Forest River's claim, and Forest River is not the "target of a fraud" for purposes of the Victim's Relief Act.

The holding in *Sanderson* is clear: the Victim's Relief Act is not intended to permit commercial competitors to sue each other over deceptive conduct aimed at increasing sales to customers. Instead, as the *ABN* case demonstrates, the statute exists to provide relief to parties who are the intended recipients of misrepresentations, and who actually rely on those misrepresentations in parting with money or property. Because Forest River cannot allege that it was the intended target of a fraud by Heartland, its claim under the Victim's Relief Act cannot survive summary judgment.

        3.    <u>Forest River cannot show that Heartland's alleged conduct caused it pecuniary harm</u>

In order for the Court to hold Heartland civilly liable under the criminal deception statute, it must find that Heartland's conduct caused Forest River to suffer pecuniary harm. Ind.

Code § 34-24-3-1.  Again, only two dealers attending the Forest River trade show (Racetrack and Loveall) made purchases of Heartland products during the relevant time period, and for reasons already discussed, none of those purchases resulted from a false statement to a hotel employee (SOF 161.); *see* Section IV.B.3, *supra*.  Furthermore, Forest River has not provided Heartland with any evidence that, if not for Racetrack and Loveall's purchases from Heartland, those entities would have made purchases from Forest River.

Forest River cannot demonstrate that Heartland's alleged conduct in the Hotel Incident caused it pecuniary harm.  Thus, Forest River cannot invoke the benefits of the Victim's Relief Act, and its criminal deception claim fails as a matter of law.  Ind. Code § 34-24-3-1.

## VI.    <u>CONCLUSION</u>

For the reasons stated herein, Heartland did not commit inequitable conduct, did not violate the Lanham Act, and did not commit criminal deception.  Because no issue of material fact exists with respect to Forest River's counterclaims, Heartland is entitled to summary judgment as a matter of law.

BDDB01 5914325v2

BAKER & DANIELS LLP

By: */s/ David P. Irmscher*
   David P. Irmscher (#15026-02)
   Abigail M. Butler (#22295-02)
   111 East Wayne, Suite 800
   Fort Wayne, Indiana 46802
   Tel: 260.424.8000
   Fax: 260.460.1700
   david.irmscher@bakerd.com
   abigail.butler@bakerd.com

ATTORNEYS FOR PLAINTIFF,
HEARTLAND RECREATIONAL
VEHICLES, LLC

## CERTIFICATE OF SERVICE

The undersigned counsel for plaintiff Heartland Recreational Vehicles, LLC, hereby

certifies that a copy of the foregoing was served upon the following, this 21st day of December,

2009, by operation of the Court's electronic filing system:

   Ryan M. Fountain
   420 Lincoln Way West
   Mishawaka, Indiana 46544-1902

   */s/ David P. Irmscher*
   David P. Irmscher

BDDB01 5914325v4