# Tab JJ

# UNITED STATES DISTRICT COURT

Northern District of Indiana
South Bend Division

| | | |
|---|---|---|
| HEARTLAND RECREATIONAL VEHICLES, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO.:3:08-cv-490 AS- CAN |
| v. | ) | |
| | ) | |
| FOREST RIVER, INC., | ) | JURY DEMAND |
| Defendant. | ) | |

## FOREST RIVER'S RESPONSE TO HEARTLAND'S
## FIRST INTERROGATORIES TO FOREST RIVER, INC.

Interrogatory No. 1: Identify any basis that you contend supports your defense that the Patent is Suit

is invalid pursuant to the provisions of 35 U.S.C. §§ 102 and 103, including all prior art upon which

you rely.

 Response: Pursuant to agreement of counsel, this Interrogatory was withdrawn because

Heartland's covenant not to sue is intended to eliminate the charge of patent infringement made

directly against Forest River; there is probably no longer any "defense" which is relevant in this case

at the present time, although a decision of the Court on Heartland's third motion to dismiss is still

pending in that regard. However, the substance of several of the deficiencies in the Patent in Suit

under 35 U.S.C. §§102 and 103 which also form part of the bases for the unenforceability claims are

incorporated in the response below.

Interrogatory No. 2: State any basis that you contend supports your defense that the Patent in Suit

is invalid pursuant to the provisions of 35 U.S.C. §§101 and 112.

Response: Pursuant to agreement of counsel, this Request was withdrawn because Heartland's covenant not to sue is intended to eliminate the charge of patent infringement made directly against Forest River; there is probably no longer any "defense" which is relevant in this case at the present time, although a decision of the Court on Heartland's third motion to dismiss is still pending in that regard. However, the substance of several of the deficiencies in the Patent in Suit under 35 U.S.C. §§102 and 103 which also form part of the bases for the unenforceability claims are incorporated in the response below.

Interrogatory No. 3: State any basis that you contend supports your defense that the Patent in Suit is unenforceable as a result of inequitable conduct.

Response: The Interrogatory is objected to as ambiguous and indefinite. Specifically, the phrase "any basis" could refer to facts, legal case citations, statutory authority, documentary evidence, credibility evidence, etc. Strictly speaking then, Forest River could respond by simply stating that the deposition transcript of Brian Brady is a basis which supports the claim of inequitable conduct which renders that patent unenforceable since Mr. Brady admitted therein to facts which show his false execution of the Declaration of inventorship. However, Forest River has other several bases in that regard and does not wish to suggest to Heartland that the inequitable conduct issue is that simple. Accordingly, Forest River will provide herein a brief summary of the primary factual bases for the inequitable conduct claim, as those bases are presently known to Forest River. Obviously, a great deal of supplementation is possible, but given that Heartland has not as yet set forth its contentions by answering the pleadings, it is not known how much more detail is really relevant at this time. Accordingly, excess supplementation is objected to as unduly burdensome and

2

oppressive. The listing is as follows:

1. At least three of the named inventors executed the Declaration of inventorship, Trial Exhibit 2, under false pretenses - having not read the application sufficiently to understand its content and claims, having falsely asserted inventorship, and having not disclosed to the USPTO the information required under 37 CFR 1.56. That falsity was known or should have been known by the primary patent attorney they appointed to represent them before the USPTO, Gregory S. Cooper. Mr. Cooper was personally bound both under 37 CFR 10 et seq., and 37 CFR 1.56 to prevent the patent application from being prosecuted under those circumstances.

2. Mr. Cooper and the succeeding patent attorneys who were directly involved in prosecuting the patent application, Gerald Gallagher and Thomas Mauoh, either failed to communicate with the inventors sufficiently to gather the information known to the inventors or failed to pass on to the USPTO information obtained from the inventors with respect to:

a. the nature of the invention itself - the invention, in the minds of the inventors at least, lay in the spaced apart, mating curvatures of the trailer lower corner to the truck cap upper corner, rather than in any one or two particular frame designs to accomplish that invention. Frame design was instead recognized by the inventors as a mere matter of design choice, to be selected and dimensioned in the normal course of events from a wide variety of potential formats, as was well known in the industry.

b. the known scope and content of the prior art, including the fact that travel trailers, horse trailers, cargo trailers, park model homes, modular homes, and some boat trailers are all made by many of the same manufacturers and are structurally related to a high degree, especially as to chassis design and construction; also, that many of those trailers have

