Interrogatory No. 3: State any basis that you contend supports your defense that the Patent in Suit is unenforceable as a result of inequitable conduct.

Response: The Interrogatory is objected to as ambiguous and indefinite. Specifically, the phrase "any basis" could refer to facts, legal case citations, statutory authority, documentary evidence, credibility evidence, etc. Strictly speaking then, Forest River could respond by simply stating that the deposition transcript of Brian Brady is a basis which supports the claim of inequitable conduct which renders that patent unenforceable since Mr. Brady admitted therein to facts which show his false execution of the Declaration of inventorship. However, Forest River has other several bases in that regard and does not wish to suggest to Heartland that the inequitable conduct issue is that simple. Accordingly, Forest River will provide herein a brief summary of the primary factual bases for the inequitable conduct claim, as those bases are presently known to Forest River. Obviously, a great deal of supplementation is possible, but given that Heartland has not as yet set forth its contentions by answering the pleadings, it is not known how much more detail is really relevant at this time. Accordingly, excess supplementation is objected to as unduly burdensome and oppressive. The listing is as follows:

1. At least three of the named inventors executed the Declaration of inventorship, Trial Exhibit 2, under false pretenses - having not read the application sufficiently to understand its content and claims, having falsely asserted inventorship, and having not disclosed to the USPTO the information required under 37 CFR 1.56. That falsity was known or should have been known by the primary patent attorney they appointed to represent them before the USPTO, Gregory S. Cooper. Mr. Cooper was personally bound both under 37 CFR 10 et seq., and 37 CFR 1.56 to prevent the patent application from being prosecuted under those circumstances.

2. Mr. Cooper and the succeeding patent attorneys who were directly involved in

prosecuting the patent application, Gerald Gallagher and Thomas Mauoh, either failed to communicate with the inventors sufficiently to gather the information known to the inventors or failed to pass on to the USPTO information obtained from the inventors with respect to:

    a. the nature of the invention itself - the invention, in the minds of the inventors at least, lay in the spaced apart, mating curvatures of the trailer lower corner to the truck cap upper corner, rather than in any one or two particular frame designs to accomplish that invention. Frame design was instead recognized by the inventors as a mere matter of design choice, to be selected and dimensioned in the normal course of events from a wide variety of potential formats, as was well known in the industry.

    b. the known scope and content of the prior art, including the fact that travel trailers, horse trailers, cargo trailers, park model homes, modular homes, and some boat trailers are all made by many of the same manufacturers and are structurally related to a high degree, especially as to chassis design and construction; also, that many of those trailers have common functions and are sold through the same channels of trade, including at common trade shows such that persons familiar with travel trailers and fifth wheels are likely to also be familiar with horse trailers and cargo trailers which have living quarters formed within; also, that trailer chassis designs have been made with a wide range of variation and structural equivalence such that locating any particular side beam, end beam, or cross beam at any particular location according to a particular use or fit was widely known as a matter of design choice; also, that adapting fifth wheel trailer chassis to include as interchangeable features notched or angled front corners to support a particular cap configuration was well known, such as shown by Trial Exhibits 40 and 41, especially so as to maximize "floor plan to footprint" ratios of larger trailers; also, that as

pointed out in the Amended Answer, Defenses, and Counterclaims, one or more of the inventors were aware of the specific prior art illustrated therein and/or of prior art having a similar structures and/or purposes to those illustrated examples; also, that the RVIA and other trade organizations to which Heartland and/or the inventors belong cover a range of closely related products using similar trailer chassis; and also, that there was additional relevant and material prior art in existence and known to the inventors in the United States and foreign RV markets, such as the travel trailers of Trial Exhibit 30, having angled front corners, various V nose trailers, and cargo trailers with forward ramp doors or fifth wheel formats supported on trailer chassis.

