6

3  Q. Mr. Taylor, what did you do to prepare to come here
4     today as the 30(b)(6) designee?
5  A. I reviewed the file history and the files of
6     Baker & Daniels and Barnes & Thornburg.
7  Q. Did you talk to anybody at Heartland to gather
8     information?
9  A. No, I did not speak personally with anyone at
10    Heartland.
11 Q. You say speak personally. Did you speak indirectly
12    to anyone at Heartland?
13 A. No, I didn't.
14 Q. Did you look at any of Heartland's records?
15 A. Just to the extent to which they were in the
16    Baker & Daniels and the Barnes & Thornburg files.

84

22 Q. I see. As part of your analysis, you also made
23    certain credibility judgments, didn't you?
24 A. To a certain extent, yeah.
25 Q. And what techniques or methodology did you use to

85

1     judge someone's credibility?
2  A. Um, the only issues that I saw there is where there
3     was documents that clearly refuted the testimony.
4     Then, you know, I would make a determination that
5     that's probably not accurate, because it's not
6     supported by the documentary evidence.
7  Q. But you have no way of knowing if those documents
8     were actually received by Heartland, because you
9     didn't look at Heartland's records, did you?
10 A. I have no reason to know that they were not.

108

1  Q. Yeah. And you didn't look to see if Heartland had a
2     copy of that in their files, did you?
3  A. I have not seen a copy. All I've seen is
4     Mr. Tuttle's testimony. That if it's there, it will
5     be in Baker & Daniels or Barnes & Thornburg's files.
6  Q. It would also be in Heartland's files, don't you
7     think?
8  A. If they still have their files.