**UNITED STATES DISTRICT COURT**
Northern District of Indiana
South Bend Division

| | | |
|---|---|---|
| HEARTLAND RECREATIONAL VEHICLES, LLC, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO.: 3:08-cv-490 TLS-CAN |
| FOREST RIVER, INC., | ) ) | |
| Defendant. | ) | |

### HEARTLAND'S RESPONSE TO FOREST RIVER'S NOMINAL OBJECTION TO EXPERT AND MOTION FOR AMENDMENT OF SCHEDULING ORDER

Forest River, Inc.'s ("Forest River") Nominal Objection to Expert and Motion for Amendment of Scheduling Order (the "Nominal Objection") has two purposes. First, Forest River seeks a modification of the Court's scheduling order, one giving Forest River until February 1, 2010 to complete further discovery and file objections to the expert testimony of Jay Taylor. Taylor, a retired partner with the law firm of Ice Miller, is Heartland's expert on patent prosecution and inequitable conduct. Second, Forest River's pleading outlines its "nominal" objections to Taylor's testimony. These objections essentially claim that Taylor's expert report, because it was completed before Forest River finished all of its desired discovery, is based upon insufficient facts and is therefore unreliable.

The foundation for both of Forest River's arguments is the same. Forest River contends that until it completes its untimely discovery,[1] Taylor's expert report cannot possibly be reliable, and Forest River cannot meaningfully object to it. Hence, the issue is whether the additional discovery sought by Forest River is so crucial to the validity of Taylor's report that the Court should halt this litigation until that discovery is complete.

---
[1] Nearly all the discovery Forest River seeks to conduct was issued after the close of discovery.

The parties have already completed all necessary discovery with respect to Forest River's inequitable conduct claim, and any further discovery will have minimal relevance to the validity of Taylor's expert report. Thus, the Court should deny Forest River's Motion for an extension and disregard Forest River's "nominal" objections to Taylor's proposed expert testimony.

## I. HEARTLAND'S REFUSAL TO AGREE TO AN EXTENSION WAS JUSTIFIED

On the morning of December 21, 2009, Forest River counsel Ryan Fountain held a telephone conference with Heartland counsel David Irmscher. Mr. Fountain asked Mr. Irmscher for an extension of time to object to the Expert Report of Jay G. Taylor. When Mr. Irmscher asked why Forest River needed the extension, Mr. Fountain expressed a desire to conduct further discovery. Specifically, Mr. Fountain stated that he needed to obtain documents responsive to third-party subpoenas issued to the law firms of Barnes & Thornburg and Baker & Daniels. He also stated that he needed to re-open the depositions of Gregory Cooper and Gerard Gallagher, the attorneys who prosecuted U.S. Patent No. 7,278,650 (the "'650 patent") on behalf of Heartland. Because the parties had already engaged in nearly every conceivable method of discovery in the matter, Mr. Irmscher informed Mr. Fountain that Forest River had more than enough information to assess the qualifications and foundations for Taylor's proposed testimony, and that Heartland would not consent to the extension.

In an attempt to show that Heartland's refusal to agree to an extension was unreasonable, Forest River cites its willingness to allow Heartland extra time to serve Taylor's expert report. The two situations are inapposite. Heartland requested an extension so that Heartland and Forest River could depose Cooper and Gallagher.[2] Because Forest River has accused these attorneys of

---

[2] Contrary to Forest River's assertion, because Heartland does not bear the burden of persuasion on Forest River's inequitable conduct counterclaim, Heartland's deadline for serving its expert report was September 21, 2009, not August 3, 2009. (Scheduling Order, Dckt. Entry No. 41, p. 2.)

2

inequitable conduct, their deposition testimony was absolutely necessary to the completion of Taylor's expert report. Unfortunately, due to considerable scheduling difficulties with both Cooper and Gallagher, Heartland was not able to complete these depositions until November 3, 2009, thus necessitating the late service of Taylor's expert report.[3]

In contrast, at the time Forest River requested an extension, the parties had already completed any and all reasonable forms of discovery. Heartland has willingly consented to extensions when Forest River has provided proper justification. (*See* Dckt. Entry Nos. 35, 60, 63, & 64.) However, in this instance, Heartland believed that further discovery was unnecessary and unlikely to produce any additional meaningful evidence. At the very least, Heartland believed that any further discovery would have limited relevance to Jay Taylor's qualifications or the foundations for his opinion. Because the parties have already conducted sufficient discovery for Forest River to assess the reliability of Jay Taylor's expert opinions, there is no justification for prolonging this litigation by granting Forest River its requested extension.

