# UNITED STATES DISTRICT COURT
Northern District of Indiana
South Bend Division

| | |
|---|---|
| HEARTLAND RECREATIONAL VEHICLES, LLC, ) | |
| Plaintiff, ) | |
| ) | CASE NO.:3:08-cv-490 TLS |
| v. ) | |
| ) | |
| FOREST RIVER, INC., ) | JURY DEMAND |
| Defendant. | |

### FOREST RIVER'S REPLY TO HEARTLAND'S RESPONSE TO FOREST RIVER'S NOMINAL OBJECTION TO EXPERT AND MOTION FOR AMENDMENT OF SCHEDULING ORDER

Forest River replies herein to Heartland's Response, Docket Entry #85 (abbreviated here to "DE#85"), to the subject motion (DE#82).

Summary of the Reply:

1. Heartland's admission that its Expert Report was only for "rebuttal or response" to Forest River's (non-existent) expert report establishes a basis for denying admissibility of that Report and, if granted, thereby renders the present motion for amendment of the Scheduling Order moot.

2. The recent discovery responses demonstrate the reasonableness of Forest River's request and progress in resolving the open discovery matters.

3. The specific allegations in Heartland's Response are addressed and refuted herein.

1

"Rebuttal or Response" Expert Reports Cannot Exist in a Vaccum:

Fed. R. Civ. P. 26(a)(2) permits a party to use expert witnesses, provided that certain timely disclosures are made to the opposing party. Fed. R. Civ. P. 26(a)(2)(C) specifies that the disclosures are to be made according to a timetable set forth by a court order. The Scheduling Order (DE#41) in this case stated:

> The serving of reports from retained experts under Rule 26(a)(2) are due from the parties who bares [sic] the persuasion by **August 3, 2009**; and rebuttal or response by **September 21, 2009**.

(Emphasis in original)

In contesting the present motion, Heartland asserts that its Expert Report was due on September 21 rather than August 3 (see FN 2 of DE#85). The only way that could be true is if the Report was a "rebuttle or response" to an expert report of Forest River which would have been due on August 3. Accordingly. Heartland has necessarily admitted that its Report is merely a "rebuttal or response."

However, a rebuttal report is by definition bounded by the subject matter of the other party's expert report. Fed. R. Civ. P. 26(a)(2)(C)(ii); *Baldwin Graphic Systems, Inc., v. Siebert, Inc.,* 2005 WL 1300763, *2 (N.D. Ill. 2005)("The rebuttal report is no place for presenting new arguments"); *Accord, Jorgenson Forge Corp. v. Consarc Corp.,* 2002 WL 34363668 (W.D. Wash. 2002)(excluding rebuttal testimony that goes beyond the scope of the other party's expert report); *Compare, Hercules, Inc. v. OneBeacon America Ins. Co.*, 2004 WL 3250119 (Del. Sup. 2004)(bifurcation of trial resolved dispute of expert attempting to rebut topics on which no previous expert had offered opinion).

In this case, Heartland has not answered the pleadings as yet (its third Rule 12 motion is still

2

pending). Heartland has not specified at any time what its defenses are to the counterclaims of inequitable conduct or fraud. Heartland was required to produce a witness under Rule 30(b)(6) to explain its defenses to the inequitable conduct and fraud counterclaims against it (see Exhibit Q hereto, Topics 1 and 2)[1]. On June 17, 2009 Heartland produced a witness, Mr. Hoffman, to testify as to some of the Rule 30(b)(6) topics, but expressly refused to provide a witness as to the inequitable conduct issues at that time, stating "we'll probably supplement with an Expert Witness." Exhibit R, page 6, lines 6 - 11. Thus, Forest River was deprived of deposing Heartland on precisely the issues of Mr. Taylor's report during the normal course of discovery.

Instead, the earliest that Heartland provided its Rule 30(b)(6) Expert Witness to Forest River on November 30, 2009, one month after the close of discovery. However, in his capacity as Rule 30(b)(6) witness, Mr. Taylor's testimony was expressly limited to the patent preparation and prosecution topics, and did not include the inequitable conduct and fraud defenses. Exhibit S, page 4, line 24 to page 5, line 16. Obviously, Forest River could seek relief from this Court by opening up the discovery period for investigation into the missing defenses. As a practical matter, however, it appears that the missing defenses are likely to be entirely dependant upon Mr. Taylor's Expert Report. Accordingly, going to the heart of the matter, Forest River has focused on the relief needed to complete discovery against that Report.

