# UNITED STATES DISTRICT COURT
### Northern District of Indiana
### South Bend Division

HEARTLAND RECREATIONAL      )
VEHICLES, LLC,                    )
        Plaintiff,           )
                           )     CASE NO.:3:08-cv-490 TLS
      v.                    )
                           )
FOREST RIVER, INC.,       )        JURY DEMAND
        Defendant.

## FOREST RIVER'S MOTION TO COMPEL DOCUMENT PRODUCTION FROM HEARTLAND AND BAKER & DANIELS

<u>Summary of the Motion:</u>

Forest River requests that this Court order Heartland to produce for inspection and copying its documents showing the bills received from attorneys and others which relate to the application for the patent in suit, including any prior art investigations or searches concerning the invention(s) of that patent.

Forest River further requests this Court to order Heartland's attorneys, Baker & Daniels, to produce for inspection and copying the relevant time diaries of all attorneys involved with the patent in suit and the documents showing the firm's policies and practices with respect to time diaries, record retention, and advice given to clients concerning information disclosure to the United States Patent and Trademark Office ("USPTO").

As explained in more detail with respect to a pending motion (see, DE#82 and #86), this information is needed to verify the deposition testimony of Mr. Gallagher and Mr. Cooper, to refresh

1

their recollections (in the completion of their depositions) about matters they had testified as having no memory of, and to discover the source of prior art references found in Mr. Cooper's files, as well as to uncover the scope and content of the knowledge of Heartland and Baker & Daniels about relevant and material information not given to the USPTO during prosecution of the application for the patent in suit.

Forest River has made numerous attempts to resolve this dispute through conferences with Heartland's counsel, none of which have been successful. Heartland strongly opposes this motion. A proposed form of order is submitted to chambers via email concurrently herewith.

The Missing Documents: First, the Smoking Gun Search Report:

As has been discussed in prior filings with this Court (see, for example, DE#82 at pages 6 - 7, DE#85 at footnote 5 on page 5, and DE#86 at page 7 - 8), there is a missing Search Report. Briefly, some prior art patents were "found" by Mr. Cooper in his file for the Heartland patent application. Strangely enough, he does not know how they got in his files, at least according to his deposition testimony thus far. Obviously, "someone" conducted a "search" of the prior art and put those documents into Mr. Cooper's files. Mr. Cooper then filed those patents with the USPTO as part of an Information Disclosure Statement under 37 CFR §1.56. However, those patents raise questions that may be key to the inequitable conduct issues in this case.

For example, the temporal scope of those disclosed patents was unusually limited in scope: to only a 20 year term. However, that is directly contrary to the usual practice in patent prosecution of disclosing all prior art as far back in time as can be accomplished. See, for example, the multiple pages of "References Cited" in Exhibit A from a prior RV-related patent by Barnes & Thornburg.

2

Disclosing all the relevant prior art known as far back in time as can be accomplished is generally regarded as a means of strengthening the "presumption of validity" under 35 U.S.C. §282. Accordingly, this suggests either that the "search" was expressly limited in time or that only part of the search results was given to the USPTO.  However, since Heartland expressly informed its attorneys that it wanted a "defensible" patent, Exhibit B, it is unlikely that the search would be so narrowly limited.  The most likely conclusion then is that only part of the search results was disclosed to the USPTO.

What could have been withheld from the missing portion of the search report?  A landmine. Normally, when conducting an investigation into prior art, if you find a prior patent to be relevant, such as U.S. Patent No. 6,343.830, which Mr. Cooper did disclose to the USPTO, you then look at the prior patents cited in that patent to see if more relevant patents can be found from even earlier in time.  As it turns out, the very first patent cited in the '830 patent, was U.S. Patent 2,322,841.  The '841 patent shows, in Figures 1 and 14, a nearly identical trailer frame to what Heartland claims as its invention (Compare Exhibit C with Exhibit D, at Claim 1 - col 8; lines 49 - 60 ).  Accordingly, under 35 U.S.C. §102(b) the claims of the Heartland patent application would have been refused by the USPTO if the '841 patent had been disclosed.  That makes the '841 patent highly relevant and material evidence under 37 CFR §1.56.

