# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| HEARTLAND RECREATIONAL VEHICLES, LLC, ) ) ) | |
| Plaintiff/Counter-Defendant, ) ) | |
| v. ) ) | CAUSE NO.: 3:08-CV-490-TS |
| FOREST RIVER, INC., ) ) | |
| Defendant/Counter-Claimant. ) | |

## OPINION AND ORDER

The Plaintiff/Counter-Defendant (hereinafter "the Plaintiff") initiated this lawsuit claiming that the Defendant/Counter-Claimant (hereinafter "the Defendant"), one of its competitors, infringed United States Patent No. 7,278,650 (the '650 patent), which had been issued to the Plaintiff. The Defendant counterclaimed alleging *inter alia* that no infringement occurred and that the '650 patent is invalid and unenforceable. The Plaintiff apparently now wants this litigation to come to an end and has filed a Motion to Dismiss Certain Claims for Lack of Subject Matter Jurisdiction in Light of Covenant Not to Sue [DE 42] and a Motion for Voluntary Dismissal Pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure [DE 54].[1] In the former Motion, the Plaintiff seeks dismissal of the Defendant's counterclaims alleging invalidity, non-infringement, and unenforceability for lack of subject-matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) based upon a Covenant Not to Sue. In this Covenant, the Plaintiff agreed not to sue the Defendant "now or in the future for liability for infringement" related to the '650 patent regarding the Defendant's "currently existing products,

---

[1] The Court previously denied the Plaintiff's Motion to Dismiss the Defendant's Lanham Act Counterclaim [DE 12] and Motion to Dismiss the Defendant's Criminal Deception Counterclaim [DE 33]. (*See* Mem. Opinions & Orders, DE 32 & 40.)

whether such products are currently existing or manufactured in the future." (DE 43-2, Ex. A.) The Plaintiff asserts that no controversy remains between the parties sufficient to invoke the jurisdiction of this Court to decide the Defendant's counterclaims alleging invalidity, non-infringement, and unenforceability of the '650 patent. In the latter Motion, the Plaintiff seeks to have its claim of infringement related to the '650 patent dismissed without prejudice. Additionally, in their submissions, each party attributes various misdeeds to the other for its conduct in this litigation, and each is suspicious of the other. However, based upon the existing record, the Court is not in a position to evaluate whether the allegations of misdeeds are well-founded in fact, and the Court will focus more narrowly on the legal issues presented in the pending Motions.

For the reasons stated in this Opinion and Order, the Court will deny the Plaintiff's Motion to Dismiss Certain Claims for Lack of Subject Matter Jurisdiction in Light of Covenant Not to Sue and grant the Plaintiff's Motion for Voluntarily Dismissal Pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.

## BACKGROUND

In September 2007, the Plaintiff sent letters to two of the Defendant's suppliers, Global Composites and Lippert Components, accusing them of activity that may infringe on the '650 patent, which involves a travel trailer with an improved turning radius. (*See* Def.'s Mem. in Opp'n 3–4, 6–7, DE 48; Ex. K, DE 48-12; Ex. L, DE 48-13.) These letters informed the Defendant's suppliers of the Plaintiff's intent to assert its rights related to the patent. In response, Global Composites denied the Plaintiff's claim that the suppliers were infringing on the patent.

(*See* Def.'s Mem. in Opp'n, Ex. L, DE 48-13.) On October 9, 2007, the '650 patent was issued. (Compl., Ex. A, DE 1-2.)

Over one year later, on October 24, 2008, the Plaintiff filed its Complaint [DE 1] against the Defendant, a direct competitor, broadly alleging infringement of the '650 patent, "either directly or contributorily, by making, using, selling, offering for sale, or supplying travel trailers, including [the Defendant's] Silverback product," in violation of 35 U.S.C. § 271 *et seq*. (Compl. ¶ 11, DE 1.) The Defendant's suppliers were not named as parties to the action. On November 17, the Defendant filed an Answer, Affirmative Defenses, and Counterclaims [DE 6]. In its Answer, the Defendant included prior art relevant to the Plaintiff's '650 patent. On January 29, 2009, the Defendant filed an Amended Answer, Defenses, and Counterclaims [DE 25], seeking declarations that it has not infringed the '650 patent and that the patent is invalid and unenforceable (Am. Answer, Defenses, & Countercls. ¶¶ 62–70, DE 25), claiming that the Plaintiff has infringed the Defendant's trademark rights under 15 U.S.C. § 1125 (Am. Answer, Defenses, & Countercls. ¶¶ 71–84, DE 25), and alleging that the Plaintiff is liable for criminal deception under Indiana Code § 34-24-3-1. (Am. Answer, Defenses, & Countercls. ¶¶ 85–89, DE 25). The Defendant has also requested attorney's fees under 35 U.S.C. § 285 on account of the Plaintiff's alleged fraudulent and inequitable conduct. (Am. Answer, Defenses, & Countercls. ¶ 61, DE 25.)

