**UNITED STATES DISTRICT COURT**
Northern District of Indiana
South Bend Division

| | |
|---|---|
| HEARTLAND RECREATIONAL VEHICLES, LLC, </br>     Plaintiff, </br></br> v. </br></br> FOREST RIVER, INC., </br>     Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> )   CASE NO.: 3:08-cv-490 TLS-CAN </br> ) </br> ) </br> ) |

## HEARTLAND AND NON-PARTY BAKER & DANIELS' JOINT RESPONSE TO FOREST RIVER'S MOTION TO COMPEL DOCUMENT PRODUCTION

With its Motion to Compel, Forest River, Inc. ("Forest River") asks the Court to force Heartland Recreational Vehicles, LLC ("Heartland") and Baker & Daniels LLP ("Baker & Daniels") to comply with discovery requests that (1) are not reasonably calculated to lead to the admission of relevant evidence; (2) are unduly burdensome; (3) seek information of such little importance to the case that the burden or expense of providing the information outweighs its likely benefit; and (4) seek documents that simply do not exist.

Specifically, Forest River seeks production of the following documents:

(1) Heartland's billing records related to a hypothetical "Search Report," one that Forest River believes to exist due to uncertainty as to how Barnes & Thornburg obtained fourteen patents that were disclosed to the Patent Office;

(2) Additional (and irrelevant) Baker & Daniels time diaries; and

(3) Baker & Daniels' written policies on patent prosecution and timekeeping.

Forest River's requests exceed the limits permitted by the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 26(b).  For the reasons stated below, the Court should deny the Motion to Compel in full.

## I. Forest River Exaggerates the Plausibility that a Search Report Exists

In its Motion to Compel, Forest River declares that it is hot on the trail of a "Smoking Gun"—a "Search Report" that it insists must exist because fourteen patents were found in the files of Barnes & Thornburg and eventually disclosed to the Patent Office.  Because Forest River continues to assert that this professional "Search Report" exists, it is necessary for Heartland to again outline the evidence indicating that it does not.

Barnes & Thornburg's prosecution file contained fourteen patents that were ultimately disclosed to the Patent Office.  The uncertainty as to how Barnes & Thornburg acquired these patents leads Forest River to believe that they were obtained through a professional search, one that would have generated a "Search Report."  Gregory Cooper, the Barnes & Thornburg attorney principally responsible for the prosecution of U.S. Patent No. 7,278,650 (the "'650 patent"), testified that he does not remember how these patents were obtained.  However, he testified that it was unlikely that a formal, professional search was performed.  When Mr. Cooper was asked about the source of the patents during his deposition, he gave the following response:

> The potential sources are either from the client, Mr. Tuttle, or there could be a—a search that was—that could have been performed, **either a formal search, which I don't think I saw any notification, or reporting out letter that one was done, so that's unlikely**, or an informal search, where we were having a discussion, and we looked something up.  Those would be the—the sources, I think, in this case.

(Cooper Dep., Exh. A, p. 40, ll. 15-22) (emphasis added).

Forest River has speculated that the hypothetical search "took place prior to Mr. Cooper's involvement and appears to have been done at the instance of Scott Troeger, another partner at Barnes & Thornburg who was the actual 'billing attorney' for Heartland." (Dckt. Entry No. 82, pp. 6-7.) Thus, if a "Search Report" related to the '650 patent exists, **it should be found in the files of Barnes & Thornburg.** In responding to a subpoena from Heartland, Barnes & Thornburg produced its entire patent prosecution file for the patent in suit. The prosecution file contained no "Search Report." Unsatisfied, Forest River issued its own subpoena to Barnes & Thornburg, one that more pointedly sought to obtain the "Search Report." Barnes & Thornburg's response to that subpoena again yielded no evidence of a "Search Report."

