## EXHIBIT D

**EXCERPT OF BRIAN BRADY DEPOSITION - JUNE 15, 2009**

```
                                    1
 1           UNITED STATES DISTRICT COURT
 2           NORTHERN DISTRICT OF INDIANA
 3              SOUTH BEND DIVISION
 4
 5  HEARTLAND RECREATIONAL    )
 6  VEHICLES, LLC             )
 7          Plaintiff,   )
 8    v.                 ) CASE NO.: 3:09-CV-490 RLM
 9  CAN
10  FOREST RIVER, INC.,       )
11          Defendant.   )
12  - - - - - - - - - - - - - )
13  VIDEOTAPED
14  DEPOSITION OF:    BRIAN R. BRADY, called as witness by the
15               Defendant, pursuant to Notice.
16  DATE:           Monday, June 15, 2009
17  TIME:           9:00 a.m.
18  PLACE:           Baker & Daniels
19               202 South Michigan Street
20               Suite 1400
21               South Bend, Indiana
22
23  REPORTED BY:  CHARLES A. OLMSTED, C.S.R., R.P.R, C.M.,
24  VIDEOGRAPHER:  BRENDA L. FREDRICK, L.V.S.
25

                                   10
 3  Q   Okay.
 4         Are you employed by Heartland Recreational
 5     Vehicles, Limited Liability Corporation?
 6  A   I am.
 7  Q   And, what is your position at Heartland?
 8  A   I'm the President and CEO.
 9  Q   What does "CEO" stand for?
10  A   "Chief Executive Officer."

                                   179
 2  Q   You said you "...hereby covenant not to sue Forest
 3     River...," et cetera, et cetera.
 4        "...With respect to Forest River Inc's currently
```

```
 5     existing products, whether such products are currently
 6     existing or manufactured in the future..."
 7         What did you mean by that?
 8  A  Well, I'm not an Attorney.
 9         So, really, in all candor, Baker and Daniels
10     created the document, and asked me to sign it.
11         And I did.
12  Q  Well, at the time you signed it, what did you
13     understand that to mean?
14  A  My understanding was is that:  The frame that Forest
15     River is currently producing is -- does not violate our
16     Patent."
17         Consequently, in light of that, Heartland
18     agrees -- so really the common-sense thing to do, which
19     is to say, "Okay..."
20         Because of new information that we didn't have in
21     the past, the common sense thing would be say, "Look:
22     we're not going to sue you."
```

                                181

```
19  Q  Okay.
20         Well, you said something about new information
21     that you didn't know before?
22  A  Yes.
23  Q  What "new information" was that?
24  A  I believe that this Winter when I was out of town, my
25     Attorneys contacted me and said that, I believe you had
```

                                182

```
 1     shared with them -- I think you called it "Prior-Art"
 2     --
 3  Q  Yes.
 4  A  -- that our Attorneys did not Discover in the process.
 5         And, said, "Here's the deal.  This is Prior-Art."
 6         And, I what to be careful here because I'm not an
 7     Attorney.  So I don't know if I'm going to use the
 8     right words or not.
 9         But, it "invalidated" or -- I'm going to use the
10     word "invalidated" only in the -- not as a legal-term.
11         But, what I understand -- it just invalidated our
12     Patent.
13         And, said, in light of this, Forest River is okay
14     doing that.
15         I said, "Well, if that's the case, that's the
16     case."
```

17  Q  Okay.
18      Just so we're clear on a couple of things.
19      Were you aware that prior to filing the lawsuit,
20    your Attorneys met at a Forest River Manufacturing
21    Facility and looked at some Prior-Art?
22  A  No.
23  Q  Okay.
24      You said a minute ago that based upon some new
25    information you thought that Forest River did not

183

1    violate your Patent?
2  A  Yes.
3  Q  When you say, "Not violate the Patent," do you mean
4    that frame did not Infringe your Patent?
5  A  Well, here again, I'm not Attorney.
6      I was out of town when all of this was taking
7    place.
8      But, it was my recollection that if I recall
9    correctly, they were saying -- the --
10        MR. DAVID P. IRMSCHER:  Be careful.
11        Don't say exactly what we told you.  Just say
12    what you did and what you know.
13        MR. RYAN M. FOUNTAIN:  Well, put
14    differently --
15        MR. DAVID P. IRMSCHER:  Let me ask him the
16    question.
17        MR. RYAN M. FOUNTAIN:  -- put differently.
18        THE WITNESS:  Okay.
19  BY MR. RYAN M. FOUNTAIN:
20  Q  I want your reason for signing the covenant not to sue?
21  A  My Attorneys told me to.

219

2  Q  Okay.
3      And, looking back at Exhibit 10 --
4      That's the covenant not/to/sue?
5  A  (Indicating).
6  Q  (Continuing)  -- in signing that covenant not/to/sue,
7    did you intend to include those Pending Patent
8    Applications in the agreement you were giving to Forest
9    River?
10        MR. DAVID P. IRMSCHER:  Objection.  Form.
11        You can answer.
12        THE WITNESS:  What just happened there?
13        MR. DAVID P. IRMSCHER:  I just objected.

```
14          But you can go ahead and answer.
15          THE WITNESS:
16  A   Oh.
17          I don't know.
18          On May 5th my wife and I were closing up our house
19    in Florida, getting ready to bring her Mother -- or
20    elderly Mother -- back from Florida.
21          I believe I spoke with Jim Brotherson, who said,
22    "I have got this based on what we've discovered.
23          "You need to sign this."
24          So I did.
25
```