IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| HEARTLAND RECREATIONAL VEHICLES, LLC | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:08-CV-490 RLM CAN |
| vs. | ) | |
| | ) | |
| FOREST RIVER, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**HEARTLAND'S RESPONSE TO FOREST RIVER'S
SECOND MOTION TO COMPEL DOCUMENT PRODUCTION**

With its Second Motion to Compel Document Production From Heartland (the "Second Motion"), Forest River, Inc. ("Forest River") primarily seeks confidential financial documents related to all of Heartland's sales during the Fourth Quarter of 2008 and the early First Quarter of 2009.  Wary of Forest River's continued interest in obtaining its comprehensive confidential information, Heartland Recreational Vehicles, LLC ("Heartland") has responded by producing only the confidential sales information that is relevant to Forest River's Hotel Action claims under the standard provided by Rule 26(b)(1).  Fed. R. Civ. P. 26(b)(1).  For the reasons outlined in the Discussion section below, no further production is warranted.

In addition, the Second Motion also seeks records of any correspondence between Heartland and recreational vehicle ("RV") dealers that references the Forest River Trade Show or any sales event held by Heartland between October 22, 2008 and October 25, 2008.  Heartland will agree to search its records for these documents.  If Heartland discovers that it has been remiss in its obligation to produce such documents, it will promptly produce them to Forest River.

BDDB01 6069235v1

## DISCUSSION

**I.      Only a Limited Number of Heartland's Sales are Relevant to Forest River's Counterclaims**

With its discovery requests, Forest River seeks "all sales logs, purchase orders, sales requests, and invoices for all products sold by Heartland between September 1, 2008 and January 1, 2009." (*See* Second Motion, p. 7, Request No. 17.)  Even a cursory analysis of this request demonstrates that it is not "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (outlining relevance standard applicable to discovery requests).  First, the request seeks information regarding sales that occurred nearly two months before any of the events at issue in this case.  It also seeks information regarding sales occurring two months after the events at issue in this case.  Furthermore, it seeks information regarding sales made to dealers **who did not even attend Forest River's Trade Show, and who therefore have no connection whatsoever to the Hotel Action.**

As this litigation shows, Heartland and Forest River are bitter competitors.  While the parties have entered into a protective order governing certain forms of confidential financial information, that protective order does not provide Heartland with infallible security; as such, Heartland is unwilling to produce confidential financial information that has no reasonable connection to the issues in this case.  Consistent with Heartland's continuing wish to protect its sensitive financial information to the fullest extent possible, Heartland has limited its production of confidential sales information to those sales that arguably have an attenuated relationship to the events of the Hotel Action.

Because Forest River must show a causal connection between Heartland's alleged conduct and Heartland's sales, Heartland's decision to produce information only for the sales related to the Hotel Action is entirely reasonable.  In order to recover damages under its Hotel

BDDB01 6069235v1

Action counterclaims, Forest River must demonstrate that Heartland's conduct at the various Elkhart-area hotels either proximately caused Forest River pecuniary harm (Lanham Act/Indiana Victim's Relief Act), or proximately caused Heartland to unjustly gain profits (Lanham Act). *See* 15 U.S.C. § 1117; IND. CODE § 34-24-3-1; *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994) (Lanham Act case holding that "Items alleged as either unjust enrichment to the defendant or damages suffered by the plaintiff must, of course, have been caused by the infringement itself….").[1]

Putting aside Forest River's arguments for **liability**—including its allegations of subterfuge, intrigue, and deception—it becomes clear that its claim for **damages** is both exceptionally simple and patently unrealistic. Forest River claims that the placement of common, everyday advertisements under the hotel room doors of sophisticated RV dealers proximately caused those dealers to purchase and sell Heartland's RVs instead of those of Forest River. Forest River's contention is akin to an argument that a Ford automotive dealer, one who must know the products of Ford and its competitors on an intensely intimate basis, could be persuaded by an everyday Chevrolet advertisement to begin carrying Chevy Silverados instead of Ford F150s. Common sense dictates that RV dealers do not base such momentous decisions on mere promotional materials. Even Forest River's own Vice President of Sales and 30(b)(6) representative, Jeff Babcock, admits that advertisements do not possess the vast persuasive power that Forest River's claim for damages suggests. According to Babcock, giving a dealer promotional materials is "not all you have to do…You gotta sell them on the product…You have

