IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| HEARTLAND RECREATIONAL VEHICLES, LLC ) ) ) Plaintiff, ) ) vs. ) ) FOREST RIVER, INC. ) ) Defendant. ) | Case No. 3:08-CV-490 RLM CAN |

**REPLY IN SUPPORT OF HEARTLAND'S SECOND MOTION TO DISMISS
CERTAIN FOREST RIVER COUNTERCLAIMS FOR LACK OF SUBJECT
MATTER JURISDICTION IN LIGHT OF REVISED COVENANT NOT TO SUE**

In its Response to Heartland's Motion to Dismiss (DE#94) (the "Response"), Forest River, Inc. ("Forest River") concedes that Heartland Recreational Vehicles, LLC's ("Heartland") Revised Covenant Not to Sue (the "Revised Covenant") moots the controversy with respect to Forest River's counterclaims of invalidity, non-infringement, and unenforceability.  (Response p. 2.)  However, Forest River then requests that the Court (1) rewrite Heartland's Revised Covenant to include "any continuation patents issued from [U.S. Patent No. 7,278,650 (the "'650 patent")];" (2) "require Heartland to reimburse Forest River for all of its expenses, including attorneys fees, incurred in connection with the patent issues in this lawsuit;" and/or (3) "impose upon Heartland the requirement that if it ever brings litigation against Forest River for infringement of any continuation patent issuing from the '650 patent, then at that time Heartland will be required to reimburse Forest River all of its expenses, including attorneys fees, incurred with the patent issues in this lawsuit."  (Response p. 7-8).

Forest River's proposed relief amounts to a request that the Court render all continuation patents stemming from the '650 patent unenforceable against Forest River. With respect to Heartland's interests against Forest River, such a result would be akin to a judicial determination that Heartland committed inequitable conduct in the prosecution of the '650 patent. **Importantly, Forest River cites no valid authority providing that the Court can or should issue such sweeping relief in dismissing a counter-plaintiff's counterclaims for lack of subject-matter jurisdiction.**

The Revised Covenant has not eliminated the Court's jurisdiction with respect to Forest River's claim for attorney's fees under 35 U.S.C. § 285. As such, Forest River can still pursue an adjudication of the merits of its inequitable conduct allegations. If the Court finds that Heartland committed inequitable conduct in the prosecution of the '650 patent, that finding could provide a legal foundation for the Court to consider the very results sought by Forest River in its Response to this motion. But the Court should not consider that relief without first determining that Heartland has engaged in conduct befitting such a severe penalty. Because Forest River's request is merely an attempt to render Heartland's continuation patents unenforceable without having to prove by clear and convincing evidence that Heartland committed inequitable conduct, the Court should dismiss Forest River's declaratory judgment counterclaims without further terms and conditions.

**I.     Forest River Continues to Seek Unenforceability of the Continuation Patents Without Having to Prove Inequitable Conduct**

From the beginning of this dispute, Forest River has sought to immunize itself from liability for infringement of any continuation patents stemming from the '650 patent. Indeed, Forest River actively sought such a result before Heartland ever filed this lawsuit. After Heartland accused Forest River of infringement of the '650 patent, Forest River informed

2

Heartland that it knew of prior art indicating that the patent was invalid.  Hoping to assess the merits of the parties' respective positions without the work and expense of litigation, Heartland asked Forest River to provide it with this prior art.  Forest River agreed to do so, **but only if Heartland agreed to never sue Forest River for infringement of any continuation patents stemming from the '650 patent.**  (*See* October 2, 2008 Letter from Ryan Fountain to David Irmscher, p. 3, attached as Exhibit A.)  Solid business sense precluded Heartland from blindly immunizing one of its main competitors from liability for the infringement of its potential continuation patents.  Accordingly, Heartland filed this lawsuit.

With its answer to Heartland's Complaint (DE 6), Forest River attached the prior art that, according to Forest River, invalidates the '650 patent.  Heartland counsel David Irmscher then promptly investigated that prior art.  Based on the advice of Mr. Irmscher, Heartland soon thereafter decided not to continue its claim of infringement and executed a covenant not to sue.  Ultimately, the Court found that Heartland's initial covenant not to sue was ambiguous and too narrow in scope.  (Op & Order, DE 91, Feb. 4, 2010, p. 13.)  To remedy these deficiencies, Heartland executed the Revised Covenant a mere twelve days later.  As outlined in Heartland's initial memorandum supporting this Motion to Dismiss, the Revised Covenant addresses each of the specific concerns noted by the Court.