3

common functions and are sold through the same channels of trade, including at common trade shows such that persons familiar with travel trailers and fifth wheels are likely to also be familiar with horse trailers and cargo trailers which have living quarters formed within; also, that trailer chassis designs have been made with a wide range of variation and structural equivalence such that locating any particular side beam, end beam, or cross beam at any particular location according to a particular use or fit was widely known as a matter of design choice; also, that adapting fifth wheel trailer chassis to include as interchangeable features notched or angled front corners to support a particular cap configuration was well known, such as shown by Trial Exhibits 40 and 41, especially so as to maximize "floor plan to footprint" ratios of larger trailers; also, that as pointed out in the Amended Answer, Defenses, and Counterclaims, one or more of the inventors were aware of the specific prior art illustrated therein and/or of prior art having a similar structures and/or purposes to those illustrated examples; also, that the RVIA and other trade organizations to which Heartland and/or the inventors belong cover a range of closely related products using similar trailer chassis; and also, that there was additional relevant and material prior art in existence and known to the inventors in the United States and foreign RV markets, such as the travel trailers of Trial Exhibit 30, having angled front corners, various V nose trailers, and cargo trailers with forward ramp doors or fifth wheel formats supported on trailer chassis.

c. the known level of ordinary skill of those persons who were involved in the design of some or all portions of travel trailers and fifth wheels, including the average years of experience and education of those persons, as well as the fact that many of the employees involved in the design and construction of such trailers will change jobs within that general

4

industry, making travel trailers at one time, cargo trailers at another, modular homes at another, etc., such that they become familiar with the construction of a wide range of such products; also, that persons of ordinary skill in the design of some or all portions of travel trailers and fifth wheels would have been exposed to and aware of many of the features of such products from trade shows, dealer servicing, and living in RV oriented communities like Elkhart County, IN; and also, that travel trailers and fifth wheels are typically designed in whole or part by a team of persons, such that "a person of ordinary skill in the art" within the meaning of the patent laws would actually have attributed to him or her that collective level of skill and experience.

       d.  the differences and similarities between the claimed invention of the patent application and the prior art cited by the USPTO.

As a result, these patent attorneys obtained the issuance of a patent which was not directed to and did not claim the real "invention" of the named inventors. Further, the final, fully amended application for that patent was defective under 35 U.S.C. §112 for not "particularly pointing out and distinctly claiming the subject matter which the [named inventors] regards as [their] invention" and for not "enabling" one of ordinary skill in the art to make and use that invention. Thus, the failings of these persons were relevant and material to the invalidity of the patent in this lawsuit.

       3.  Neither Heartland, who was also bound by 37 CFR 1.56, nor any of the named inventors corrected those mistakes of the patent attorneys even though they were, according to the fully executed Declaration of inventorship, knowingly bound to do so, upon pain of patent invalidity.

       4.  Heartland's patent attorneys intentionally and repeatedly mislead the USPTO as to the scope and content of the prior art by refusing to admit in Information Disclosure Statements ("IDSs")

filed with the USPTO that certain "prior art" was in fact "prior art." Those attorneys knew or should have known that the documents submitted with the IDSs really did disclose prior art.

5. Heartland's attorneys failed to bring to the attention of the USPTO prior art which was disclosed to them by Forest River during the pendancy of the patent application even when they were aware that Forest River considered that prior art to be so relevant and material that it created a defense to the patent infringement charge being made by Heartland against Forest River. Instead, Heartland waited until after the patent issued and this lawsuit was filed and brought that prior art to the USPTO in a "submarine" patent application, but still doing so in a manner which mislead the USPTO as to the significance of that prior art. Further, even when required by the USPTO to provide a fuller disclosure in the record of the submarine patent application of the arguments about the prior art which were made in a non-public hearing on December 4, 2008 with the USPTO, Heartland failed to do so, intentionally keeping secret those arguments so as to not reveal their own failure to comply with 37 CFR 1.56 in the parent patent and/or to keep secret admissions against interest which could be used under the Doctrine of File Wrapper Estopple to interpret the patent claims more narrowly that Heartland was asserting against Forest River. Further, immediately after June 15 - 17, 2009, when the deposition testimony of Heartland's own employees under oath asserted that there was false inventorship in the parent patent application (which is also attributed to the submarine patent application as a matter of law) Heartland's attorneys rushed to pay the issue fee in the submarine patent application on June 24, 2009 so as to close down prosecution of the submarine patent application before the transcript of those depositions was created. This was done to deceive the USPTO into issuing the submarine patent quickly so that it could be used by Heartland to argue a "purge" of the inequitable conduct in not bringing the Forest River prior art to light in the

sale, public use (whether experimental or non-experimental), disclosure (whether confidential or not confidential), or publication of information by anyone relating to the alleged invention described and/or claimed in the Patent in Suit that occurred on or before the filing date of the application that led to the Patent in Suit.