    c.  the known level of ordinary skill of those persons who were involved in the design of some or all portions of travel trailers and fifth wheels, including the average years of experience and education of those persons, as well as the fact that many of the employees involved in the design and construction of such trailers will change jobs within that general industry, making travel trailers at one time, cargo trailers at another, modular homes at another, etc., such that they become familiar with the construction of a wide range of such products; also, that persons of ordinary skill in the design of some or all portions of travel trailers and fifth wheels would have been exposed to and aware of many of the features of such products from trade shows, dealer servicing, and living in RV oriented communities like Elkhart County, IN; and also, that travel trailers and fifth wheels are typically designed in whole or part by a team of persons, such that "a person of ordinary skill in the art" within the meaning of the patent laws would actually have attributed to him or her that collective level of skill and experience.

    d.  the differences and similarities between the claimed invention of the patent

application and the prior art cited by the USPTO.

As a result, these patent attorneys obtained the issuance of a patent which was not directed to and did not claim the real "invention" of the named inventors. Further, the final, fully amended application for that patent was defective under 35 U.S.C. §112 for not "particularly pointing out and distinctly claiming the subject matter which the [named inventors] regards as [their] invention" and for not "enabling" one of ordinary skill in the art to make and use that invention. Thus, the failings of these persons were relevant and material to the invalidity of the patent in this lawsuit.

3. Neither Heartland, who was also bound by 37 CFR 1.56, nor any of the named inventors corrected those mistakes of the patent attorneys even though they were, according to the fully executed Declaration of inventorship, knowingly bound to do so, upon pain of patent invalidity.

4. Heartland's patent attorneys intentionally and repeatedly mislead the USPTO as to the scope and content of the prior art by refusing to admit in Information Disclosure Statements ("IDSs") filed with the USPTO that certain "prior art" was in fact "prior art." Those attorneys knew or should have known that the documents submitted with the IDSs really did disclose prior art.

5. Heartland's attorneys failed to bring to the attention of the USPTO prior art which was disclosed to them by Forest River during the pendancy of the patent application even when they were aware that Forest River considered that prior art to be so relevant and material that it created a defense to the patent infringement charge being made by Heartland against Forest River. Instead, Heartland waited until after the patent issued and this lawsuit was filed and brought that prior art to the USPTO in a "submarine" patent application, but still doing so in a

manner which mislead the USPTO as to the significance of that prior art. Further, even when required by the USPTO to provide a fuller disclosure in the record of the submarine patent application of the arguments about the prior art which were made in a non-public hearing on December 4, 2008 with the USPTO, Heartland failed to do so, intentionally keeping secret those arguments so as to not reveal their own failure to comply with 37 CFR 1.56 in the parent patent and/or to keep secret admissions against interest which could be used under the Doctrine of File Wrapper Estopple to interpret the patent claims more narrowly that Heartland was asserting against Forest River. Further, immediately after June 15 - 17, 2009, when the deposition testimony of Heartland's own employees under oath asserted that there was false inventorship in the parent patent application (which is also attributed to the submarine patent application as a matter of law) Heartland's attorneys rushed to pay the issue fee in the submarine patent application on June 24, 2009 so as to close down prosecution of the submarine patent application before the transcript of those depositions was created. This was done to deceive the USPTO into issuing the submarine patent quickly so that it could be used by Heartland to argue a "purge" of the inequitable conduct in not bringing the Forest River prior art to light in the parent patent. Specifically, Heartland thought to argue that the Forest River prior art was not relevant and material because the USPTO somehow issued the second patent anyway. However, in doing so, Heartland's attorneys compounded the fraud on the USPTO.

      6. Heartland was motivated to commit inequitable conduct in these ways by the direct financial benefit it was obtaining from an inflated valuation of the patent which was used in a particular corporate financial structuring of the company. Invalidation of the patent or denial of issuance by the USPTO would probably have directly brought about a financial collapse of Heartland. Forest River has not been permitted to see the actual documentation of this situation,

but has been informed by its attorney that substantial evidence exists to support this conclusion as a result of information received in part under and "Attorneys Eyes Only" restriction.