## II. FOREST RIVER HAS SUFFICIENT INFORMATION TO ASSESS JAY TAYLOR'S TESTIMONY

Forest River and Heartland have completed comprehensive discovery with respect to Forest River's inequitable conduct counterclaim. This discovery includes:

(1) The depositions and deposition exhibits of all named inventors of the '650 patent, including:

    a. Brian Brady;

    b. Scott Tuttle;

---

[3] To the extent that Heartland should have moved the Court for an extension in addition to seeking Forest River's consent, Heartland apologizes. Heartland believes that good cause for the extension existed, and, if the Court so requires, Heartland will file a belated motion explaining the circumstances justifying the extension, namely the need to depose both Cooper and Gallagher and the difficulty in finding a deposition date to accommodate all parties despite Heartland's diligence.

      c.      John Rhymer;

      d.      Timothy Hoffman; and

      e.      Doug Lantz;

(2)      The depositions and deposition exhibits of Gregory Cooper and Gerard Gallagher, the two patent attorneys involved in the prosecution of the '650 patent;

(3)      The entire patent prosecution files of both Barnes & Thornburg and Baker & Daniels for the '650 patent;[4]

(4)      The expert report and deposition of Jay G. Taylor, Heartland's expert witness;

(5)      The deposition of Jeff Babcock, Forest River's 30(b)(6) representative on the issue of inequitable conduct;

(6)      Relevant documents obtained by the parties through Requests for Production pursuant to Fed. R. Civ. P. 34; and

(7)      Forest River's responses to Heartland's First Set of Interrogatories.

Despite having the opportunity to (1) analyze the expert report of Jay Taylor; (2) depose Jay Taylor; (3) depose every named inventor; (4) depose both of Heartland's patent attorneys; and (5) analyze all documents contained in the patent prosecution files of Heartland's patent attorneys, Forest River claims it needs further discovery before it can assess Jay Taylor's qualifications or the foundations for his proposed testimony. Returning to a tactic it has used repeatedly throughout this litigation, Forest River invokes conjecture and conspiracy theories in

---

[4] Heartland is utterly confident that it did not engage in inequitable conduct in seeking the '650 patent. Hence, in order to provide both Forest River and the Court with a completely transparent view into its conduct, Heartland has waived the attorney-client privilege with respect to the issue of patent prosecution. This has resulted in the production of the entire prosecution files of Baker & Daniels and Barnes & Thornburg for the '650 patent. Furthermore, in accordance with this waiver, Heartland has also now supplemented its production of Heartland's records with respect to the patent's prosecution. This supplemental production includes the previously privileged files of named inventor Scott Tuttle. These files confirm that Tuttle and Heartland received crucial correspondence from Gregory Cooper outlining their duties of candor and disclosure with respect to prior art. Heartland plans to provide the relevant portions of this additional evidence to the Court with its forthcoming reply in support of its Motion for Summary Judgment.

an attempt to demonstrate the necessity of its desired discovery. As discussed more specifically below, Forest River's additional discovery requests were unnecessary and ultimately unproductive. Hence, it needs no further discovery in order to object to Jay Taylor's testimony and there is no good cause for modifying the scheduling order.

> A. **Forest River's Attempts to Obtain a "Search Report" Are Futile**

In its Nominal Objection, Forest River claims it needs "business records concerning a preliminary Search Report describing prior art known to Heartland and/or its attorneys during prosecution of the patent in suit." (Nominal Objection p. 2.) The files of Barnes & Thornburg and Baker & Daniels dealing with the prosecution of the '650 patent contain no evidence indicating that a professional prior art search was actually conducted.[5] Yet, Forest River insists that this "Search Report" exists. Forest River even intimates that Heartland's counsel, whom Forest River baselessly accuses of having "a $7,000,000 motive," may be improperly withholding the report from Taylor and/or Forest River. (Nominal Objection p. 11.)