The June 17, 2009 Rule 30(b)(6) deposition was the time to present Heartland's arguments on the inequitable conduct issues. Heartland deliberately refused to do so. Tucking its arguments instead into a rebuttal report, for which the Scheduling Order made no provision for Reply, is an

---

[1] Exhibits newly presented herein pick up with the numbering system of the underlying motion.

abuse of the discovery process. This abuse is not harmless. Seeing that Heartland immediately used that late Expert Report as the primary basis for supporting its summary judgment motion against the inequitable conduct claims (DE#81, Ex. T), it becomes clear that Heartland is seeking to blindside Forest River.

Accordingly, the Expert Report should be excluded from evidence in this case since it is not actually serving as a rebuttal report, there being no expert report of Forest River's to rebut in the first place. Forest River provided ample notice to Heartland not to use an expert report in this way, back when the subject of extending Heartland more time to provide expert reports was first raised (Exhibit T, 4th paragraph of 9/22/09 email of Mr. Fountain). Heartland ignored that warning, and this Court should not reward Heartland's conduct.

Obviously, if the Court now denies admissibility of the Expert Report for that reason, then no extension of time for further opposition to the Expert Report would be needed.

Progress is Being Made in the Recent Discovery, but it is not Complete Yet:

Part B of the Scheduling Order (DE#41, page 3) states that "absent disabling circumstances, the deadline for completion of discovery will not be extended unless there has been active discovery." As indicated both by Forest River's motion and Heartland's Response, there has certainly been active discovery all along in this case, at least by Forest River. In regards to the four types of evidence that have been sought in preparation for opposing the Expert Report (the missing search report, attorney activity records, patent department policy manuals, and the prior expert report by Mr. Taylor finding fraud by Barnes & Thornburg), this activity has continued during the interim between the filing of the present motion and this Reply.

4

On the positive side, the time entry diaries provided by Barnes & Thornburg and Baker & Daniels for the attorneys involved with patent prosecution show no corroboration for Mr. Taylor's assumption that the attorneys did actually have discussions with the inventors regarding prior art, disclosure requirements to the U.S. Patent Office, or inventorship.[2] The policy and procedure manual evidence provided thus far by Barnes & Thornburg made it clear that at least its attorneys were held to be personally responsible for the accuracy of their time diaries, so it is fair to assume that what is not there did not happen. Since there is nothing in the time entries to refute Mr. Tuttle's express testimony that these discussions did not take place, the only other documentation which Mr. Taylor could have relied upon are the form letters. The content of those letters is readily apparent. Accordingly, absent evidence of patent prosecution policy and procedure manuals, we can close the book on both his methodology and application of fact in drawing those particular conclusions about Mr. Tuttle.

Further, the business records of Heartland relating to patent prosecution were finally disclosed to Forest River. These were originally requested on December 14, 2008 (original service date of Exhibit K). One such document is of particular relevance to Mr. Taylor's conclusions, Exhibit W hereto. This exhibit is a reporting memo from Mr. Tuttle to Mr. Brady describing the content of discussions with Mr. Cooper regarding the patent application and patent law principles. Apart from tending to contradict statements made by Mr. Cooper in his deposition, this exhibit shows either that Mr. Cooper gave clearly erroneous advice about the definition of prior art or that

---

[2] At page 7 of its Response, Heartland attempts to put a positive spin on this, asserting it is "impossible to know" from these time entries and so they cannot be used to discredit Mr. Taylor. However, discredit can come not just from direct refutation, but also by demonstrating the absence of factual basis and the fallacy of assumptions in methodology.

his client clearly misunderstood Mr. Cooper. In the first case, Mr. Taylor's methodology in relying upon Mr. Cooper's word and practice without attempting to verify Mr. Cooper's level of skill was clearly erroneous. In the latter case, Mr. Taylor's methodology in relying upon the form letters as evidence of sufficient notice to inventors without ever examining Heartland's own records was clearly erroneous. In fairness to Mr. Copper and in an effort to determine which of these possibilities is more accurate, now that these documents have been located, Forest River and Mr. Cooper's counsel are arranging to complete his deposition in the near future. Exhibit V.

As for the missing patent prosecution policy and procedure manuals, progress is being made at least through Barnes & Thornburg in that a managing partner of that firm, Ken Inskeep, is directly participating in trying to find documents of the relevant time era. Exhibit V. To its credit, that law firm has cooperated without the need for excessive judicial procedure, recognizing both the futility of resistance and the unnecessary expense involved. In contrast, Baker & Daniels has completely resisted producing any of the manuals on the grounds of relevance and privilege. A Rule 37 conference was held on January 11, 2009 to attempt to overcome that difficulty without the need for a motion to compel against Baker & Daniels. Forest River's efforts in that regard were, however, unsuccessful.