The remaining question is, was it or should it have been known to Heartland or someone acting on Heartland's behalf?  The best way to find out is to find out who did the search and see what reports or correspondence were created with respect to the search.  If the '841 patent was in that search report, then someone on Heartland's behalf unquestionably engaged in inequitable conduct, if not common law fraud itself.  *See, e.g., Elk. Corp. of Dallas v. GAF Building Materials Corp.*, 168

3

F. 3d 28, 32, (Fed. Cir. 1999), *cert. Denied,* 120 S. Ct. 178 (1999)(search report showed both that withheld prior art was material and that the withholding was intentional).  On the other hand, if the person doing the search was specifically instructed not to look past the 20 year point in time, then whoever gave that instruction was engaged in inequitable conduct by "cultivating ignorance."  *See FMC Corp. v. Hennessy Ind., Inc.*, 836 F. 2d 521, 526 (Fed. Cir. 1987)("As a general rule, there is no duty to conduct a prior art search ... However, one should not be able to cultivate ignorance . . . merely to avoid actual knowledge of that information or prior art").

Heartland asserts that "Forest River's attempts to obtain a "search report" are futile." DE#85 at page 5.  It is more accurate to say, those efforts have not yet succeeded, thanks to Heartland and Baker & Daniels refusing to comply with discovery.  However, we know a search was done, because patents were found and placed in Mr. Cooper's file, and we know the usual practice of such searches involves correspondence or reports of some sort, as least as typified by the practice of Heartland's own expert witness.  Exhibit E.  We also know that legal services, prior art searches included, are probably not done for free, so some bill must have been sent for those services.  Further, we know (since some of them have been produced to Forest River) that when Heartland's attorneys did legal work for Heartland, the attorneys kept time diaries.


On the Trail of the Smoking Gun: Heartland's Bills:

Starting on December 14, 2008, Forest River requested all such correspondence and billing statements from Heartland which relate to the invention of or application for patent in suit (Exhibit F, Request #9 and Exhibit G, Request #32 - ". . .billing statements").  At no time, did Heartland or anyone else on behalf of Heartland provide any such billing statements or any documentation about

the search for prior art that ended up with patents in Mr. Cooper's files.

Instead, Heartland raised a wide variety of objections to these requests, for example, initially stating the information sought was privileged, that the request was premature, and that it would produce the documents which are relevant if a protective order was entered.  Exhibit H.  However, later when a protective order was entered, no such documents were produced.  Further, after Heartland expressly waived the attorney-client privilege in connection with preparation and prosecution of the patent application (at the depositions of Mr. Cooper and Mr. Gallagher), it still produced no such documents.  Further, when the late depositions of Mr. Cooper and Mr. Gallagher revealed that they had not complied with the deposition subpoenas by producing the required documents at or before their depositions and Forest River specifically requested the missing documents from Heartland, substantially the same objections were raised, as well as a new timeliness claim (despite the fact that the late deposition scheduling was of Heartland's making) .  Exhibit I.

There is no merit to any of Heartland's objections.  The bills are not privileged in that they are not communications from a client to an attorney seeking advice or a response thereto giving that advice, and Heartland (the party bearing the burden of proof as to any claim of privilege) has not shown otherwise.  If they were privileged, Heartland was required to provide more specificity about the documents under Fed. R. Civ. P. 26(b)(5)(A)(ii), but did not do so.  Whatever was privileged was expressly waived when Heartland waived issues related to the prosecution of the patent.  To say the prior art search was done as part of an "infringement" investigation rather than as part of a "patentability" investigation does not exempt the search results from disclosure under 37 CFR §1.56 since the information was clearly relevant and material to the prosecution of the patent application at the time that application was being examined by the USPTO.  The information sought is clearly

relevant to the discovery of who did the search and what happened to the search report, and should thereby be produced for Forest River under Fed. R. Civ. P. 26(b)(1).