Meanwhile, based upon the '650 patent, the Plaintiff has apparently filed two continuation patent applications identified as Serial Numbers 11/834,214 and 12/315,894 (continuation patents) before the United States Patent and Trademark Office (USPTO) seeking broader protection of its patent rights. (Am. Answer, Defenses, & Countercls. ¶ 53, DE 25.) As

to the 11/834,214 application, the Plaintiff filed a terminal disclaimer to overcome rejection of the case under the doctrine of "double patenting,"[2] (Def.'s Mem. in Opp'n, Ex. H, DE 48-9; Am. Answer, Defenses, & Countercls. ¶ 53, DE 25), and on July 29, 2009, the USPTO announced the issuance of United States Patent No. 7,575,251, with an issue date of August 18, 2009. (Def.'s Resp., Ex. B, DE 55-3.) The Plaintiff has not sought leave of the Court to amend its Complaint to allege infringement of any new patent.

On May 11, 2009, the Plaintiff filed a Motion to Dismiss Certain Claims for Lack of Subject Matter Jurisdiction in Light of Covenant Not to Sue [DE 42], seeking the dismissal of the Defendant's counterclaims alleging invalidity, non-infringement, and unenforceability. Attached to the Plaintiff's Memorandum in Support is a Covenant Not to Sue that is signed by its president and dated May 5, 2009. (Pl.'s Mem. in Supp., Ex. A, DE 43-2.) The Covenant states:

> Heartland Recreational Vehicles, LLC, the owner and assignee of U.S. Patent No. 7,278,650, hereby covenants not to sue Forest River, Inc. now or in the future for liability for infringement of any claim of U.S. Patent No. 7,278,650 with respect to Forest River, Inc.'s currently existing products, whether such products are currently existing or manufactured in the future.

*Id*. The Plaintiff has admitted that it "no longer wishes to pursue its infringement claims against Forest River." (Pl.'s Mem. in Supp. 1, DE 43.) Three months later, on August 10, 2009, the

---

[2] The District of Minnesota summarized the use and effect of terminal disclaimers in the following:
> Terminal disclaimers are a means of overcoming a rejection based on "non-statutory double patenting," a doctrine under which a continuation patent can be held to be obvious (and therefore invalid) in light of a related patent that issued earlier from the same application as the continuation patent. By means of a terminal disclaimer, the patentee gives up ("disclaims") any portion of the continuation patent's term that exceeds the term of the related patent.

*Regents of the Univ. of Minn. v. AGA Med. Corp.*, No. 07-CV-4732, 2009 WL 3164778, at *1 (D. Minn. Sept. 29, 2009) (citing *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1377–78 (Fed. Cir. 2003)) (additional citations omitted). A terminal disclaimer operates to tie the affected patents together such that they expire on the same date and are enforceable only during the time period in which they share the same owner. *See* 3A Donald S. Chisum, Chisum on Patents § 9.04[5] (2006). The filing of a terminal disclaimer is not a concession that the subsequent patent is invalid for obviousness-type or non-statutory double patenting. *See Pharmacia Corp. v. Par Pharm., Inc.*, 417 F.3d 1369, 1374 (Fed. Cir. 2005); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 942 (Fed. Cir. 1992).

Plaintiff filed a Motion for Voluntarily Dismissal Pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure [DE 54], seeking the dismissal of its patent infringement claim against the Defendant without prejudice.

## DISCUSSION

As noted above, the Plaintiff has filed two separate Motions to Dismiss, the first relating to the Defendant's counterclaims of invalidity, non-infringement, and unenforceability, and the other relating to its own patent infringement claim against the Defendant. The Court will address each Motion in the order in which they were filed.