Furthermore, Heartland has proactively conducted its own investigation into the alleged existence of a professional "Search Report" related to the '650 patent application. Heartland has made inquiries with both Barnes & Thornburg and Baker & Daniels, the two firms involved in the prosecution of the patent, in an attempt to determine whether either of them possesses a report of a professional search for prior art material to the patentability of the patent in suit. These inquiries have not uncovered a "Search Report." Upon being informed by Heartland's litigation counsel that Forest River still believes that a professional prior art search occurred in connection with the prosecution of the '650 patent, Heartland's Chief Financial Officer contacted Brian Brady, Tim Hoffman, and John Rhymer, the three named inventors of the '650 patent still employed by Heartland, and asked them about their knowledge of the alleged search. While those three named inventors could not recall a professional patentability search related to the '650 patent, Tim Hoffman contacted Scott Tuttle, another named inventor and former Heartland employee. Tuttle was the Heartland employee principally responsible for obtaining a patent covering Heartland's turning radius invention, and he is currently a client of Ryan Fountain,

3

Forest River's counsel in this matter. Tuttle informed Hoffman that someone named "Greg" from Fort Wayne did the search for prior art. "Greg" is likely Gregory Cooper, the Barnes & Thornburg attorney who initially prosecuted the patent in suit before a firm conflict necessitated a transfer of the prosecution to Baker & Daniels. Tuttle's statement confirms Cooper's testimony that it is unlikely that a professional search occurred, and that it is more likely that Barnes & Thornburg obtained the fourteen patents through an informal search performed either by Cooper himself or another attorney within his firm.

Forest River continues in its speculative belief that a professional "Search Report" exists with respect to the prosecution of the '650 patent. But that belief belies the evidence currently available to both parties. Forest River's mere conjecture, without more, cannot justify Forest River's desired fishing expedition into the documents of Heartland and Baker & Daniels.

## II. Forest River's Motion Mischaracterizes Inequitable Conduct Law in Order to Exaggerate the Significance of its Theoretical "Search Report"

Even if a "Search Report" related to the prosecution of the '650 patent did exist, it would not have the impact that Forest River's briefing suggests. In an attempt to demonstrate the significance of a professional report, Forest River makes crucial misstatements of law.

First, Forest River suggests that Heartland can be found guilty of inequitable conduct if Heartland "should have known" of the existence of material prior art. (Motion to Compel, p. 3.) That is not true. "A requirement that an applicant disclose art of which the applicant should have been aware overlooks the intent element of inequitable conduct." *Frazier v. Roessel Cine Photo Tech., Inc.*, 417 F.3d 1230, 1238 (Fed. Cir. 2005).

Next, Forest River contends that "if the person doing the search was specifically instructed not to look past the 20 year point in time, then whoever gave that instruction was engaged in inequitable conduct by 'cultivating ignorance.'" (Motion to Compel, p. 4.) That is not

4

true.  The Federal Circuit has repeated time and again that **a patent applicant has no duty to perform a search for prior art.**  *See Frazier*, 417 F.3d at 1238 (listing cases reiterating this well-settled proposition).  The lone exception occurs when a patent applicant or his or her attorney receives notice of specific information that appears material or questionable.  *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.* 267 F.3d. 1370, 1383 (Fed. Cir. 2001).  However, "[t]he mere possibility that material information may exist will not suffice to give rise to a duty to inquire; sufficient information must be presented to the attorney to suggest the existence of specific information the materiality of which may be ascertained with reasonable inquiry."  *Brasseler*, 267 F.3d at 1382.  Forest River cannot argue that Heartland or its attorneys were presented with "specific information" indicating that material prior art existed.  As a result, **Heartland never had a duty to perform any prior art search**.  Hence, even if Forest River could show that Heartland performed only a "20 year" search for prior art, that search was still far more than the law requires, and it could not serve as the basis for a finding of inequitable conduct.

### III.     The Request for "Heartland's Bills" Exceeds the Limits on Discovery Established by Rule 26(b)

As an initial matter, to the extent that Forest River's Motion seeks all of the billing records related to the prosecution of the patent in suit, that request is redundant of discovery that Forest River has already obtained, i.e. the time records of Heartland's patent counsel at both Barnes & Thornburg and Baker & Daniels.