---

[1] The Lanham Act's remedies provision also provides that "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a). However, the statute stresses that "[s]uch sum…shall constitute compensation and not a penalty." *Id.* In interpreting this provision of the statute, Courts have consistently held that where a defendant's infringement was not the direct cause of any profits to defendant or damages to plaintiff, no monetary award is warranted. *See Lincoln Diagnostics, Inc. v. Panatrex, Inc.*, 2009 WL 3010840, at *12 (C.D.Ill. Sept. 16, 2009) (collecting cases, including *Badger Meter, Inc.*, holding same).

to talk to the dealer.  You have to go through the product.  You have to feature benefit the product.  You gotta convince that dealer that the product you have sitting in front of him is gonna make him money on his lot." (Babcock Dep., p. 410, ll. 11-19, attached as Exh. A.)

That said, Heartland recognizes that Forest River deserves an opportunity to convince the Court that certain sales could have proximately resulted from the events of the Hotel Action.  In order to provide Forest River this opportunity, Heartland first determined that two types of sales might conceivably be related to the events alleged in the Hotel Action.  It then produced the relevant documents related to those two types of sales.  The two types of sales include:

(1)     Sales to RV dealers who attended the Forest River Trade Show, received a copy of Heartland's advertisements, and then soon thereafter signed an agreement with Heartland to purchase and market Heartland products; and

(2)     Sales to existing Heartland dealers who attended the Forest River Trade Show, received a copy of Heartland's advertisements, and then soon thereafter decided to purchase and market Heartland products from a product line they had not purchased from Heartland prior to the Hotel Action.

As detailed in the next section, Heartland believes that its current production adequately provides Forest River with information regarding these two types of sales and the dealers who placed them.

## II.     Heartland Has Produced Sufficient Information for Forest River to Calculate its Purported Damages

A quick inventory of the documents Heartland has produced in this case shows that Forest River needs no additional sales information.  Heartland has produced the following documentation:

4

(1)    <u>Heartland/FR 377-378 (*See* Exh. H to Second Motion)</u> – This is a list of all new dealers who signed with Heartland during the months of October and November of 2008.[2] This list does not include existing dealers who chose to add a new product line after the Hotel Action.  Also, not all of the dealers listed on this document attended the Forest River Trade Show.  This list also includes dealers who signed with Heartland before the Forest River Trade Show.

(2)    <u>Heartland/FR 379-380 (*See* Exh. I to Second Motion)</u> – This is a list of all sales in the two categories outlined in Section I above.  It includes all such sales from the dates of Forest River's Trade Show (October 22-23, 2008) through November 4, 2008, a period spanning two weeks.[3]  Heartland contends that if its promotional materials proximately caused dealers to purchase Heartland products instead of Forest River products, those purchases would have occurred within this two-week period.

---

[2] Forest River notes that there are gaps in the sequence of dealer numbers in this list and suggests that Heartland has omitted relevant information.  On multiple occasions, Heartland has explained to Forest River the reasons for these gaps.  (*See* Second Motion, DE 96, Exh. P.)  First, there are no actual Heartland dealers associated with numbers 10753, 10757, and 10758.  Often, Heartland employees will preliminarily "open" a number that, for various reasons, is never ultimately assigned to a dealer.  However, once a number is "opened," it can never again be assigned to another dealer.  Hence, there are many "dealer numbers" in Heartland's system for which there are no dealers.  Heartland maintains no information or documentation that can confirm the identity of any dealer that may have been associated with a dealer number at one time.  Second, as noted in Exh. P to Forest River's Second Motion, which is a letter from Heartland's counsel to Forest River's counsel, the customers assigned to numbers 10751, 10754, and 10755 are not relevant to the issues of this case.  Nevertheless, that letter expressly identifies the customers assigned to these three numbers and then explains in full why they are irrelevant to Forest River's counterclaims.

[3] In his deposition, Heartland employee Tim Hoffman testified that this document represents all potentially relevant sales for a *two-month* period.  While Heartland's counsel believes Mr. Hoffman may have misspoken in explaining the document, counsel is confirming with its client whether this document represents sales for a two-week period or a two-month period.  If, indeed, this is all relevant sales for a two-month period, Heartland will notify Forest River accordingly.