As a result of the Revised Covenant's broad scope, Forest River has received substantial protection from adverse legal effects resulting from the '650 patent.  The Revised Covenant unequivocally covers all current and past Forest River products, whether they are produced or sold now or in the future.  Furthermore, the Revised Covenant now covers all past and present activities of Forest River.  Finally, the Revised Covenant extends the same protection to Forest River's suppliers, some of which appear to have indemnity agreements with Forest River.  Yet,

3

Forest River now asks the Court to render all continuation patents stemming from the '650 patent enforceable against Forest River without first finding on the merits that Heartland committed inequitable conduct.  In an attempt to bolster its request for this extraordinary relief, Forest River argues that Heartland has committed an array of unethical atrocities in prosecuting the '650 patent and the continuation patents stemming from it.  Specifically, Forest River continues with its allegation that Heartland is engaging in "submarine patent" practice.  As the next section discusses, Forest River's allegation is simply untrue.

## II.     The Heartland Turning Radius Patents are Not Submarine Patents

Throughout this litigation, Forest River has accused Heartland's patent attorneys of seeking "submarine patents."  In the world of patent law, the term "submarine patent" is a pejorative.  These "submarine patent" accusations are at the root of two of the requests Forest River makes in the Response: (1) that the Court extend the Revised Covenant to cover any continuation patents issued from the '650 patent; and (2) that the Court require Heartland to pay its attorney's fees and expenses in this lawsuit, including interest, if Heartland ever sues Forest River for infringement of a continuation patent stemming from the '650 patent.  (*See* Response, pp. 7-8.)  Forest River's characterization of Heartland's patents as "submarine patents" is severely disingenuous.  In actuality, the Heartland patents are starkly the opposite of "submarine parents."

A "submarine patent" is a patent that:  (1) remains unknown to the public for a long period of time while pending, unpublished, at the Patent Office (like a submarine below the surface); and then (2) issues (surfaces) when the patent holder is ready to litigate.  The goal is to submit a patent application on undeveloped technology, file continuation after continuation to keep the technology secretly pending for years until the marketplace develops and adopts the

4

technology, then surprise the marketplace with the granted patent (i.e., sue to collect royalties) and enjoy a full enforcement term.

As a result of changes in the law, submarine patents are virtually extinct today. In 1995, the United States began publishing patent applications 18 months after their submission to the Patent Office. A patent applicant can avoid this publication (i.e., maintain its application in secrecy), by filing a non-publication request, but only if the applicant agrees not to seek patent protection in foreign countries. Consequently, there is a significant cost (i.e., loss of foreign patent rights) for keeping a patent application secret or "submerged."

Also in 1995, the United States changed the term of patents from 17 years after the grant date to 20 years from the filing date. Prior to this change, the "submarine patent" enjoyed a 17 year term when it finally surfaced after years – sometimes decades – of pendency at the Patent Office. Today, the pendency period directly reduces the enforceable term of the patent. For example, under the old term rules, a patent filed in 1996 could have remained pending until 2010, and when it issued in 2010, it would have an enforceable term of 17 years. Under the current rules, a patent filed in 1996 that is granted in 2010 has an enforceable term of only 6 years (i.e., 20 years from its filing date). Although "submarine patents" may still exist (if the patentee is willing to forfeit foreign protection and accept a greatly reduced term), such abuses of the continuation procedure are increasingly uncommon. More importantly, they bear absolutely no resemblance to the approach taken by Heartland.

A typical "submarine patent" has the following characteristics:

(1)  It is directed to conceptual, undeveloped technology;

(2)  It is owned by a patent enforcement entity, not a manufacturer;

(3)  It is allowed to remain secretly pending at the Patent Office;

5

(4)   It remains pending for a long period of time through the filing of an unbroken string of continuation applications to avoid issuance until the time is right; and

(5)   It is allowed to grant ("surface") by the patent holder after the market has adopted the technology in the patent.