Response: This Interrogatory is objected to as being either a breach of the covenant not to sue or irrelevant since the subject matter appears to be directed to "defenses" against a charge of patent infringement which Heartland claims it is no longer asserting against Forest River. To the extent that Forest River has such information which is being used as a basis for the unenforceability claims, see the Responses above to Interrogatory Nos. 3 and 4.

Interrogatory No. 6: State whether you have requested any opinions of counsel that refer or relate to the issues of validity and/or unenforceability of the subject matter of the Patent in Suit.

Response: Yes.

Interrogatory No. 7: State any basis you contend supports your allegations that the Patent in suit is unenforceable.

Response: See Response to Interrogatory Nos. 3 and 4. In addition, there are a number of "documents" which have been produced and/or made available for inspection by Forest River to Heartland incident to Forest River's Response to "Heartland's First Set of Requests for Production of Documents to Forest River."

Interrogatory No. 8: Identify all information or documents that support Forest River's contention that

8

the Hotel Action resulted in lost sales to Forest River.

Response: This Interrogatory is objected to as being unduly burdensome and oppressive, especially in light of Heartland's failure to answer the pleadings, thus preventing a more restricted scope of relevance to be used in answering this interrogatory. "All information" could, by its nature reach to minutia of detail of facts, witnesses, corroborating witnesses, credibility evidence, etc. which are not truly in issue here, but we have no way of knowing the need for that until Heartland actually participates in the case. Still, Forest River will set forth the general type of information and sufficient specific examples which provide sufficient understanding of the nature of the contentions. In addition to the information set forth in the Amended Answer, Defenses, and Counterclaims, beginning at ¶73 therein, there are a number of "documents" which have been produced and/or made available for inspection by Forest River to Heartland incident to Forest River's Response to "Heartland's First Set of Requests for Production of Documents to Forest River." Further, the transcripts of the depositions of Mr. Brady, Mr. Rhymer, and Mr. Hoffman and, in particular Trial Exhibit 14 therein provide support for this contention.

Briefly, Exhibit 14 and Mr. Brady's deposition testimony demonstrate that six to ten dealers were drawn to visit Heartland from the Forest River trade show as a result of the Hotel Action. Mr. Hoffman's testimony and the "Attorneys Eyes Only" documents provided by Heartland concede that at least one of those visiting dealers made purchases of a line Heartland products which it was not previously buying. Forest River and Heartland are in direct competition over Heartland's entire product line. Thus, any such purchases by a Forest River dealer under these circumstances is most likely to be at the expense of buying similar products from Forest River. Further, it is likely that additional dealers also made purchases as a result of the Hotel Action, especially because of

9

Heartland's deliberate attempt to conceal those dealers from Forest River incident to document production. In particular, documents relating to Heartland dealers #10751, 10753, 10754, 10755, 10757, or 10758 have been withheld from Forest River even though Heartland's summary records show these dealers to have signed up with Heartland at or shortly after the Forest River trade show. Further, Trial Exhibit 14's boast of the success of the Hotel Action supports the conclusion that more than one dealer made such purchases. In addition, the content of the packages themselves contained comparative advertising against Forest River products, thus suggesting that the dealer was to choose between Forest River and Heartland for such purchases.


Interrogatory No. 9: Identify all misrepresentations or untruthful statements alleged to have been made by Heartland in connection with the Hotel Action, including but not limited to, any misrepresentations or untruthful statements alleged to have been made by Heartland in an effort to obtain Forest River's customer list in connection with the Hotel Action.

Response: Based upon current information:

1. Rod Long misrepresented himself while an employee of Open Road and his interest in the Forest River dealer list to Mike Tribble, the Forest River employee he ultimately obtained the initial list from. In particular, Rod was given that list in confidence and expressly represented to Mike that it would go no further than him. However, at the time, Rod knew that he had been asked by Heartland to obtain the list for Heartland and that he intended to pass the list on to Heartland.