Forest River speculates that the hypothetical search "took place prior to Mr. Cooper's involvement and appears to have been done at the instance of Scott Troeger, another partner at Barnes & Thornburg who was the actual 'billing attorney' for Heartland." (Nominal Objection pp. 6-7.) Thus, if such a report exists, it should be in the files of Barnes & Thornburg. It is not there. Two days after Forest River filed its Nominal Objection, Barnes & Thornburg served the parties with documents responsive to Forest River's third-party subpoena. The additional

---

[5] Barnes & Thornburg's prosecution file contained fourteen patents that were ultimately disclosed to the Patent Office. Gregory Cooper, the Barnes & Thornburg attorney principally responsible for the prosecution of the '650 patent, testified that he does not remember how these patents were obtained. He claims that they were provided by the client, obtained through an informal search by an attorney, or acquired by hiring a professional search company to perform a formal search. (*See* Cooper Dep., Exh. A, p. 40, ll. 8-22.) Yet, in contradiction to Cooper's testimony that he does not remember how the patents were acquired, Forest River insists that a professional search definitely occurred, stating incorrectly that "the attorney witnesses identified the existence of that search report." (Nominal Objection p. 8.) In truth, the witnesses do not know how Barnes & Thornburg ultimately acquired the patents, though Cooper did say that it was "unlikely" that a professional search was conducted. (*See* Exh. A., p. 40, ll. 15-20.)

5

documents provided by Barnes & Thornburg **included no evidence whatsoever that a professional search occurred or that a "Search Report" exists**.

When Heartland declined to agree to an extension, it believed that further discovery would have minimal value and was thus unnecessary. Barnes & Thornburg's subsequent compliance with Forest River's subpoena confirms that Heartland was correct. Regardless, Forest River now has the response that it sought from Barnes & Thornburg. (*See* Nominal Objection p. 9.)

**B.     The Patent Attorneys' Time Diaries and Billing Records are Irrelevant to Taylor's Qualifications or the Foundations for His Opinions**

Forest River contends that it needs the time diaries and billing records of Gregory Cooper and Gerard Gallagher in order to assess Jay Taylor's qualifications or the foundations for his opinions. More specifically, Forest River suggests that if further discovery yields evidence that contradicts Jay Taylor's opinions—opinions that he formed **before** such discovery occurred—then Forest River will have a basis for attacking Taylor's foundations or methods.

Forest River's contention that it can use after-acquired evidence to invalidate the foundations or reliability of Taylor's expert report is wrong. If Forest River obtains new evidence that affects the accuracy of Taylor's opinions, Taylor must correct his report to reflect that new information. *See* Fed. R. Evid. 26(e)(1). Rule 26(e)(1) provides that a party must supplement or correct its Rule 26(a) disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect…" Fed.R.Civ.P. 26(e); *see also Westchester Fire Ins. Co. v. Am. Wood Fibers, Inc.*, 2006 WL 752584, at *5 (N.D. Ind. Mar. 21, 2006) (Springmann, J.) (noting rule's applicability to expert reports). Obviously, if Forest River discovers new material evidence unknown to Taylor at the time of his report, Taylor would be permitted—and, in fact, **required—**to correct his report to incorporate that new information.

6

Regardless, the time diaries and billing records have no bearing on the validity of Taylor's expert report. Forest River hoped that the billing records would contain no time entry explicitly stating that the named inventors and the attorneys discussed prior art or the duty of disclosure. (*See* Nominal Objection, p. 7.) But Forest River incorrectly assumes that the attorneys would have listed the substance of each conversation with the named inventors when recording their time. Typically, attorneys do not include such detail in their time entries. Hence, even if the documents did not include time entries expressly stating that the attorneys and named inventors discussed the duty disclosure or the meaning of prior art, it does not follow that those conversations never occurred, and it certainly does not provide evidence sufficient to discredit Jay Taylor's qualifications or the bases for his opinions.