As for the prior Expert Report of Mr. Taylor in which he concluded that Barnes & Thornburg had committed fraud in patent prosecution, a copy has been located at Barnes & Thornburg. However, there appears to be a protective order restriction in place concerning it which Forest River and Barnes & Thornburg are working to resolve. Exhibit V. This prior report can make a particularly relevant comparison of the methodologies used by Mr. Taylor, especially since he testified that his methodology for determining that there was no inequitable conduct in this case was

6

merely "40 years of experience" and that his method had never been published for peer review. Exhibit X.[3]

As for the missing search report, Forest River sought documentary evidence from Heartland and both of the law firms that actually received the results of the search report. At present, no documents have been turned over to Forest River which show more information about the content of that report and who conducted it than we had since Mr. Gallahger's deposition in November. However, as admitted by Heartland in footnote 5 of its Response, Mr. Cooper testified that an attorney or professional search company may have performed the search. Further, Mr Taylor testified that in his experience working with professional searchers, there would be some correspondence in the file of that process (Exhibit U, page 8, line 19 to page 10, line 8). Thus, it is reasonable to assume that some letter and/or bill would have been received by Heartland either directly or through its attorneys for such a search. Accordingly, Forest River requested all such correspondence and billing statements from Heartland (Exhibit K, Request #9 and Exhibit L, Request #32 - ". . .billing statements").

Unfortunately, while Heartland did provide some documents to Forest River within the past few weeks, it has refused thus far to provide any billing statements by anyone involved with the

---

[3] Heartland's Response at pages 8-9 attempts to make much of the fact that neither Mr. Taylor nor Heartland are compelled to provide this prior report. First off, Mr. Taylor specifically testified that he did not have a copy of it, so what would be the point of even trying to compel it from him? Secondly, the Federal Rules of Civil Procedure, and particularly the subpoena power of the District Court, are very clear on the requirement to produce relevant evidence. Would Heartland fault Barnes & Thornburg, or indeed any party, from voluntarily cooperating to provide discovery more timely and efficiently than the deadlines set forth in the rules? Forest River is trying to be practical here, not pedantic, and does not want to slow down the litigation process any more than it has to be, to be fair. Barnes & Thornburg's demonstrated willingness to proceed on that basis confirms the appropriateness of Forest River's approach.

patent. A Rule 37 conference was conducted on January 11, 2009 to attempt to overcome this refusal, but without success, and a motion to compel is now required. Both of the law firms involved were also subpoenaed to get those records. Barnes & Thornburg did provide its attorney time diaries, but no billing statements. Baker & Daniels provided a portion of the relevant time diaries, but no billing statements.

Interestingly, the portion of the time diaries that Baker & Daniels did provide appears to give some clue as to the search report. Baker & Daniels blocked out all time entries which do not, in their opinion, relate to prosecution of the patent. What we are left with, however, draws attention back to those blocked out time entries. On page 16 of Exhibit B to Heartland's Response, there is a diary entry for Mr. Gallagher dated May 25, 2005, prior to Baker & Daniels' representation of Heartland's patent application and only the third entry of Mr. Gallagher relating to the patent prosecution. That diary entry refers to a conference between Mr. Gallagher and James Brotherson, (another attorney representing Heartland) "regarding results." What "results" are there in the context of a pending patent application which has just been filed and has no prosecution as yet? The only results that come to mind in the common parlance of patent attorneys are "search results," as in the results of a patentability search. No where in the remainder of the time entries shown do "results" get mentioned.

Baker & Daniels has refused to allow Forest River to see the actual and unredacted time entries, even under the "Attorneys Eyes Only" level of confidentiality set forth in this Court's Protective Order (DE#61). Clearly, these time entries are likely to indicate what "results" refers to, if it was the missing search report, for example. And, if so, then we have a party identified as being responsible for the initial patent investigation and all the missing correspondence thereto. Since

8

Baker & Daniels no longer has any such correspondence (and we will take their word for that, as officers of the Court responding to the subpoena), then the impact of "spoilation" of evidence upon both the facts Mr. Taylor relied upon and his methodology of blind reliance upon biased attorney testimony come into question when examining the admissibility of the Expert Report. Obviously, this is speculation on Forest River's part, but not unreasonably so given the facts of this case. Fortunately, the speculation may be readily resolved by disclosure of the missing time entries and/or by Heartland's disclosure of billing records indicating who actually worked on what with respect to the patent application. This topic was also raised at the Rule 37 conference four days ago, but, again, it appears a motion to compel will be needed. It is possible in the meantime that Mr. Gallagher himself could clear up that uncertainty. Accordingly, completion of Mr. Gallagher's deposition is being rescheduled at this time. Exhibit V.