On the Trail of the Smoking Gun: Baker & Daniels Time Diaries:

Who did the search is not known yet, but, as Heartland admits (DE#85 at footnote 5 on page 5), Mr. Cooper testified that it could have been an informal search by an attorney or a professional search company. Professional search companies are typically hired by attorneys who review the results of their search. See Exhibit E. Either way, it seems likely that an attorney had his hands on that search report or the patents therein prior to the patents somehow appearing in Mr. Cooper's patent application file.

Barnes & Thornburg was subpoenaed to turn over the time diaries of all its attorneys who were involved in the patent application. It did so. No record was found of any such attorney having any involvement with Heartlands' prior art search or the discovery of the mysteriously appearing patents in Mr. Cooper's file. Baker & Daniels was similarly subpoenaed for that information. Exhibit J. In contrast, Baker & Daniels produced only redacted copies of the time entries of two of its attorneys, but not anything about another attorney, James Brotherson. As it turns out, however, Mr. Brotherson's fingerprints are all over this case.

As for the redacted entries, those of Mr. Gallagher point the way to something that has been withheld which appears to relate to the missing search report. For example, Exhibit K shows Mr. Gallagher's first time entries having to do with the patent application, dating to February 22, 2005. This is over two years before the patent issued and prior to the claims of the patent being allowed by the USPTO. This is at a time when infringement of the patent was only speculative at best, since

no patent even existed. Nonetheless, even back then Mr. Gallagher's third entry on this case, dated to May 25, 2005, was to "confer with Mr. Brotherson regarding results." Results of what? Mostly likely the results of a prior patent search. Nothing else makes sense in the context of a patent application. In Rule 37.1 discussions with Mr. Irmscher over this point, he suggested that was referring to something related to other work being done for Heartland, such as infringement claims. However, only the redacted portions could confirm or deny that.

Morever, it does not matter if it did. If Mr. Gallagher discovered relevant prior art incident to an infringement search, since he personally was "associated" with the prosecution of the patent application at the same time, he was personally bound to his duty of "candor and good faith" under 37 CFR §1.56, and personally was required to make the disclosure to the USPTO. In addition, there is no attorney-client privilege to keep a prior art search confidential regardless of the purpose of that search when the existence of the search itself is in issue. Also, Baker & Daniels' claim to privilege lacks credibility due to its failure to comply with the disclosure scheduling requirements of Fed. R. Civ. P. 26(b)(5)(A)(ii).

In addition, even though Mr. Gallagher's time entries show Mr. Brotherson was involved in the patent prosecution, Baker & Daniels did not produce any of Mr. Brotherson's time entries at all. We know from correspondence to third parties that Mr. Brotherson was involved in the patent application and threats to third parties of infringement of that patent application even before the patent issued. Exhibits L and M. In fact, it is well established that Mr. Brotherson was intimately involved in Heartland from its very formation, and including its various refinancing transactions that involved valuation of the patent application and the so-called "$7,000,000" collateral discussed elsewhere in this case (see, for example, DE#82 at footnote 6 on page 11). It is not unreasonable to

7

assume that Mr. Brotherson may have been involved in having the patent search done, even if it was initially done for another purpose, be it infringement analysis or patent valuation.

Accordingly, we have no bills from Heartland, and we have only partial time diaries from Baker & Daniels. The rest of the time diaries should be produced to allow us to track down who did the search. By definition, there is no attorney-client privilege as to diary entries since they are not communications with a client, and Baker & Daniels has not met its burden of showing otherwise. To the extent they are work product, that privilege is not absolute and the burden of establishing that has also not been met by Baker & Daniels. In either event, facts and information discovered (as by a search for prior art) are not covered by either privilege. The information Forest River seeks is clearly relevant to a major issue in the lawsuit, and the mechanism for seeking that information is reasonable under these circumstances.

Therefore, the trail of the Smoking Gun points back to the persons who most likely handled that "gun" at some point in time, the attorneys at Baker & Daniels and Heartland itself. They should be required now to produce the documents so requested.