### A.  The Plaintiff's Motion to Dismiss Certain Claims for Lack of Subject Matter Jurisdiction in Light of Covenant Not to Sue [DE 42]

The Plaintiff has asked the Court to dismiss the Defendant's counterclaims that seek declarations that Defendant has not infringed the '650 patent and that the patent is invalid and unenforceable. The Plaintiff believes that the effect of the Covenant Not to Sue is to deprive this Court of subject-matter jurisdiction over these counterclaims. The Defendant disagrees, arguing that the Covenant Not to Sue does not remove this Court's jurisdiction over its claim for attorney's fees under 35 U.S.C. § 285 on account of the Plaintiff's allegedly fraudulent and inequitable conduct, and that the Covenant does not eliminate jurisdiction over its declaratory judgment counterclaims because a substantial controversy of sufficient immediacy and reality under the totality of the circumstances exists. The Defendant supports these arguments with the following contentions: the Covenant Not to Sue covers only "currently existing products" but does not cover "future products"; the Covenant is a deliberate sham, and the Plaintiff breached

its Covenant by failing to seek dismissal of its own infringement claim when it sought dismissal of the Defendant's counterclaims; the Plaintiff's president does not know whether the Covenant was meant to cover the Defendant's Silverback frame; the Plaintiff has never disclosed which of the Defendant's chassis or frames it considers to be an infringement of the '650 patent; the Plaintiff's conduct has thwarted the Defendant's ability to develop and add new products; the Plaintiff, although apparently agreeing not to sue the Defendant directly, has not fundamentally changed its intention to enforce its patent against the Defendant's interest because it continues to threaten infringement claims (and has not backed off of threats) against the Defendant's suppliers, whom the Plaintiff knows are indemnified by the Defendant,[3] and because it is using a "submarine" patent application to prepare for litigation against the suppliers;[4] the Plaintiff has threatened the Defendant's suppliers to send a message to the Defendant; the Plaintiff has apparently told one of the Defendant's suppliers to be sure to get a hold harmless agreement from the Defendant; and the Plaintiff's continuation patents are based upon the same invention disclosure as the '650 patent.

---

[3] While the record does not include any contract in which the Defendant agrees to indemnify any supplier, the deposition testimony provided allows this Court to assume for the purposes of this ruling that Lippert has an indemnity agreement with the Defendant. (Def.'s Mem. in Opp'n 4, DE 48; Ex. M at 239–41, DE 48-14.)

[4] One district court has explained a "submarine" patent or patent application as follows:
> "Patents that remain 'submerged' during a long *ex* parte examination process and then 'surface' upon the grant of the patent have been labeled 'submarine patents.' * * * A holder of a 'submarine patent' may be able to demand high royalties from non-patent holders who invested and used the technology not knowing that a patent would later be granted. . . . Congress addressed the perceived problem of 'submarine' patents by amending the patent term provision in the Patent Act . . . ."
> *Discovision Assocs. v. Disc Mfg., Inc.,* 1997 WL 309499, *13 n. 11 (D. Del.1997); *see also Ricoh Co., Ltd. v. Nashua Corp.,* 185 F.3d 884, 1999 WL 88969, * 3 (Fed. Cir.1999) (describing submarine patent as "the use of continuation applications to claim previously disclosed but unclaimed features of an invention many years after the filing of the original patent application").

*Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 49 n.3 (D.D.C. 2000).

1.      *The Applicable Jurisdictional and Procedural Standards*

Before turning to the issue posed by the Plaintiff's Covenant, it is important to begin with some of the applicable jurisdictional and procedural standards. The substantive law of the Federal Circuit controls all issues of substantive patent law in this case, but Seventh Circuit law applies to any purely procedural questions. *Showmaker v. Advanta USA, Inc.*, 411 F.3d 1366, 1367 (Fed. Cir. 2005) (citing *C & F Packing Co., Inc. v. IBP, Inc.*, 224 F.3d 1296, 1306 (Fed. Cir. 2000)). Federal courts "are courts of limited jurisdiction and may only exercise jurisdiction where it is specifically authorized by federal statute." *Evers v. Astrue*, 536 F.3d 651, 657 (7th Cir. 2008) (citations omitted). A case may be dismissed under Federal Rule of Civil Procedure 12(b)(1) when the court lacks jurisdiction over the subject matter, and "[s]ubject-matter jurisdiction is the first question in every case." *Ill. v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998). Additionally, "[s]ubject-matter jurisdiction is so central to the district court's power to issue any orders whatsoever that it may be inquired into at any time, with or without a motion, by any party or by the court itself." *Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The Plaintiff in the Complaint premises this Court's subject-matter jurisdiction on 28 U.S.C. §§ 1331 and 1338(a), and the Defendant in the Amended Answer admits the jurisdictional allegations of the Complaint. The Defendant's counterclaims related to the '650 patent would similarly be premised on 28 U.S.C. §§ 1331 and 1338(a) (or would be so related to the Plaintiff's patent infringement claim that it forms part of the same case or controversy so as to bring it within 28 U.S.C. § 1367(a)), although the Amended Answer assumes such without

expressly alleging it.[5] In the pending Motion to Dismiss for Lack of Subject Matter Jurisdiction and the related materials, the parties direct the Court's attention to allegations in the pleadings and to a number of exhibits, some of which were attached to the pleadings and some of which are outside the pleadings. *See* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). When considering a motion to dismiss for lack of subject-matter jurisdiction, a court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the non-movant, but it may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003). When a complaint is formally sufficient but a contention is made that the court lacks subject-matter jurisdiction, the movant may use affidavits and other material to support its motion. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). The plaintiff has the obligation to establish jurisdiction by competent proof. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). The presumption of correctness accorded to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question. *Id.* at 856.