Next, to the extent Forest River seeks "Heartland's bills" in order to help it locate the theoretical "Search Report" related to the fourteen patents found in the Barnes & Thornburg file, that request is also unreasonable in light of the discovery that Forest River has already obtained. Again, Forest River hypothesizes that the professional search "took place prior to Mr. Cooper's

5

involvement and appears to have been done at the instance of Scott Troeger, another partner at Barnes & Thornburg who was the actual 'billing attorney' for Heartland." (Dckt. Entry No. 82, pp. 6-7.)  If Mr. Troeger and Barnes & Thornburg obtained the fourteen patents by commissioning a professional search, they would have sent Heartland a bill for the costs of that search.  **But Barnes & Thornburg has already produced the bills sent to Heartland for the prosecution of the patent.**  If Heartland received a bill for a professional search commissioned by Barnes & Thornburg, it would have been in those records.  It is not.  Forest River's demand that Heartland comb through its voluminous financial records for a bill that we know Barnes & Thornburg never sent is completely futile, superfluous, and absurd.  This is a textbook example of a situation where the burden and expense of complying with proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2)(C)(iii). That said, Heartland is currently in the process of searching its financial records for the relevant time period to see if it can locate any bill related to a professional prior art search with respect to the '650 patent.  Heartland has completed its search for the relevant time periods in 2005.  That search did not yield a bill for a professional prior art search related to the prosecution of the '650 patent.  Heartland's financial records from 2004 are not loaded into its accounting software.  Hence, a search of those records will have to be done manually.  Heartland is currently in the process of conducting a reasonable, manual search through its financial records for the year 2004.  If that exploration yields a bill for a professional prior art search related to the prosecution of the '650 patent, Heartland will immediately produce that bill to Forest River.  However, if, as expected, Heartland is unable to find such a bill, then an order to compel production of such a bill would be futile, for Heartland would have nothing to produce.

6

### IV.  Baker & Daniels' Time Records Will Provide No Insight as to How the Fourteen Patents Were Acquired by Barnes & Thornburg

Forest River next suggests that the time records of Baker & Daniels attorneys might demonstrate how the fourteen patents disclosed to the Patent Office ended up in Gregory Cooper's file at Barnes & Thornburg. That suggestion defies all logic.

Cooper, an attorney with Barnes & Thornburg, initially handled the prosecution of U.S. Patent No. 7,278,650 (the "650 patent"). After Cooper filed the utility patent application, a conflict arose between Heartland and another Barnes & Thornburg client. Because of this conflict, Cooper had to withdraw from the case. The prosecution of the '650 patent was then transferred to Gerard Gallagher of Baker & Daniels. At that point, Cooper transferred his entire prosecution file—**including the fourteen patents at issue in this Motion to Compel**—to Baker & Daniels. Thus, Barnes & Thornburg had the fourteen patents **before Baker & Daniels became involved in the prosecution of the '650 patent.** It is simply impossible that the time records related to Baker & Daniels' prosecution of the '650 patent—records that were created after Barnes & Thornburg had already obtained the fourteen patents—could show how those patents ended up in the Barnes & Thornburg files. Due to the obvious logical deficiencies in Forest River's request for the Baker & Daniels time records, the request is not reasonably calculated to lead to the discovery of admissible, relevant evidence. Fed. R. Civ. P. 26(b)(1).

Nonetheless, Baker & Daniels has already provided Forest River with all relevant time records of Gerard Gallagher and Thomas Mauch—the two Baker & Daniels attorneys responsible for the prosecution of the '650 patent. Forest River complains that certain entries on those records have been redacted. Baker & Daniels has informed Forest River multiple times that it only redacted entries that were irrelevant to Heartland's pursuit of the '650 patent, nearly all of which are actually entries for attorneys who had no involvement with the prosecution of