(3)     Heartland/FR 510-511 (*See* Exh. J to Second Motion) – This document contains all sales – not just the relevant sales in the two categories outlined in Section I above – that Heartland made from October 22, 2008 to October 24, 2008.[4]

(4)     Heartland/FR 443 (*See* Exh. L to Second Motion) – After compiling all sales orders and determining which sales fit into the two relevant categories outlined in Section I above, Heartland determined that only two RV dealers had placed orders within the two categories:  Loveall RV and Racetrack RV.  Accordingly, Heartland compiled this list, which contains all units invoiced[5] to Loveall RV and Racetrack RV in the Fourth Quarter of 2008 and the First Quarter of 2009. Because of the broad time period to which this document corresponds, it includes some sales orders which are not included in Heartland/FR 379-380.  The inclusion of additional sales not found in Heartland/FR 379-380 is not meant to indicate that Heartland believes that the additional sales are relevant to the issues of this case.  In fact, Heartland contends that only the seven sales included on both Heartland/FR 379-380 and Heartland/FR 443 have any potential relevance to this case. The inclusion of the additional sales is merely a result of the broad query Heartland performed in order to ensure that its search would include the seven sales to Loveall RV and Racetrack RV that are found in Heartland/FR 379-380. As discussed further in Section IV below, Heartland/FR 443 also outlines the cost

---

[4] Forest River also notes that there are gaps in the sequence of order numbers in these documents.  Again, this typically occurs when a Heartland employee opens an order number that is either never finalized or that is ultimately cancelled by the dealer. Once Heartland opens a sales order number, it can never assign another sale to that number, even if the previous information associated with that number has been deleted.  When an order is never finalized or is cancelled, Heartland maintains no documentation showing who placed the order or what product was sought by the order.

[5] Heartland's internal "invoice date" is the date that the dealer was actually invoiced for the product.  The invoice is later than the "created date" or "order date," both of which represent the day that Heartland took the sales order and entered it into its computer system.

deductions for each individual order invoiced during this period, as well as the net profits, if any, that Heartland gained from these sales.

(5)   Heartland/FR 444-457 (*See, e.g.* Exh. M to Second Motion) – These documents are the actual invoices for all of the sales included in Heartland/FR 443.  Again, although Heartland produced invoices for sales which are not included in Heartland/FR 379-380, the extra production is not meant to be construed as an admission that Heartland believes the additional sales are relevant to this case.  Rather, their inclusion is merely a result of Heartland's broad query, one seeking to ensure that invoices for each of the seven potentially relevant sales were produced.

The documentation Heartland has produced includes a list of all relevant sales during the two week period from October 22, 2008 to November 4, 2008.  It includes detailed information on the characteristics of each relevant unit sold during the relevant time period.  Finally, it provides a comprehensive list of the cost deductions Heartland will use to mitigate the amount of any profits sought by Forest River under 15 U.S.C. § 1117.  Therefore, the documents produced are sufficient for Forest River to accurately and comprehensively calculate its alleged damages in this case, and no further production is warranted.

**III.    Heartland Does Not Receive Tangible "Purchase Orders" From Dealers**

Forest River specifically requests "the actual purchase orders from the dealers (even those of Loveall and Racetrack were withheld), as well as the associated invoices for each sale." (Second Motion, DE 96, p. 10.)  As noted above, Heartland has produced invoices for all sales potentially related to the Hotel Action.  Forest River is correct that Heartland has not produced

7

purchase orders for these sales; however, that is because Heartland typically does not obtain actual, tangible purchase orders from dealers when they place their orders.

When dealers place orders with Heartland, they do not use actual written orders.  Instead, they use purchase order **numbers**.  First, the dealer calls its lender bank, provides a purchase order number, and requests authorization for financing to purchase a Heartland unit.  The bank then allocates floor-planning for the dealer's purchase of that unit. Then, the dealer calls Heartland, voices its intent to purchase the unit, and provides Heartland with the same purchase order number that it previously gave to the bank.  Heartland then calls the bank, recites the purchase order number, and receives confirmation from the bank that it will transfer funds to Heartland for the dealer's purchase.  Hence, the entire process of securing dealer financing, allocating floor planning, and coordinating payment occurs without the issuance of an actual written purchase order.  Thus, Heartland cannot comply with Forest River's request for written purchase orders.