In contrast, the Heartland patents share none of these characteristics:

(1)   The Heartland patents are directed to fully developed technology, which Heartland reduced to practice and introduced to the marketplace **before** filing its original patent application;

(2)   The Heartland patents are owned by a manufacturer of products;

(3)   None of Heartland's patents remained secretly pending at the Patent Office. This distinction is key. Heartland did not file a non-publication request to maintain secrecy. In fact, it marked its products "patent pending" to let the world know it was pursuing protection. Heartland notified the industry, including Forest River, that it was pursuing patent protection long before it obtained its first patent. The application for the '650 patent was published roughly 18 months after the filing of the original patent application. The '251 patent was also published soon after filing;

(4)   Heartland's patents did not remain pending through a string of continuations to avoid issuance. In fact, just the opposite is true. As soon as the Patent Office allowed any claims in Heartland's first application, Heartland cancelled the remaining claims to expedite issuance of the '650 patent. Heartland then filed another application that matured into the '251 patent to pursue the remaining claims. The same is true for the '251 patent. As

6

   soon as the Patent Office allowed certain claims, Heartland cancelled the rejected claims to expedite issuance.  Heartland did not avoid issuance of its patents.  It did everything it could to **expedite** issuance of its patent rights;

(5) Finally, Heartland did not wait for the market to adopt its technology before allowing its patents to grant.  Again, just the opposite is true.  Heartland's goal was to obtain patent protection **before** the market adopted its technology so it could prevent others from copying its invention.

In summary, Heartland did not use a "submarine" strategy to keep its patent rights "submerged" until others infringed those rights.  In reality, Heartland sought patent protection as publicly and expeditiously as possible to prevent widespread infringement.  It filed continuation applications only to pursue additional, incremental protection of its turning radius invention.  Such conduct is the hallmark of effective continuation practice, and it is entirely proper and ethical under the law.

Forest River either knows or should know that Heartland's patent practice is entirely legal and proper.  **In fact, Forest River's counsel in this case, Ryan Fountain, also engages in continuation practice on behalf of his clients.**  *See* Pub. No. US 2001/0037827 A1; Pub. No. US 2004/0089285 A1; and Pub. No. US 2002/0062525, attached as Exhibits B, C, and D.

Because there is nothing untoward about Heartland's pursuit of patent protection for its turning radius invention, the Court should decline Forest River's requests for relief related to any continuation patents stemming from the '650 patent.

  II. **In Attempting to Provide Legal Justification for Its Requested Relief, Forest River Makes Multiple Misstatements of Law**

Forest River contends that Heartland's Motion to Dismiss, one premised upon Rules 12(b)(1) and 12(h)(3), is actually a voluntary motion to dismiss under Rule 41(a)(2).  (Response,

DE 100, p. 1.)  The motivation for Forest River's misstatement of law is clear: while Rule 12(h)(3) plainly compels the Court to dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction," Rule 41(a)(2) provides that an action "may be dismissed…on terms that the court considers proper."  Fed. R. Civ. P. 12(h)(3) & 41(a)(2).  Because Rule 41 has no applicability to Heartland's Motion to Dismiss, the Court should grant Heartland's Motion without further terms and conditions.

> A. <u>Because the Revised Covenant divests the Court of subject-matter jurisdiction, the Court should decline to condition dismissal on the terms requested by Forest River</u>

As Forest River and Heartland agree, the Revised Covenant has eliminated any controversy regarding Forest River's declaratory relief counterclaims.  In order for courts to have subject-matter jurisdiction, "an actual controversy must be extant at all stages of review, not merely at the time the complaint [was] filed."  (Opinion & Order, DE 91, February 4, 2010, pp. 10-11.) (quoting *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1345 (Fed. Cir. 2007)).  Hence, on February 16, 2010, the day that Heartland executed the Revised Covenant, the Court's subject-matter jurisdiction was eliminated with respect to Forest River's declaratory relief counterclaims, thus requiring their dismissal.  Fed. R. Civ. P. 12(h)(3).

Nevertheless, Forest River's Response contends that, though the Court's jurisdiction has been extinguished, the Court may still issue the extraordinary relief Forest River requests in ruling on the present motion.  But "[s]ubject-matter jurisdiction is…central to the district court's power to issue **any orders whatsoever**…."  *Craig v. Ontario Corp.*, 543 F.3d 872, 875, 876-77 (7th Cir. 2008) (emphasis added) (noting that courts have no power to touch the merits of a case in the absence of subject-matter jurisdiction).  As such, the Court lacks the power to attach conditions and terms to the dismissal of Forest River's counterclaims.  In accordance with the

8

duty placed upon the Court under Rule 12(h)(3), the Court should ignore Forest River's request for additional relief and dismiss the declaratory counterclaims alleging invalidity, non-infringement, and unenforceability without further terms or conditions.