2. Mike Creech misrepresented himself while an employee of Heartland in re-establishing a relationship with Dawn Splawski, an employee in Forest River's corporate offices, shortly before the Forest River trade show began. Mike's real purpose was not friendship with Dawn, but rather

10

to obtain the updated dealer list, having several new entries since the list was obtained from Mr. Tribble. See Trial Exhibit 43, a copy of which is attached hereto, showing emails between Mike and Dawn the day before the trade show. Immediately after the Hotel Action, Mike misrepresented himself and his intentions to Dawn with respect to his knowledge of the Hotel Action and the source of the list Heartland did obtain. Mike then abruptly and without explanation ceased his relationship with Dawn.

3. Heartland concealed both the emails and text messages of Mike Creech to Dawn and the Trial Exhibit 14 emails of Mr. Brady to dealers from Forest River during discovery in this lawsuit, asserting that those documents did not exist, even though Heartland's lead trial counsel asserted that no such records had been destroyed.

4. As testified to by Mr. Rhymer in his deposition, Tim Hoffman lied to Mr. Rhymer when describing the Hotel Action after the event, in an attempt to conceal the facts even from one of Heartland's owners.

5. Heartland told at least the receptionist at the Hyatt Place hotel that the packages were from Forest River and needed to be delivered right away to the dealers since they were important and were needed for a dealer meeting the next day. The Heartland employee was photographed doing so, and copies of those photos were previously provided to Heartland.

6. Heartland mislead the receptionist at Country Inn & Suites into thinking the packages were to go along with the Forest River party in part by his mannerisms and in part by having the specific dealer's name on the cover and asking for a call back to pick up the undeliverable packages.

7. Heartland mislead and made false statements to the receptionist at Residence Inn by asking for the room number of the named guests to be looked up and marked on the packages, then evading

11

# Tab KK

| | | |
|---|---|---|
| HEARTLAND RECREATIONAL | ) | |
| VEHICLES, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO.: 3:08-cv-490 TLS-CAN |
| | ) | |
| FOREST RIVER, INC., | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF BRYAN WALCZAK

I, Bryan Walczak, upon my oath, declare and state as follows:

1.      I am over eighteen years of age and have personal knowledge of the factual matters set forth in this affidavit. I am competent to testify on the matters stated herein.

2.      At all times relevant to this action, I have been employed by Heartland Recreational Vehicles, LLC ("Heartland").

3.      On or about October 22 and 23, 2008, Forest River, Inc. ("Forest River") held a Recreational Vehicle ("RV") trade show in Elkhart, IN.

4.      Prior to Forest River's trade show, Heartland had a list of RV dealers planning to attend the show. That list included information indicating the hotel at which each dealer was staying.

5.      On the evening of October 22, 2008, several Heartland employees, including myself, prepared envelopes with materials promoting Heartland's RV products. Neither the envelopes nor their contents contained any information indicating that they were from Forest

River. The envelopes were clearly marked with a large Heartland logo in the upper corner, and the contents contained information promoting Heartland products.

6. None of the materials included in the envelopes contained false or misleading statements or information.

7. On or about October 22, 2008, Eric Esch and I went to the hotels at which RV dealers were staying during the Forest River trade show. I personally went to the Springhill Suites, Courtyard, Varsity Club, and the Hyatt.

8. At the time I went to the hotels, I was wearing my North Trail logoed jacket.

9. At each hotel I went to, I asked the hotel employees to distribute the envelopes containing Heartland promotional materials. At the Springhill Suites, Courtyard, and Hyatt, the employees gave me the room numbers and I slid the envelopes under the door of those rooms. The Varsity Club agreed to distribute the envelopes and I left them at the front desk.

10. When I was at the hotels, I did not say or do anything to indicate that I was from Forest River.

11. When I was at the hotels, I did not say or do anything to indicate that the envelopes were from Forest River.

12. When I was at the hotels, I did not say or do anything to indicate that the envelopes had to be delivered right away because they were needed for a dealer meeting the next day.

13. When I was at the hotels, I never avoided any questions about my identity.

14. When I was at the hotels, I never avoided any questions asking who the envelopes were from.

2

15. When I was at the hotels, I never avoided any questions asking whether the guests were expecting the envelopes.

16. When I was at the hotels, I never said or did anything to indicate that I did not know what the envelopes were for.

17. Kenny Maines, owner of Racetrack RV, came to Heartland's facility on Wednesday, October 22, 2008 before the envelopes were distributed to the hotels. At that time, I had a long standing relationship with Mr. Maines.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on October ~~24~~ 30th, 2009.