However, we need not guess at the content of those time entries and billing records. Shortly after Forest River filed its Nominal Objection, both Barnes & Thornburg and Baker & Daniels produced all relevant time entries related to the prosecution of the '650 patent. True and accurate copies of these billing records are attached as Exhibit B. As the billing records show, Gregory Cooper and Gerard Gallagher had multiple conversations with Scott Tuttle, but the time entries typically do not mention the exact substance of those conversations. For instance, Gregory Cooper's time entries include: "Conference with Scott Tuttle and prepared provisional patent application for filing;" "Conference with Mr. Tuttle regarding patent filings;" and "Discussed patent issues with Mr. Tuttle." While these vague time entries demonstrate that Cooper often spoke with Tuttle, it is impossible to know from these time entries whether they discussed prior art or the duty of disclosure. Hence, the time entries are largely useless to Forest River's attempts to discredit Taylor's expert testimony.

7

The documents provided by Barnes & Thornburg and Baker & Daniels confirm that Forest River's desired discovery has no effect on Forest River's ability to object to Jay Taylor's expert testimony. Regardless, Forest River now has the time diaries and billing records it sought from the law firms responsible for the prosecution of the '650 patent.

**C.  The Policy and Procedure Manuals of Baker & Daniels and Barnes & Thornburg are Not Crucial to an Evaluation of Jay Taylor's Qualifications or the Bases of His Opinions**

Forest River also contends that it needs the policy and procedural manuals/memos provided by Barnes & Thornburg and Baker & Daniels to their patent attorneys. In response to Forest River's subpoena, Barnes & Thornburg produced copies of its timekeeping policies. True and accurate copies of these policies are attached as Exhibit C. These policies have absolutely no relevance to the qualifications of Jay Taylor or the bases for his opinions. Baker & Daniels served Forest River with its written objections to the production of these documents and has declined to produce them. Nevertheless, it is difficult to conceive that such documents—which were not even evidence at the time Taylor finished his report—could be so relevant that they would invalidate the foundations for Jay Taylor's testimony. Forest River cannot legitimately argue that it could not object to Jay Taylor's testimony without these documents. Hence, Forest River's purported need for these documents does not justify a modification of the Court's scheduling order.

**D.  Forest River Has Not Sought Jay Taylor's Prior Expert Testimony Through Formal Discovery**

In its Nominal Objection, Forest River states that it needs an extension so that it can obtain a copy of Jay Taylor's testimony from a previous, separate matter. However, neither Heartland nor Jay Taylor has a duty to produce this prior testimony.[6]  *See* Fed R. Civ. P.

---

[6] Currently, neither Heartland nor its counsel has a copy of Taylor's prior testimony.

8

26(a)(2)(B)(v) (requiring a list of cases in which the witness has testified but not disclosure of an expert report or transcript from that prior testimony).

Despite Forest River's contention that an extension is needed so that it can obtain Taylor's prior testimony, it has not issued a formal discovery request seeking this information. Instead, as shown by Exhibit M to the Nominal Objection, Forest River has contacted attorneys from the previous case in an attempt to obtain the documents informally. The Court should not prolong this litigation so that Forest River can attempt to informally acquire this prior testimony from a party who has no duty to produce it. Forest River's desire to informally pursue this information does not constitute good cause for modifying the Court's scheduling order.

### III. FOREST RIVER HAS NOT STATED A LEGITIMATE OBJECTION TO JAY TAYLOR'S TESTIMONY

Federal Rule of Evidence 702 governs testimony by expert witnesses. The Rule provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Rather than meaningfully challenging Jay Taylor's methodology, Forest River merely states that "Mr. Taylor's testimony cannot be based upon sufficient facts or his methods applied to the facts of the case when critical facts of the case are not yet even known…." (Nominal Objection p. 11.) In forming his opinions, Jay Taylor relied upon all relevant evidence available to the parties at the time the report was completed. (*See* Taylor Expert Report, Exhibit D, ¶ 4.)