At Least on Paper, Heartland Misses the Point:

Heartland starts off its Response by asserting on page 1 that Forest River is trying "halt this litigation until that discovery is complete." Actually, the reverse is true. Heartland halted discovery throughout the time allowed by the Court, stubbornly giving no testimony or pleadings about its defenses to the inequitable conduct and fraud issues. Then, suddenly, the Expert Report appears, in the guise of "rebuttal," and Heartland would now hobble Forest River's substantive objections to the Report.

Heartland goes on, at pages 2 - 3 of the Response, to assert that "scheduling difficulties" prevented the depositions of the two witnesses Mr. Taylor relied upon until after the close of discovery. The inequitable conduct and fraud issues were raised in the pleadings on November 17,

2008. The Scheduling Order was entered on May 4, 2009. Discovery was to close on October 30, 2009. In all that time, nearly a year, the two witnesses had no availability!? Incredible. Now, however, Heartland cannot spare Forest River a few weeks to investigate information Heartland knew or should have known for over a year.

Heartland continues, on pages 6 - 7 of the Response, asserting that if Forest River finds evidence which refutes Mr. Taylor's conclusions, it cannot use that "after-acquired evidence" to invalidate the report because Mr. Taylor has the right and obligation to amend his report. The logical absurdity of this is clear, of course: by that reasoning, no expert report could then ever be objected to since the expert could always "fix" the report. The reality is that if the report is clearly erroneous because it lacks sufficient facts or proper methodology foundations it can certainly be barred from admissibility since it fails to meet the standards of F.R.E. 702. The report is not "saved" somehow because it could be "fixed;" the "fixed" report is a different report. Further, the supplementation rules do not provide an end run to let a party present a report that is substantially different. *Keener v. United States*, 181 F.R.D. 639, 642 (D. Mont. 1998). More to the point, however, so what if Heartland does alter its report, so long as the new report is accurate! That would give us all the more reason to get the discovery we need to set Mr. Taylor straight.

Finally, and ironically, the oft-repeated plea of Heartland, "Discovery is over! No more!" is rebutted by its own expert. As pointed out by Heartland itself at page 10 of the Response, Mr. Taylor's opinion was expressly only preliminary, "Because discovery is ongoing." That report was served on November 20, 2009. Discovery was "ongoing" even 20 days after the Court ordered it to stop. Mr. Taylor himself contemplated "product of further documents, deposition testimony, submissions of expert reports by experts for defendant." How, unless everyone understood that by

Heartland's late game play, discovery would in all fairness have to continue?

Conclusions:

The criterion set forth in the Scheduling Order for continuances has clearly been met and due process and common sense require that Forest River be given the information it needs to investigate and object to Heartland's late Expert Report, assuming that Report is not impermissible "rebuttal" in the first place. Accordingly, Heartland's objections are without merit and the present motion should be granted.

Dated: January 14, 2010

Respectfully submitted,

s/Ryan M. Fountain

_____
Ryan M. Fountain (8544-71)
    *RyanFountain@aol.com*
420 Lincoln Way West
Mishawaka, Indiana  46544
Telephone: (574) 258-9296
Telecopy: (574) 256-5137
ATTORNEY FOR DEFENDANT

**Certificate of Service**

I certify that on January 14, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, which sent notification of such filing to all of the parties through at least the following counsel of record:

    David P. Irmscher    david.irmscher@bakerd.com
    Abigail M. Butler    abidgail.bulter@bakerd.com

                              s/Ryan M. Fountain
                              Ryan M. Fountain
                              ATTORNEY FOR DEFENDANT

# EXHIBITS

| | |
|---|---|
| Exhibit Q | Rule 30(b)(6) Notice of Deposition of Heartland - May 4, 2009 |
| Exhibit R | Excerpt of Hoffman Deposition - June 17, 2009 |
| Exhibit S | Excerpt of Taylor Deposition - November 30, 2009 |
| Exhibit T | Email correspondence of September 22, 2009 between counsel for the parties |
| Exhibit U | Excerpt of Taylor Deposition - November 30, 2009 |
| Exhibit V | Email correspondence of January 14, 2009 between counsel for Forest River and Barnes & Thornburg |
| Exhibit W | Heartland internal memo between named inventors to the patent |
| Exhibit X | Excerpt of Taylor Deposition - November 30, 2009 |