Missing Documents: the Firm Policy and Procedure Manuals:

At the same time that Forest River sought the time diaries from Baker & Daniels, it also requested by subpoena:

> 5. Copies of documents sufficient to show the firm's policies, if any, with respect to accurate time diary reporting, destruction of patent file documents prior to litigation, informing patent applicants of 37 CFR 1.56, the patent applicant's duty of disclosure to the USPTO, inventorship, the definition and scope of prior art, and/or the advisability and/or nature of available prior art searches, but only to the extent that such policies were observed prior to October 10, 2007.

Exhibit J, page 4.  Again, while Barnes & Thornburg made the effort to comply with this request, Baker & Daniels abjectly refused, claiming, for example, that it was irrelevant and privileged.

Clearly however, the policies regarding accurate keeping of time diaries and record retention are relevant when the issue is: what happened to the missing search report and who created it, as shown in the time diaries.  Secondly, as explained in regard to briefing about Forest River's Objections to Heartland's expert witness (see DE#82 at page 8):

> The attorney witnesses testified that although they did not recall specific discussions with the Heartland inventors, they were sure they followed their standard practices. See, for example, Exhibit I.  Mr. Taylor concluded that they probably did as well. Such documents are likely to show what the standard practices really were and if they were followed in this case.

Simply put, when a former partner in Baker & Daniels, Mr. Gallagher, testifies that while at that firm he was merely following the firm's standard practices and policies about notifying the inventors of their duty of disclosure, inventorship, etc., he has affirmatively put those standard practices and policies in issue in the lawsuit.  Forest River is then entitled to test the accuracy of his testimony and, thereby Mr. Gallagher's credibility, by checking to see what the standard practices and policies really were at that time.  Whether or not Mr. Gallagher was accurate or what his firms's standard policies and practices were is also relevant as to the admissibility of Mr. Taylor's Expert Report and testimony, as explained further in pending motions, such as DE#82.

Once again, despite asserting various privileges against disclosure of this information, Baker & Daniels has done nothing to comply with Fed. R. Civ. P. 26(b)(5)(A)(ii) or carry forward its burden of proof as to the validity of the privilege claim.  Accordingly, at this point in time Forest River reserves response in that regard for a Reply, if need be.

Accordingly, Baker & Daniels should be required to comply with ths production request as

well.


Dated: February 1, 2010                        Respectfully submitted,

                                               s/Ryan M. Fountain

                                               _____
                                               Ryan M. Fountain (8544-71)
                                                   *RyanFountain@aol.com*
                                               420 Lincoln Way West
                                               Mishawaka, Indiana  46544
                                               Telephone: (574) 258-9296
                                               Telecopy: (574) 256-5137
                                               ATTORNEY FOR DEFENDANT


**Certificate of Service**

        I certify that on February 1, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, which sent notification of such filing to all of the parties through at least the following counsel of record:

        David P. Irmscher        david.irmscher@bakerd.com
        Abigail M. Butler        abidgail.bulter@bakerd.com

                                               s/Ryan M. Fountain
                                               Ryan M. Fountain
                                               ATTORNEY FOR DEFENDANT

10

# INDEX OF EXHIBITS

Exhibit A      Excerpt from U.S. Patent 7,234,747, contemporaneous with the patent in suit and prosecuted by the same law firm.

Exhibit B      Copy of Email of March 14, 2005 from Scott Tuttle to Greg Cooper

Exhibit C      Excerpts of U.S. Patent 2,322,841

Exhibit D      Excerpts of U.S. Patent 7,278,650

Exhibit E      Excerpts of November 30 , 2009 Jay Taylor deposition transcript

Exhibit F      Excerpt of Forest River Production Request of December 14, 2008

Exhibit G      Forest River Production Request of November 20, 2009

Exhibit H      Excerpts of Heartland's Response to Forest River's Production Request #9

Exhibit I      Excerpts of Heartland's Response to Forest River's Production Request #32

Exhibit J      Subpoena issued to Baker & Daniels

Exhibit K      Excerpts of time diaries of Mr. Gallagher while at Baker & Daniels

Exhibit L      Exemplary correspondence involving Mr. Brotherson, note CC

Exhibit M      Exemplary correspondence involving Mr. Brotherson