---

[5] In their submissions related to the two Motions to Dismiss, the parties do not make an issue of the Court's subject-matter jurisdiction over the Defendant's counterclaims for trademark infringement and criminal deception, which appear to be unaffected by the Covenant Not to Sue. (*See* Pl.'s Mem. in Supp. 3 & n.1, DE 43; Def.'s Mem. in Opp'n 5, DE 48.) The Amended Answer, Defenses, and Counterclaims premises this Court's subject-matter jurisdiction over the Defendant's trademark infringement claim on 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and over the Defendant's criminal deception claim on 28 U.S.C. § 1367(a). (Am. Answer, Defenses, & Countercls. ¶¶ 71, 85, DE 25.)

In their pleadings, the Plaintiff and the Defendant have both sought declaratory relief as to their respective rights regarding the '650 patent. Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). This Act "has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants," and in passing this Act, "Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 288 (1995).

"A party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of proving that the facts alleged, '"under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."'" *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941))); *see also Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (discussing the cases and controversies requirement in the context of the Declaratory Judgment Act). The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and "real and substantial," and must "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (quotation marks and citation omitted).

The Federal Circuit has instructed:

> Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do. . . . [W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where the party contends that it has the right to engage in the accused activity without a license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). "A useful question to ask in determining whether an actual controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff." *Benitec*, 495 F.3d at 1344. "'Without an underlying legal cause of action, any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction.'" *Id.* (quoting *Microchip Tech. Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 943 (Fed. Cir. 2006)).

The party claiming declaratory judgment jurisdiction bears the burden of establishing that subject-matter jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since. *Benitec*, 495 F.3d at 1344 (citing *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)) (other citations omitted). When a party has actually been charged with infringing a patent, "'there is, *necessarily*, a case or controversy adequate to support jurisdiction' at that time." *Id.* (quoting *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993)) (emphasis in original). Furthermore, "once that burden has been met, *absent further information*, that jurisdiction continues." *Id.* at 1344–45 (citing *Cardinal Chem.*, 508 U.S. at 98) (emphasis in *Benitec*). Although the burden of bringing forth such further information may logically rest with the party challenging jurisdiction, the actual burden of proof remains with the party seeking to invoke jurisdiction. *Id.* at 1345. In federal cases, "an actual controversy must be extant at all

stages of review, not merely at the time the complaint [was] filed." *Id.* (citing *Steffel*, 415 U.S. at 459 n.10).

2.      *The Covenant Not to Sue*

Because the Defendant has been charged with infringement of the '650 patent, there was a case or controversy adequate to support jurisdiction when the Defendant asserted counterclaims for invalidity, non-infringement, and unenforceability. However, since that time, the Plaintiff has executed a Covenant Not to Sue, but the parties have differing views as to the effect of that Covenant.

Under Federal Circuit precedent, a properly executed covenant not to sue for infringement moots a controversy regarding infringement and eliminates subject-matter jurisdiction over claims for declaratory relief as to invalidity and unenforceability that are within the scope of the covenant. *See Revolution Eyewear, Inc. v. Aspex Eyewear Inc*., 556 F.3d 1294, 1297 (Fed. Cir. 2009); *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1033 n.1 (Fed. Cir. 2006). The Court must now consider whether its jurisdiction continues over these counterclaims by analyzing the specific terms of the Covenant Not to Sue to determine what is covered by the Covenant and whether it will divest the Court of jurisdiction. *Revolution Eyewear*, 556 F.3d at 1297.

In responding to the Defendant's argument that the Court still has jurisdiction over its counterclaims, the Plaintiff draws the Court's attention to *Dodge-Regupol, Inc. v. RB Rubber Prods., Inc.*, 585 F. Supp. 2d 645 (M.D. Pa. 2008), and that court's reliance on *SanDisk Corp.*, 480 F.3d 1372. The Plaintiff, however, fails to appreciate that the terms of the Covenant it

drafted and executed vary from the terms of the covenant in *Dodge-Regupol*, which promised

that Dodge-Regupol would not "sue RB [Rubber] in the future for infringement of any claim of

the '723 patent with respect to any of RB [Rubber]'s currently existing products *or activities*."