7

the patent.[1]  Forest River insists that Baker & Daniels has in reality redacted evidence of its "smoking gun."  Baker & Daniels has done nothing of the sort.  Forest River cites one time entry in particular as evidence that Baker & Daniels conducted a prior art search in connection with its prosecution of the '650 patent.  The time entry, which was entered by Gerard Gallagher on May 25, 2005, states that Gallagher "[c]onfer[red] with James Brotherson regarding results."  That exceptionally vague entry could relate to the "results" of any task, inquiry, research, etc. that Gallagher may have performed on Heartland's behalf.  In fact, the time entry directly above the "results" entry, dated May 23, 2005, says "Review and execute Statement of Use."  (*See* produced time entries, attached as Exh. B, Heartland/FR 1143.)  That entry refers to work that Gallagher performed for Heartland in connection with a **trademark application**, i.e. work that is completely unrelated to the prosecution of the '650 patent.  It is likely that the conference with Mr. Brotherson concerned the results of this trademark work.  Hence, there is no reason to suspect that Baker & Daniels has redacted or withheld any time record information relevant to the prosecution of the '650 patent.

Forest River also states that it needs the time entries of James Brotherson, a Baker & Daniels business law attorney.  Mr. Brotherson is the Baker & Daniels client manager for Heartland Recreational Vehicles, LLC.  While he signed letters related to potential claims of infringement of the '650 patent, none of that work is relevant to the **prosecution** of the patent.  Mr. Brotherson's involvement with the prosecution of the '650 patent was limited to monitoring the work of Gallagher and Mauch from an administrative, client-relations standpoint. Because Mr. Brotherson was not substantively involved in the prosecution of the '650 patent, his time records are not relevant to the issues in this case.

---

[1] At the Court's request, Baker & Daniels is willing to produce the unredacted documents for *in camera* review.  Heartland notes that some of these documents contain privileged entries outside the scope of Heartland's waiver of attorney-client privilege with respect to prosecution of the '650 patent.

8

That Forest River is unsatisfied with the time records it received from Baker & Daniels is unsurprising; as discussed above, it is chronologically impossible for them to provide insight into how Barnes & Thornburg obtained the fourteen patents disclosed to the Patent Office. Baker & Daniels has already fulfilled its duties with respect to this request. The Court should deny Forest River's Motion to Compel the production of any further time records.

### V.     Baker & Daniels Does Not Have Written Policies and Procedures Regarding Patent Prosecution

In a January 21, 2010 email, Baker & Daniels attorney David Irmscher informed Forest River that Baker & Daniels maintains no written policies and procedures regarding patent prosecution. (*See* email, attached as Exh. C, p. 2.) Mr. Irmscher reached this conclusion after asking the leader of the Baker & Daniels intellectual property practice group, along with other Baker & Daniels patent attorneys, whether they were aware of any such written policies and procedures. Because Baker & Daniels has no written policies to produce, it has complied with Forest River's subpoena with respect to this request.

### VI.    Baker & Daniels Will Produce Timekeeping Policies

Baker & Daniels questions the materiality of its timekeeping policies to the issues of this case. Nevertheless, it has located a timekeeping policy that became effective in March of 2005 and will produce this policy to Forest River.

### **CONCLUSION**

Because Forest River seeks discovery that exceeds the scope established by Fed. R. Civ. P. 26 and, in some cases, seeks documents which simply do not appear to exist, Forest River's Motion to Compel should be denied in full.

BAKER & DANIELS LLP

By: */s/ David P. Irmscher*
David P. Irmscher (#15026-02)
Abigail M. Butler (#22295-02)
111 East Wayne, Suite 800
Fort Wayne, Indiana  46802
Tel: 260.424.8000
Fax: 260.460.1700
david.irmscher@bakerd.com
abigail.butler@bakerd.com

ATTORNEYS FOR PLAINTIFF,
HEARTLAND RECREATIONAL
VEHICLES, LLC

## CERTIFICATE OF SERVICE

The undersigned counsel for plaintiff Heartland Recreational Vehicles, LLC, hereby certifies that a copy of the foregoing was served upon the following, this 18th day of February, 2010, by operation of the Court's electronic filing system:

Ryan M. Fountain
420 Lincoln Way West
Mishawaka, Indiana  46544-1902

*/s/ David P. Irmscher*
David P. Irmscher

10

BDDB01 6030858v2