**IV.    Forest River's Request for Heartland's General Ledger is Misguided, Unnecessary, and a Threat to Heartland's Most Confidential Financial Information**

Heartland's General Ledger is a summary of the transactions recorded line-by-line in various "journals" during a select accounting period.   These "journals" include the sales journal, the cash disbursement journal, the accounts payable journal, the cash receipts journal, etc. Simply put, the General Ledger contains the most comprehensive and sacred confidential commercial information about Heartland's operations and financial health.  The General Ledger discloses cash balances, all other asset balances, liability balances, and member equity balances. A person in possession of Heartland's General Ledger would be able to easily create the financial

statements for the company for whatever period of time was disclosed in the Ledger.  Heartland goes to extensive lengths to protect the confidentiality of the General Ledger.

There are myriad reasons why Heartland should not be forced to produce this information.  For example, if Forest River acquired Heartland's General Ledger, it would have access to the pricing Heartland receives from its suppliers, some of whom also supply parts to Forest River.  If Heartland has negotiated a better price from that supplier, Forest River could use that information to also negotiate a lower price, thus allowing it to manufacture its products more cheaply and then price them more competitively. The confidentiality of this information is crucial to Heartland's business and its standing in the RV marketplace.  Thus, even if the Court were to determine that the General Ledger was somehow relevant under Rule 26(b)(1), Heartland asks that the Court forbid its discovery.  *See* Fed. R. Civ. P. 26(b)(2)(C) (requiring court to limit extent of discovery under several circumstances applicable here, including when the burden of discovery outweighs its likely benefit).

That said, the General Ledger is not relevant to the issues of this case, even under the broad standard contemplated by Rule 26(b)(1).  The General Ledger is an incredibly useful tool for reconstructing Heartland's financial statements; however, because it is a mere **summary** of Heartland's various transactions, it would be woefully ineffective in helping Forest River reconstruct Heartland's profits and expenses for particular Heartland units.  Indeed, even if Heartland produced its General Ledger, it would be essentially impossible for Forest River's counsel to use the Ledger to accurately determine what expenses and what profits were attributable to the manufacture and sale of the individual units allegedly relevant to its Hotel Action counterclaims.

Furthermore, Heartland has already produced a comprehensive, detailed calculation of the cost deductions it will claim in order to mitigate the amount of profits, if any, Forest River seeks to recover under 15 U.S.C. § 1117.  Heartland/FR 443 lists each of the Heartland units relevant to this litigation.  It then provides the following information with respect to those units: (1) the Vehicle Identification Number; (2) the Model Number; (3) the Gross Invoice; (4) the Invoice Sales Price; (5) the cost of materials associated with the production of that particular model/unit; (6) the labor cost; (7) Heartland's manufacturing overhead cost; (8) Heartland's gross profit for that particular unit; (9) the selling, general, and administrative expenses allocated to that particular unit, and (10) the net profit, if any, that Heartland gained from the sale of that particular unit.  Forest River may contend that it does not believe Heartland's calculations.  But Forest River did nothing to assess the merits of Heartland's calculations prior to the close of discovery.  It did not issue an interrogatory requesting an explanation of Heartland's calculation methods.  It did not notice a deposition to discuss Heartland's calculation methods.  Instead, it waited until after the close of discovery to file this Second Motion and to demand production of Heartland's **entire General Ledger**.  Forest River cannot remedy its failure to use discovery methods more properly tailored to the discovery of the information it desires by now requesting Heartland's most comprehensive and confidential financial information.  Such a request is exceptionally overbroad, unduly burdensome, and seeks information far beyond the scope of relevance in this case.

Forest River's request for Heartland's General Ledger is not "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Rather, it is a massively overbroad fishing expedition into Heartland's most comprehensive and confidential information.  Because the General Ledger would be useless in reconstructing Heartland's profits and

10

manufacturing expenses related to allegedly relevant sales orders, and because Heartland has already provided Forest River with sufficient information to calculate Heartland's profits and expenses for these orders, the Court should deny Forest River's request for Heartland's General Ledger.