B.  Rule 41(a)(2) has no applicability to Heartland's Motion

In requesting that the Court confer certain benefits upon Forest River before granting Heartland's Motion to Dismiss, Forest River distorts Rule 41 and its governing case law.

First, Forest River argues that Heartland's Motion to Dismiss Forest River's counterclaims seeks a dismissal under Rule 41(a)(2). (*See* Response p. 3.) However, Rule 41(a) governs **voluntary** dismissals by a **plaintiff,** i.e. the party who brought the claim for which dismissal is sought. *See* Fed. R. Civ. P. 41(a); Fed. R. Civ. P. 41(c). Forest River is the plaintiff with respect to the declaratory judgment counterclaims, which are the only claims at issue in this Motion. Heartland, it follows, is the defendant. As such, Rule 41(a)(2) is not applicable to Heartland's Motion.

Forest River also cites Rule 41(c) for the proposition that "[Rule 41(a)(2)] applies to a dismissal of any counterclaim." (*See* Response, p. 3) (citing Fed. R. Civ. P. 41(c)). However, under the interpretation of Rule 41(c) espoused in Forest River's Response, Rule 41(a) would apply in all instances where a plaintiff seeks to dismiss counterclaims lodged against it by a defendant/counter-plaintiff. That is not the case. In truth, Rule 41(c) merely provides that the benefits of Rule 41(a) are not exclusive to the original plaintiffs in a lawsuit, and that defendants/counter-plaintiffs can also seek voluntary dismissals of their counterclaims under Rule 41(a). *See* Fed. R. Civ. P. 41(c); *see also, e.g., Am. Real Estate Partners, Inc. v. Re/Max Int'l, Inc.*, 600 F.Supp.2d 1003, 1006 (N.D. Ill. 2009) (illustrating defendant/counter-plaintiff's use of Rule 41(c) to voluntarily dismiss counterclaims). Again, because Heartland is a defendant

with respect to the declaratory judgment claims of invalidity, non-infringement, and unenforceability, Heartland's Motion to Dismiss is not a voluntary dismissal by a plaintiff, and Rule 41(a) does not apply. Fed. R. Civ. P 41(a).

In further support of its invalid argument, Forest River cites the following quote from *Highway Equip. Co., Inc. v. FECO, Ltd.*: "[w]hile the covenant may have eliminated the case or controversy pled in the patent-related counterclaims and deprived the district court of Article III jurisdiction with respect to those counterclaims, the covenant does not deprive the district court of jurisdiction to determine the disposition of the patent infringement claims **raised in the Complaint** under Rule 41 or the request of attorneys fees under 35 U.S.C. § 285." 469 F.3d 1027, 1033, n.1 (Fed. Cir. 2006) (internal citations omitted and emphasis added). Forest River claims that this quote supports its argument that "issues under Rule 41" remain with respect to the declaratory judgment counterclaims. (*See* Response, p. 2.) However, as the quote from *Highway Equip. Co., Inc.* plainly indicates, the Rule 41 issues remaining in that case were connected to the **plaintiff's original patent-infringement claims**, not the declaratory judgment counterclaims. *See* 469 F.3d at 1033, n.1. Pursuant to its Opinion and Order of February 4, 2010, the Court has already dismissed Heartland's original patent-infringement claims under Rule 41(a)(2). (*See* Op. & Order, DE 91, p. 19.) The only claims at issue in this Motion to Dismiss are Forest River's declaratory judgment counterclaims. Nothing in the *Highway Equip. Co., Inc.* case suggests that Rule 41 issues exist with respect to these claims.[1]

Because nothing in Rule 41(a), Rule 41(c), or *Highway Equip. Co.* suggests that Rule 41(a) applies when a plaintiff seeks dismissal of a defendant/counterplaintiff's counterclaims for lack of subject-matter jurisdiction, the Court should decline Forest River's invitation to invoke

---

[1] *Highway Equip. Co., Inc.* does confirm, however, that the Court maintains jurisdiction over any request by Forest River for attorney's fees under 35 U.S.C. § 285. *See* 469 F.3d at 1003, n.1.

10

the discretion contemplated by Rule 41(a)(2) and dismiss Forest River's counterclaims without further terms or conditions.