Bryan Walczak

BDDB01 5899980v1

# Tab LL

Heartland/FR - 0000395

| ID | Dealership | City | State | Country | Email | PhoneNumber | Nights Attending | Figures | Name | Name | Hotel | CheckIn | CheckOut |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Heartland/FR - 0000396

| Dealership | City | State | Country | Phone | HighMembership Points | Name | Hotel | CheckIn | CheckOut |
|---|---|---|---|---|---|---|---|---|---|

Heartland/FR - 0000397

| Dealership | City | State | Country | Email | Phone Number | High Salesman Name | | Brand | Checklist |
|---|---|---|---|---|---|---|---|---|---|

Heartland/FR - 0000398

| Dealership | City | State | Country | email | PhoneNumber | NightsStanding | FName | LName | Hotel | Checkin | Checkout |
|---|---|---|---|---|---|---|---|---|---|---|---|

Heartland/FR - 0000399

Heartland/FR - 0000400

| Dealership | City | State | Country | Email | Phone number | Nights/Rooms # rooms | Name | | Hotel | Checklist |
|---|---|---|---|---|---|---|---|---|---|---|
| CAPTAINS COVE MARINE | CINCINNATI | OHIO | | | 513-321-1111 | | RICK | ROBRINBERGER | Hyatt | 21 |
| CAPTAINS COVE MARINE | CINCINNATI | OHIO | | ROB@CAPTAINSCOVEMARINE.COM | 513 321-1111 | 1620740704 | DICK | ROBRINBERGER | Hyatt | 23 |

Heartland/FR - 0000401

Heartland/FR - 0000402

Heartland/FR - 0000403

# Tab MM



**CRUNCH ZONE**

**the Competition**

EXHIBIT

*105*

*9-2-09* SB

PENGAD 800-631-6989

# Tab NN



# Tab OO

# UNITED STATES DISTRICT COURT
### Northern District of Indiana
### South Bend Division

| | | |
|---|---|---|
| HEARTLAND RECREATIONAL VEHICLES, LLC, | ) ) | |
| Plaintiff, | ) ) | CASE NO.:3:08-cv-490 AS- CAN |
| v. | ) ) | |
| FOREST RIVER, INC., | ) | JURY DEMAND |
| Defendant. | ) | |

## FOREST RIVER'S INITIAL DISCLOSURES UNDER FED. R. CIV. P. 26(a)(1) TO HEARTLAND

1. The individual(s) that Forest River may use to support its claims or defenses:

a. Mr. Brady, Mr. Rhymer, and Mr. Hoffman, named inventors of the patent in suit, whose full names, telephone numbers, and addresses are known to Heartland, since they are employees of Heartland. These persons have information about of the scope and content of the claimed inventions, the scope and content of the prior art, the differences between the prior art and the claimed inventions, the level of ordinary skill in the art to which the inventions pertain, and the use of the claimed inventions in the market. In addition, Mr. Brady is believed to have information about the Deception and Lanham Act violations (so described in the pleadings) and the issues related thereto.

b. Mike Creech, an employee of Heartland whose name, telephone number and address is already known to Heartland. Mr. Creech has knowledge of Heartland's attempt to obtain a list of the dealers and the hotels they were staying at from Forest River and its use by Heartland.

c. The designee of Heartland as its Rule 30(b)(6) witness(es), that person having information on all case issues. The specific persons(s) selected has not yet been identified by Heartland.

1

Rec'd
1/26/09

d. One or more witnesses from the seven hotels involved in the Deception and Lanham Act violations on the issues related thereto. The specific persons selected have not yet been determined.

e. The Heartland employees who delivered the envelopes to the hotels involved in the Deception and Lanham Act violations on the issues related thereto. The specific persons selected have not yet been determined due to Heartland's refusal to allow Mr. Brady and Mr. Hoffman to be deposed.

f. One or more of the dealers whom Heartland signed up and sold products to as a result of the in the Deception and Lanham Act violations on the issues related thereto. The specific persons selected have not yet been determined due to Heartland's refusal to allow Mr. Brady to be deposed.