9

Incredibly, Forest River suggests that Taylor should have completed an "independent investigation" to secure additional evidence that might counter that provided by the parties' discovery efforts, including the apparently non-existent "Search Report."  (Nominal Objection p. 11.)  But expert witnesses are not private investigators who independently search for evidence.  Rather, they **evaluate** the evidence that emerges from the **parties'** discovery efforts.  Forest River contends that the need for a "Search Report" or the time diaries of Cooper and Gallagher are paramount to this case.  Yet, until the depositions of Cooper and Gallagher—depositions resulting from subpoenas issued by **Heartland**—Forest River did nothing to obtain these documents from Barnes & Thornburg or Baker & Daniels.  Forest River cannot attack the reliability of Taylor's expert report by arguing that Taylor should have performed the very investigation that Forest River itself neglected.

     Furthermore, even if Forest River's additional discovery had yielded meaningful evidence, that after-acquired evidence would not have been useful in attacking Taylor's qualifications, the bases for his opinions, or his methodology.  Taylor expressly reserved the right to correct his opinion and its bases in the event of additional discovery.  "Because discovery is ongoing, I reserve the right to render additional opinions and to supplement or amend my opinions based upon the production of further documents, deposition testimony, submissions of expert reports by experts for defendant Forest River, Inc. …trial testimony or other events that may occur during the course of this action."  (Taylor Expert Report, ¶ 1.)  Again, such corrective amendments are expressly provided for by Fed. R. Evid. 26(e)(1).  Fed. R. Evid. 26(e)(1) ("A party who has made a disclosure under Rule 26(a)…must supplement or correct its disclosure or response…if the party learns that in some material respect the disclosure or response is incomplete or incorrect...").

BDDB01 5967888v1

Because Forest River's only objections stem from its incorrect belief that Taylor cannot render a reliable expert opinion without the information sought by Forest River's untimely, unnecessary discovery, this Court should find that the objections are insufficient as a matter of law.

## IV.  THIS COURT SHOULD DENY FOREST RIVER ITS REQUESTED RELIEF

Forest River needs no further discovery to assess the validity of Jay Taylor's proposed expert testimony.  No good cause exists for a modification of the Court's scheduling order. Hence, the Court should deny Forest River's request for an extension and evaluate the merits of Forest River's "nominal objections."  As discussed in the previous section, these objections are insufficient as a matter of law.

However, should the Court decide to grant Forest River an extension, Heartland requests that the Court also establish a new briefing schedule, one that would permit Heartland to respond completely to Forest River's additional or more fully-stated objections.  Furthermore, Heartland also requests that the Court retroactively modify the scheduling order to reflect the extension agreed to by Forest River and Heartland with respect to Jay Taylor's expert report and deposition.

## V.  CONCLUSION

At the time Forest River filed its Nominal Objection, the parties had already conducted all necessary discovery with respect to Forest River's inequitable conduct counterclaim. Any further discovery was either unnecessary, unlikely to produce evidence material to Jay Taylor's qualifications or methodology, or both.  Since that time, Forest River has received most of the discovery that it claimed it needed.  As Heartland expected, none of that discovery appears useful to an assessment of Jay Taylor's qualifications or the foundations for his opinions.  Hence,

11

no good cause exists for modifying the scheduling order, and the Court should find that Forest River's objections are insufficient as a matter of law.

BAKER & DANIELS LLP


By: */s/ David P. Irmscher*
David P. Irmscher (#15026-02)
Abigail M. Butler (#22295-02)
111 East Wayne, Suite 800
Fort Wayne, Indiana 46802
Tel: 260.424.8000
Fax: 260.460.1700
david.irmscher@bakerd.com
abigail.butler@bakerd.com

ATTORNEYS FOR PLAINTIFF,
HEARTLAND RECREATIONAL
VEHICLES, LLC

## CERTIFICATE OF SERVICE

The undersigned counsel for plaintiff Heartland Recreational Vehicles, LLC, hereby certifies that a copy of the foregoing was served upon the following, this 4th day of January, 2010, by operation of the Court's electronic filing system:

>Ryan M. Fountain
>420 Lincoln Way West
>Mishawaka, Indiana  46544-1902

>*/s/ David P. Irmscher*
>David P. Irmscher

BDDB01 5967888v1