*Id.*, 585 F. Supp. 2d at 649 (quoting the record) (emphasis added). In the Plaintiff's Covenant, it

promises "not to sue [the Defendant] now or in the future for liability for infringement of any

claim of U.S. Patent No. 7,278,650 with respect to [the Defendant's] currently existing

products," but it makes no promise regarding the Defendant's activities, even though the

Complaint focuses on the Defendant's activities and only generally refers to "travel trailers,

including [the Defendant's] Silverback product."[6] The Court also notes the terms of the covenant

reviewed in *Revolution Eyewear*, which provided that the patentee "*unconditionally* covenants

not to sue [the allegedly infringing party] for patent infringement under the '913 patent based

upon any *activities* and/or products made, used, or sold on or before the dismissal of this

action."[7] *Id.*, 556 F.3d at 1296 (emphasis added); *see also MedImmune, Inc. v. Genentech, Inc.*,

535 F. Supp. 2d 1000, 1005 (C.D. Cal. 2008) (citing *Benitec Australia*, 495 F.3d at 1345–48)

---

[6] It also bears noting that the Complaint cites 35 U.S.C. § 271 and incorporates the list of activities prohibited in § 271(a), which states that, "[e]xcept as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent." (Compl. ¶ 11, DE 1.) To this list, the Complaint adds the activity of supplying travel trailers and alleges both the direct infringement and the contributory infringement theories. *Id.*

[7] The declaration and covenant in *Highway Equipment Co.* stated:
> Highway Equipment Company, on behalf of itself and any successors-in-interest to [the '281 patent'], hereby unconditionally and irrevocably covenants not to assert at any time any claim of patent infringement including direct infringement, contributory infringement and/or inducing infringement against [FECO] under the '281 patent, as it currently reads, based on [FECO's] manufacture, use, offer for sale, or sale of
> > (1) any product that [FECO] currently manufactures; and/or
> > (2) any product that [FECO] manufactured prior to the date of this
> declaration.

*Id.*, 469 F.3d at 1030 (quoting the record). The covenant in *Benitec Australia* stated that Benitec Australia "covenants and promises not to sue Nucleonics for patent infringement arising from activities and/or products occurring on or before the date dismissal was entered in this action—September 29, 2005." *Id.*, 495 F.3d at 1343 (quoting the record).

(stating that, to eliminate jurisdiction over declaratory judgment claims, a covenant not to sue "need not cover potentially infringing activities in the future as long as it covers the past and present activities that constitute the 'actual controversy' between the parties"). The Plaintiff's Covenant, seemingly more narrow in scope than the covenants in *Dodge-Regupol* and *Revolution Eyewear*, is ambiguous, and it is not clear that it covers the past and present activities that constitute the actual controversy between the Plaintiff and the Defendant.

Beyond the terms of the Covenant, the totality of the circumstances, including the entirety of the relationship, must be kept in view. *See Revolution Eyewear*, 556 F.3d at 1297–98. In *SanDisk*, the Federal Circuit discounted a patentee's apparent promise not to sue and determined that a company official's statement did not divest the court of declaratory judgment jurisdiction. The court stated:

> We decline to hold that [the corporate officer's] statement that [it] would not sue SanDisk eliminates the justiciable controversy created by [its] actions, because [it] has engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights despite [the official's] statement. Having approached SanDisk, having made a studied and considered determination of infringement by SanDisk, having communicated that determination to SanDisk, and then saying that it does not intend to sue, [the patentee] is engaging in the kinds of "extra-judicial patent enforcement with scare-the-customer-and-run tactics" that the Declaratory Judgment Act was intended to obviate. *Arrowhead [Indus. Water, Inc. v. Ecolochem, Inc.]*, 846 F.2d [731,] 735 [(Fed. Cir. 1988)]. [The patentee's] statement that it does not intend to sue does not moot the actual controversy created by its acts. *See Md. Cas.*, 312 U.S. at 273 (jurisdiction obtained even though the defendant could not have sued the declaratory judgment plaintiff).

*SanDisk*, 480 F.3d at 1382–83.