### V.        If Heartland has Failed to Produce Requested Correspondence Related to the Hotel Action, it Will Promptly Do So.

Forest River requests the "dealer files containing the correspondence from the dealers and initiating contracts therewith" and the "email records relating to the Hotel Action, including now the back-up files." (Second Motion, DE 96, p. 10.)  Heartland has already produced the "initiating contracts" between Heartland and the only dealers relevant to Forest River's counterclaims, Loveall RV and Racetrack RV.  However, Heartland has not produced correspondence with dealers that references the Hotel Action, the Forest River Trade Show, or any sales event occurring at Heartland during the time of the Forest River Trade Show.  It is Heartland's belief that it does not possess any such correspondence.  However, Heartland will once more search its records to determine the accuracy of that belief.  If it locates correspondence from the requested categories, it will promptly produce those documents to Forest River.

### VI.       Forest River Has Not Properly Alleged a Claim of Unfair Competition Based on Heartland's Acquisition of a Forest River Dealer List

As a final note, Forest River claims that it is prosecuting a claim for unfair competition related to Heartland's acquisition of the Forest River dealer list.  In ruling on Heartland's Motion to Dismiss Forest River's Lanham Act Claim, the Court acknowledged that Forest River's Amended Complaint "plausibly alleges a claim for unfair competition." (Opinion & Order, DE 32, p. 8, Feb. 18, 2009.)   However, it based that holding **on the allegations contained in**

**Forest River's Amended Complaint**, i.e. the events of the Hotel Action.  Now, Forest River is apparently attempting to allege a *second* unfair competition claim, one based on Heartland's acquisition of a Forest River dealer list from a third party, Rod Lung.  Nothing in Forest River's Amended Complaint hints that Heartland's acquisition of this list is the factual basis for any of Forest River's asserted claims.  This "dealer list acquisition" unfair competition claim is actually an entirely separate claim from the "Hotel Action" unfair competition claim.  Because Forest River declined to amend its Complaint to expressly allege this "dealer list" unfair competition claim, Heartland has had no opportunity to seek dismissal of the claim under Rule 12(b)(6).  Furthermore, Forest River's failure to timely amend its complaint to include this second unfair competition claim lulled Heartland into a belief that Forest River did not plan to pursue it.  As a result, Heartland declined to expend its full legal and financial resources conducting adequate discovery into the claim.  To the extent Forest River wishes to pursue this claim, Heartland requests that the Court require Forest River to seek leave to amend its Complaint once again (a motion Heartland would then oppose), thus permitting Heartland an opportunity to seek its dismissal under Rule 12(b)(6), and, if necessary, conduct additional discovery into the purported claim's factual merits.

## VII.    CONCLUSION

Heartland has provided Forest River with all documentation it needs to calculate its alleged damages in this case.  Furthermore, to the extent that the Court deems that Heartland's General Ledger has relevance to this case, Heartland respectfully requests that the Court protect the General Ledger from discovery.  *See* Fed. R. Civ. P. 26(b)(2)(C).  Finally, to the extent that Heartland discovers that it has mistakenly neglected to produce relevant correspondence between Heartland and its RV dealers, it will produce that correspondence to Forest River.

12

BAKER & DANIELS LLP

By:   */s/ David P. Irmscher*
       David P. Irmscher (#15026-02)
       Abigail M. Butler (#22295-02)
       Peter A. Meyer (#27968-53)
       111 East Wayne, Suite 800
       Fort Wayne, Indiana  46802
       Tel: 260.424.8000
       Fax: 260.460.1700
       david.irmscher@bakerd.com
       abigail.butler@bakerd.com
       peter.meyer@bakerd.com

ATTORNEYS FOR PLAINTIFF,
HEARTLAND RECREATIONAL
VEHICLES, LLC

### CERTIFICATE OF SERVICE

      The undersigned counsel for plaintiff, Heartland Recreational Vehicles, LLC, hereby certifies that a copy of the foregoing was served upon the following, this 15th day of March, 2010 by operation of the Court's ECF System.

      Ryan M. Fountain
      420 Lincoln Way West
      Mishawaka, Indiana  46544-1902

      */s/ David P. Irmscher*
      David P. Irmscher

13