### III. The Unconditioned Dismissal of Forest River's Declaratory Judgment Claims Produces a Just and Fair Result

In requesting that the Court use Rule 41(a)(2) discretion to append terms and conditions to its dismissal of Forest River's counterclaims, Forest River essentially argues that the unconditioned dismissal of its counterclaims would be unfair. While Rule 41(a)(2) does not apply in the context of this Motion, Heartland will briefly address why the unconditioned dismissal of Forest River's declaratory judgment counterclaims is a just and fair result.

### A. Very little litigation occurred with respect to the issues of validity and infringement of the '650 patent

After Heartland executed its first covenant not to sue, the parties largely ignored the issues of invalidity and infringement and instead focused their discovery efforts on the other claims in this litigation. For example, in answering the very first interrogatory issued by Heartland in this case, Forest River provided the following response:

> Pursuant to agreement of counsel, this Interrogatory was withdrawn because Heartland's covenant not to sue is intended to eliminate the charge of patent infringement made directly against Forest River; there is probably no longer any "'defense" which is relevant in this case at the present time, although a decision of the Court on Heartland's third motion to dismiss is still pending in that regard.

(Forest River's Resp. to Heartland's First Interrog., p. 1, attached as Exhibit E.) As Forest River's response to this interrogatory illustrates, the parties spent very little time and very few resources addressing the issues of infringement and invalidity. As such, the substantial legal benefits accorded to Forest River by the Revised Covenant provide sufficient recompense for Forest River's litigation efforts.

11

### B. Forest River can still pursue a judgment on the merits with respect to its claim of inequitable conduct

While it is true that the parties have extensively litigated Forest River's allegation of inequitable conduct with respect to the prosecution of the '650 patent, Forest River's efforts in that regard have not been undertaken in vain. The Court maintains jurisdiction over any motion by Forest River for its attorney's fees under 35 U.S.C. § 285. *See Highway Equip. Co.*, 469 F.3d at 1033, n.1. Forest River has stated its intention make such a motion. In deciding whether to grant Forest River's motion, the Court must determine whether this is an "exceptional case." 35 U.S.C. § 285. This will require the Court to adjudicate the merits of Forest River's inequitable conduct allegations. Hence, the possibility remains that the '650 patent, as well as any continuation patents stemming from the '650 patent, will be rendered unenforceable. Heartland is exceedingly confident that Forest River cannot prove inequitable conduct, much less by clear and convincing evidence. However, if the Court does find that Heartland committed inequitable conduct, that finding could provide a legal foundation for the Court to consider providing the very results sought by Forest River in its Response to the instant motion.

## IV. CONCLUSION

Forest River cites no valid legal authority for its request that the Court attach certain terms to the dismissal of Forest River's declaratory judgment counterclaims. Furthermore, the unconditioned dismissal of Forest River's claims will not produce an unfair result. If Forest River wishes to obtain a judicial order that all continuation patents stemming from the '650 patent are unenforceable, it should be required to obtain that relief via the conventional, proper method: by proving by clear and convincing evidence that Heartland committed inequitable conduct in prosecuting the '650 patent. For the reasons outlined both herein and in Heartland's initial Memorandum (DE 95), the Court should grant Heartland's Motion to Dismiss Certain

12

Forest River Counterclaims For Lack of Subject Matter Jurisdiction in Light of Revised Covenant Not to Sue without the additional terms and conditions requested by Forest River.

        Respectfully Submitted,

        BAKER & DANIELS LLP

        By:    */s/ David P. Irmscher*
               David P. Irmscher (#15026-02)
               Abigail M. Butler (#22295-02)
               Peter A. Meyer (#27968-53)
               111 East Wayne, Suite 800
               Fort Wayne, Indiana  46802
               Tel: 260.424.8000
               Fax: 260.460.1700
               david.irmscher@bakerd.com
               abigail.butler@bakerd.com
               peter.meyer@bakerd.com

        ATTORNEYS FOR PLAINTIFF,
        HEARTLAND RECREATIONAL
        VEHICLES, LLC

**CERTIFICATE OF SERVICE**

    The undersigned counsel for plaintiff, Heartland Recreational Vehicles, LLC, hereby certifies that a copy of the foregoing was served upon the following, this 18th day of March, 2010 by operation of the Court's ECF System.

    Ryan M. Fountain
    420 Lincoln Way West
    Mishawaka, Indiana  46544-1902

        */s/ David P. Irmscher*
        David P. Irmscher