g. The designee of Lippert as its Rule 30(b)(6) witness, that person having knowledge of the creation, reduction to practice, and use of the patented invention, prior art relevant, and threats to sue under the patent. The specific person(s) selected has not yet been identified by Lippert.

h. The Patent Examiner, Michael R. Stabley, of the U.S. Patent Office in 600 Dulany Street, Alexandria, Va., tel.: 571-272-3275. That person has information relevant to the scope and content of the prior art, the differences between the prior art and the claimed invention, the USPTO procedures relevant to the patent in suit, the representations of fact made by the applicant for the patent in suit, and the meaning of the claims.

i. One or more persons designated as Rule 30(b)(6) witnesses from the manufacturers of the prior art specified in the Amended Answer, Defenses, and Counterclaims, according to the need for such persons as identified by Heartland's admissions in the pleadings not yet filed and according to the testimony of the inventors of the patent, such persons having knowledge of the scope and use of that prior art and related prior art and the differences between that prior art and the claimed

2

invention. The specific persons selected have not yet been determined due to Heartland's refusal to allow its employees to be deposed and its failure to answer the allegations of the pleadings.

2. The documents and tangible items that Forest River may use to support its claims:

    a. The patent in suit, all related (continuation, CIP, divisional, etc.) patents and patent applications to that patent both in the U.S. and other countries, the file histories of all such patent applications, and all prior art of record in those patent applications, the location of each of which is at Heartland or its counsel's offices and, in the case of U.S. patent applications, at the offices of the U.S. Patent Office in 600 Dulany Street, Alexandria, Va., tel.: 571-272-3275.

    b. Samples of Heartland's products alleged to be covered by the patent. Comparative samples of Forest River's products accused of infringing the patent. Comparative photographs of each of these products during various phases of assembly. These items are not yet collected at any location due to Heartland's refusal to comply with the Notice of Entry.

    c. Heartland's invoices showing sales of the product alleged to be covered by the patent, the Heartland dealer agreements and documents showing Heartland sales of products resulting from the Deception and Lanham Act violations, the items requested from Heartland in Forest Rivers' First Requests for Production, the documents and things requested from Catterton Partners thus far via subpoena, as well as summary financial statements showing Heartland's profits from the sales of products alleged to be covered by the patent, all of which are located at the offices Heartland and Catterton.

    d. The prior art and documents previously shown and/or given to Heartland in connection with the patent infringement accusations and the Deception and Lanham Act violations. The

correspondence between the parties in connection with these disputes.

3. The damages sustained by Forest River at present are those incurred from lost sales and sales opportunities, litigation expenses, and the attorneys' fees incurred in responding to the allegations of infringement. The precise computation of the either category is not complete as yet.

4. There are no applicable insurance agreements.

Dated: January 23, 2009                    Respectfully submitted,

                                           Ryan M. Fountain (8544-71)
                                           *RyanFountain@aol.com*
                                           420 Lincoln Way West
                                           Mishawaka, Indiana 46544
                                           Telephone: (574) 258-9296
                                           Telecopy: (574) 256-5137

Certificate of Service:

    I certify that a copy of the foregoing document was served upon the Plaintiff in this case by depositing that copy with the United States Postal Service for delivery via First Class mail, postage pre-paid, on January 23, 2009, addressed for delivery to the following counsel for that party:

        David P. Irmscher
        Baker & Daniels
        111 East Wayne, Suite 800
        Fort Wayne, IN 46802

                                           Ryan M. Fountain

4

# UNITED STATES DISTRICT COURT
### Northern District of Indiana
### South Bend Division

| | | |
|---|---|---|
| HEARTLAND RECREATIONAL | ) | |
| VEHICLES, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO.:3:08-cv-490 AS- CAN |
| v. | ) | |
| | ) | |
| FOREST RIVER, INC., | ) | JURY DEMAND |
| Defendant. | | |

## FOREST RIVER'S SUPPLEMENTAL INITIAL DISCLOSURES UNDER FED. R. CIV. P. 26(a)(1) TO HEARTLAND

1. The additional individual(s) that Forest River may use to support its claims or defenses:

   a.  All of those persons deposed thus far in this litigation, whose names, addresses, and telephone numbers are already known to Heartland, as to the subjects which they have testified to already.

   b.  Rule 30(b)(6) designees of the Crowe and McGladrey accounting firms and Fifth Third Bank, as those entities are identified in the subpoenas previously issued for documents. The names, addresses, and telephone numbers of these entities are already known to Heartland. The subject of the testimony expected is that set forth in those subpoenas as well as the valuation of the patent in suit and the business relationships they have with Heartland. It is known that the Court ordered the subpoenas quashed, but that issue is expected to be reviewed favorably under Rule 72.

   c.  Dan Yarnell, General Manager of Roadmaster, whose name, address and telephone number are already known to Heartland, as to the subjects of relevant prior art and actions taken by Heartland in support of the fraud committed before the USPTO by Heartland.