The Defendant claims that it has a right to make and sell travel trailers, including the Silverback product, that it is not infringing the '650 patent, and that the '650 patent is invalid and unenforceable. The Defendant has also alleged fraudulent and inequitable conduct by the

Plaintiff relative to the '650 patent. The Defendant's activities and interests are not speculative. Furthermore, the Plaintiff has engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights. More than two years ago, the Plaintiff by counsel sent letters to two of the Defendant's suppliers, stating that it highly valued the '650 patent, that it intended to fully assert its rights in the patent, and that it was seeking broader protection of its intellectual property. The Plaintiff accused the Defendant of patent infringement before this lawsuit began, and counsel for the parties discussed their varied perspectives over the telephone and through written correspondence. The Plaintiff then filed this lawsuit claiming that the Defendant is infringing the '650 patent. After the Court denied two motions to dismiss filed by the Plaintiff seeking dismissal of the Defendant's Lanham Act and criminal deception counterclaims and after the Defendant filed an Amended Answer, Defenses, and Counterclaims, the Plaintiff filed its Motion to Dismiss Certain Claims for Lack of Subject Matter Jurisdiction in Light of Covenant Not to Sue and, three months later, its Motion for Voluntary Dismissal Pursuant to Rule 41(a)(2). Meanwhile, the Plaintiff filed two continuation patent applications based upon the '650 patent, seeking additional protection. The Plaintiff has now drafted and executed an ambiguous and limited Covenant Not to Sue, in part at least to have the Defendant's counterclaims alleging invalidity, non-infringement, and unenforceability dismissed.

Considering the totality of the circumstances, the Defendant's case against the Plaintiff is "of larger substance than merely a would-be competitor seeking to test the waters by way of an advisory judicial opinion on an adverse patent." *Revolution Eyewear*, 556 F.3d at 1299. Rather, there is a substantial controversy between the parties, who have adverse legal interests. The controversy is of sufficient immediacy and reality (as is evidenced by the pre-litigation

enforcement efforts of the Plaintiff, the pre-ligation discussion and correspondence between counsel for the parties, the dispute over the patent and the prior art, and the Covenant) to warrant declaratory relief. The dispute is definite and concrete, pertaining as it does to the validity and the enforceability of the '650 patent and to the Defendant's alleged infringement of the patent by making and selling travel trailers, including the Silverback product. The dispute is also amenable to specific relief through a decree of a conclusive character. For these reasons, the Court will deny the Plaintiff's Motion to Dismiss Certain Claims for Lack of Subject Matter Jurisdiction in Light of Covenant Not to Sue.

**B.       The Plaintiff's Motion for Voluntarily Dismissal Pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure [DE 54]**

Pursuant to Federal Rule of Civil Procedure 41(a)(2), the Plaintiff has asked the Court to dismiss its infringement claim against the Defendant without prejudice. Contending that the Plaintiff is simply trying to avoid an adverse decision on the validity and enforceability of the '650 patent, that the Covenant Not to Sue is a sham, and that the Plaintiff has caused the Defendant to incur expenses in defending against the Plaintiff's claim, the Defendant argues that the dismissal of the Plaintiff's claim should be with prejudice or conditioned on the Plaintiff accepting a consent order that the '650 patent is not valid and paying the Defendant's fees and costs.

Under Rule 41(a)(2), for an action to be dismissed at the plaintiff's request, it must be pursuant to a court order on terms that the court considers proper. Fed. R. Civ. P. 41(a)(2). Additionally, if a defendant has pleaded a counterclaim before service of the plaintiff's motion to dismiss, a court may dismiss the action over the defendant's objection only if the counterclaim

can remain pending for independent adjudication by the court. *Id*.

In ruling on the Plaintiff's Motion for Voluntary Dismissal, the Court will first address whether the Defendant's counterclaims can remain pending for independent adjudication and then whether the Plaintiff's claim should be dismissed with or without prejudice. The Federal Circuit has held that a request for a judicial declaration of non-infringement and invalidity of a patent is a compulsory counterclaim in a suit for infringement of the same patent. *See Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.,* 347 F.3d 935, 937–38 (Fed. Cir. 2003); *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.,* 200 F.3d 795, 802 (Fed. Cir. 1999); *Document Generation Corp. v. AllMeds, Inc.*, Civil No. 07-841, 2009 WL 2849076, at *2 (S.D. Ill. Sept. 1, 2009); *Avante Int'l Tech., Inc. v. Hart Intercivic, Inc.*, Civil No. 08-832, 2009 WL 2431993, at *4–5 (S.D. Ill. July 31, 2009). Under Seventh Circuit law, a counterclaim for a judicial declaration of non-infringement or invalidity of a patent asserted in an action for infringement of the patent is capable of independent adjudication and therefore does not preclude voluntary dismissal of the underlying infringement suit. *See Trico Prods. Corp. v. Anderson Co.*, 147 F.2d 721, 723 (7th Cir. 1945); *SmithKline Beecham Corp. v. Pentech Pharms., Inc.,* 261 F.Supp.2d 1002, 1004 (N.D. Ill. 2003) (Posner, J., sitting by designation).