1

d. Eric Esch, Brian Walczak, Rod Lung, and Mike Tribble, whose names, addresses and telephone numbers are already known to Heartland (each of whom was or is an employee or agent of Heartland), as to the events involving or leading up to the Hotel Action.

e. J. Scott Troeger, Heartland's former attorney, whose name, address and telephone number are already known to Heartland, as to the initial prior art search concerning the invention of the patent in suit and facts relevant to the fraud committed before the USPTO by Heartland.

f. Jason Lippert, President of Lippert Components, whose name, address and telephone number are already known to Heartland as its frame supplier, as to the subjects of relevant prior art, inventorship of the patent in suit, and actions taken by Heartland in support of the fraud committed before the USPTO by Heartland.

g. Jim Reed, Quality Steel and Aluminum Products, 28620 C.R. 20, Elkhart, IN 46517, Tel.: 574-295-8715, as to the subjects of relevant prior art, inventorship of the patent in suit, and actions taken by Heartland in support of the fraud committed before the USPTO by Heartland.

h. Arron Clow, President of Beds by George, as to the subjects of relevant prior art, inventorship of the patent in suit, and actions taken by Heartland in support of the fraud committed before the USPTO by Heartland. Mr. Clow is represented by the undersigned counsel and can be reached through that counsel.

i. Cindy King and Kelley Gearhart, employees of Country Inn & Suites, as to the events involving or leading up to the Hotel Action. Ms. Gearhart and Ms. King are represented by the undersigned counsel and can be reached through that counsel.

j. Bill Conway, George Lott, Lisel Matzat, Dawn Splawski, Scott Richgurber, and Ryan Wilgus, each employees of Forest River, Inc., the first two individuals as to the subjects of relevant

2

prior art, inventorship of the patent in suit, and actions taken by Heartland in support of the fraud committed before the USPTO by Heartland, the remaining individuals as to the subjects of the events involving or leading up to the Hotel Action. These employees are represented by the undersigned counsel and can be reached through that counsel.

2. The additional documents and tangible items that Forest River may use to support its claims:

    a. The patent and file histories thereof of all prior patents cited of record in the patent in suit and the continuation patent applications therefor. Copies of these are believed to already be in Heartland's possession, but are also available from the USPTO either at its internet web site (www.uspto.gov) or through a formal request to the USPTO.

    b. All documents and prior art items referred to in Forest River's responses to Heartland's interrogatories, document requests, and in the exhibits to depositions, to be used either in summary format or as is. Those items are available as and where previously indicated to Heartland.

    c. The following US Patents and their file histories, each of which is available at the USPTO internet web site or through a formal request to the USPTO:

| 2,322,841 | 7,569,233 | 7,451,756 | 7,572,975 | 7,587,780 | 7,600,817 |
| D551,787  | 7,350,850 | 6,983,979 | 7,234,747 | 7,198,320 | 7,150,483 |

    d. The Manuel of Patent Examining Procedure, available at the USPTO internet web site.

Dated: November 19, 2009           Respectfully submitted,

                                 s/Ryan M. Fountain

                                 Ryan M. Fountain (8544-71)

3

*RyanFountain@aol.com*
420 Lincoln Way West
Mishawaka, Indiana 46544
Telephone: (574) 258-9296
Telecopy: (574) 256-5137

Certificate of Service:

I certify that a copy of the foregoing document was served upon the Plaintiff in this case by depositing that copy with the United States Postal Service for delivery via First Class mail, postage pre-paid, first on November 19, 2009, and then returned to sender and re-served correctly addressed for delivery to the following counsel for that party on November 23, 2009 via the same process:

David P. Irmscher
Baker & Daniels
111 East Wayne, Suite 800
Fort Wayne, IN 46802

In addition, a copy was set on November 23, 2009 to that counsel by email.

s/Ryan M. Fountain
_____
Ryan M. Fountain