The Defendant premises its counterclaims alleging non-infringement, invalidity, and unenforceability on 35 U.S.C. §§ 101, 102, 103, and 112 and its claim for attorney's fees on 35 U.S.C. § 285 based upon the Plaintiff's alleged fraudulent and inequitable conduct, and it premises its trademark infringement counterclaim on 15 U.S.C. § 1125. This Court has subject-matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 1121(a). The Defendant premises its criminal deception counterclaim on state law and alleged

conduct by the Plaintiff that relates to the Defendant's trademark infringement claim. This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a). Accordingly, the Court concludes that the Defendant's counterclaims in this case can remain pending for independent adjudication and do not prevent a voluntary dismissal of the Plaintiff's patent infringement claim under Rule 41(a)(2).

Dismissal under Rule 41(a)(2) is without prejudice, unless otherwise ordered by a court, and this suggests that the terms and conditions of dismissal should be for a defendant's benefit. *McCall-Bey v. Franzen*, 777 F.2d 1178, 1184 (7th Cir. 1985) (stating that the terms and conditions "are the quid for the quo of allowing the plaintiff to dismiss his suit without being prevented by the doctrine of res judicata from bringing the same suit again"). The purpose of the rule permitting voluntary dismissal is to allow a plaintiff "to take a voluntary nonsuit and start over so long as the defendant is not hurt." *Id.* Additionally, under Rule 41(a)(2), the expenses the defendant has incurred in defending the suit (including attorney's fees) may be awarded as a term or condition of voluntary dismissal. *Esposito v. Piatrowski*, 223 F.3d 497, 501 (7th Cir. 2000); *Marlow v. Winston & Strawn*, 19 F.3d 300, 303 (7th Cir. 1994). Whether to grant a motion for voluntary dismissal under Rule 41(a)(2) is within the discretion of the trial court, but a court would abuse its discretion if it were to permit the voluntary dismissal where the defendant would suffer plain legal prejudice as a result. *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 927 (7th Cir. 2007). The prospect of a second lawsuit does not constitute plain legal prejudice. *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233 (7th Cir. 1983); *Stern v. Barnett*, 452 F.2d 211, 213 (7th Cir. 1971). However, effectively losing a defense would constitute legal prejudice. *See Wojtas*, 477 F.3d at 927–28; *Ikospentakis v. Thalassic S.S.*

*Agency*, 915 F.2d 176, 177–80 (5th Cir. 1990); *Document Generation Corp.*, 2009 WL 2849076.

In determining whether to grant a Rule 41(a)(2) motion to dismiss, a court may consider factors, such as (1) the defendant's effort and expense in preparing for trial; (2) excessive delay and lack of diligence on the plaintiff's part in prosecuting the action; (3) insufficient explanation for the need to take a dismissal; and (4) the defendant's filing of a motion for summary judgment. *Tyco Labs., Inc. v. Koppers Co.*, 627 F.2d 54, 56 (7th Cir. 1980); *see also Pace v. S. Express Co.*, 409 F.2d 331 (7th Cir. 1969). However, the enumeration of these factors is "not equivalent to a mandate that each and every such factor be resolved in favor of the moving party before dismissal is appropriate"; rather, these factors are guidelines for trial judges in exercising their discretion. *Tyco Labs.*, 627 F.2d at 56.

In this case, the factors weigh in favor of dismissing the Plaintiff's infringement claim without prejudice, but on the condition that the Plaintiff pay the taxable costs incurred by the Defendant in this case in the event that the Plaintiff files a new lawsuit on the claims it alleged in this case. The Defendant has incurred the time and expense of defending against the Plaintiff's infringement claim and against three motions to dismiss its counterclaims, but much of the Defendant's efforts and expenses in this litigation would have been necessary to advance its own claims. Although the Plaintiff delayed filing this Motion for Voluntary Dismissal for three months after filing its Motion to Dismiss Certain Claims for Lack of Subject Matter Jurisdiction, this lawsuit is not at an advanced stage, and the discovery period has only recently expired. The Plaintiff has suggested that it decided to seek dismissal of its claim once the Defendant provided the prior art to the Plaintiff, but it is equally plausible that the Plaintiff wants to avoid the imposition of fees and a possible adverse ruling on the validity and the enforceability of the '650

18

patent. The Plaintiff filed its Motion for Voluntary Dismissal before any motion for summary judgment was filed by the Defendant (in fact, the Defendant has not filed such a motion). Additionally, the Plaintiff has executed an ambiguous and somewhat limited Covenant Not to Sue the Defendant for infringement of the '650 patent. This Covenant may provide some benefit to the Defendant, and the existence of this Covenant supplies additional support for a dismissal without prejudice. Finally, the Defendant has not shown plain legal prejudice that would warrant denial of the Plaintiff's Motion. For these reasons, the Court declines the Defendant's request to dismiss the Plaintiff's case with prejudice and will grant the Plaintiff's Motion and dismiss the Plaintiff's case without prejudice, but on the condition set forth above.[8]

## CONCLUSION

For the foregoing reasons, the Court DENIES the Plaintiff's Motion to Dismiss Certain Claims for Lack of Subject Matter Jurisdiction in Light of Covenant Not to Sue [DE 42] and GRANTS the Plaintiff's Motion for Voluntary Dismissal Pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure [DE 54]. The Court DISMISSES WITHOUT PREJUDICE the Plaintiff's infringement claims on the '650 patent, on the condition that the Plaintiff pay the taxable costs incurred by the Defendant in this case in the event the Plaintiff files a new lawsuit on the claims it alleged in this case. The Defendant's counterclaims and claim for attorney's fees

---

[8] The Court also declines the Defendant's request that the Court enter an adverse judgment. As noted earlier in this Opinion and Order, the Defendant's counterclaims will remain pending and may eventually result in a ruling on the merits of the claims, which would be more appropriate than an adverse judgment entered at this time. The Defendant's request for fees and costs is partially addressed in the condition imposed by the Court in granting the Plaintiff's Motion for Voluntary Dismissal. Beyond this, the Court declines the Defendant's request for fees and costs because much of the legal work undertaken to this point can be used in the prosecution of the Defendant's counterclaims and because the Defendant has a claim for attorney's fees under 35 U.S.C. § 285 that remains pending.

under 35 U.S.C. § 285 remain pending for independent adjudication pursuant to Rule 41(a)(2).

Since the Plaintiff filed these Motions to Dismiss, the Plaintiff has filed a Motion for Summary Judgment [DE 78], and the Defendant has filed five separate motions: a Motion for Review/Objections to Magistrate's Order of November 19, 2009 [DE 74]; a Nominal Objection to Expert and Motion for Amendment of Scheduling Order [DE 82]; a Motion for Stay Pending Decision on Fully Briefed Motions and Scheduling Conference to Resolve Discovery Disputes [DE 87]; a Motion to Compel Document Production from Heartland and Baker & Daniels [DE 88]; and an Amendment to Forest River's Nominal Objection to Expert and Motion for Amendment of Scheduling Order [DE 89]. On December 22, 2009, upon conclusion of the discovery period, the referral to the Magistrate Judge terminated, although non-dispositive pretrial matters and motions remain in this case.

In light of the Court's rulings on the Motions to Dismiss, the Court ORDERS as follows:

(1) Pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.1 of the United States District Court for the Northern District of Indiana, the Court REFERS all non-dispositive pretrial matters and motions in this case (including the Defendant's Motion to Compel Document Production from Heartland and Baker & Daniels [DE 88]) to the Magistrate Judge assigned to this case.

(2) The Defendant's Motion for Review/Objections to Magistrate's Order of November 19, 2009 [DE 74] is DENIED WITHOUT PREJUDICE. This discovery-related matter is RECOMMITTED to the Magistrate Judge for consideration in light of this Opinion and Order and additional argument (if any) presented by the parties.

(3) The Defendant's Nominal Objection to Expert and Motion for

Amendment of Scheduling Order [DE 82] and Amendment to Forest River's Nominal Objection to Expert and Motion for Amendment of Scheduling Order [DE 89] are GRANTED to the extent that they seek additional time to object to the Plaintiff's expert. The Magistrate Judge is DIRECTED to address this discovery-related matter in setting new deadlines for the parties to complete discovery.

(4)     The Defendant's Motion for Stay Pending Decision on Fully Briefed Motions and Scheduling Conference to Resolve Discovery Disputes [DE 87] is GRANTED IN PART and DENIED IN PART. The Magistrate Judge is DIRECTED to conduct a status and scheduling conference with the parties to address remaining non-dispositive pretrial matters and motions and to set new deadlines for the parties to complete discovery and briefing on the Plaintiff's Motion for Summary Judgment.

SO ORDERED on February 4, 2010.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT